DAILY COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NUMBER 14-20017-CR-KMW

UNITED STATES OF AMERICA    2-12-2015

DAY FOUR
A.M. SESSION

vs.

PAGES 1-77

MAURIN CHACON
RODOLFO PORTELA
CHRISTOPHER ALTAMIRANO
JAMES DIXON
JAY ANTHONY FLORES,
Defendants

---

TRANSCRIPT OF JURY TRIAL PROCEEDINGS HELD
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

---

APPEARANCES:

FOR THE UNITED STATES:
IGNACIO VAZQUEZ, A.U.S.A.
ILHAM HOSSEINI, A.U.S.A.
MARK DISPOTO, A.U.S.A.
99 N.E. 4th Street
Miami, FL 33132

FOR DEFENDANTS:
MANUEL GONZALEZ, ESQ.
2000 Ponce DeLeon Boulevard
Suite 614
Coral Gables, FL 33134

PAUL KORCHIN, A.F.P.D
150 West Flagler Street
Miami, FL 33130

PHILIP HOROWITZ, ESQ.
9130 South Dadeland Boulevard
Suite 1910 - Two Datran Center
Miami, FL 33156

**APPEARANCES CONTD.**

**DAVID DONET, JR. ESQ.**
**3250 Mary Street**
**Suite 406**
**Fort Lauderdale, FL 33133**

**HERMAN FRANK RUBIO, JR. ESQ.**
**1107 N.E. 104th Street**
**Miami Shores, FL 33138**

REPORTED BY:

PATRICIA SANDERS, RPR
*United States Court Reporter*
400 North Miami Avenue, Suite 11-3
Miami, FL 33128
T: 305.523.5528
patricia_sanders@flsd.uscourts.gov.

THE COURT: Please be seated everyone. We have our jury. Do we have any matters we need to take up before we bring in the jury?

MR. RUBIO: I do have the one regarding the ruling on the motion to suppress.

THE COURT: All right. And before we begin, I spoke to my physician last night, who advised me that he does not believe me to be resumes his testimony the brightest bulb in the light shop and that working all day yesterday was -- I am not going to use the word he used, but perhaps today I should not do a full day with the jury until I am certain I have my voice.

What I was thinking would kind of be consistent with what he told me and that is to go as far as we could with the jury. And then I know there is that matter, Mr. Portela's matter we need to address.

And, Mr. Gonzalez, I do indeed want to talk to you about those Facebook pages. I planned to plug along for as long as I could. And I know Mr. Gonzalez you have a 1:30 in front of Judge Goodman.

MR. GONZALEZ: It's agreed upon, Judge.

THE COURT: Very good. Either I will dismiss the jury or take a quick late lunch, but it's going to depend on how long my voice holds out today. Is there anything we need to take up before the officer resumes his testimony and we start

with the other witnesses?

MR. HOROWITZ: On behalf of Mr. Altamirano, Your Honor, the last question that was asked was whether -- this witness stated that Mr. Harralson talked to you about his circumstances of being inside that home with reference to Mr. Portela and his associates.

And the Court ultimately sustained the objection, and Mr. Vazquez is not going to go into that statement. I would just ask the Court inform the jury that the last question has been stricken, and then press on with the testimony.

THE COURT: Well, the question itself did you have a conversation -- I was gearing up for the next question.

The question itself was, did you talk to him? Yes. The content was where we were going to have issues.

MR. HOROWITZ: If the Court wants to tell the jury the question was sustained and allow the Government to press on.

THE COURT: If the objection was sustained I was anticipating that the next question -- you can ask did you have a conversation with Bob? Yes, the end.

MR. HOROWITZ: We will leave it as is.

THE COURT: I think it's more -- it highlights it rather than now it is nothing.

Unless of course Mr. Harralson comes forward.

MR. HOROWITZ: Mr. Harralson testified to something totally different.

THE COURT: We will see; trial it is always changing. All right. If you would ask the witness to rejoin us.

Mr. Vazquez, I think we confused the jury more than we illuminated the issue on the Vicar charge yesterday. If it's coming up again make sure -- so I don't tell them all this stuff about it's only going to these two and then the narcotics.

All right. Bring in our jury.

COURT SECURITY OFFICER: All rise, please.

THE COURT: Please be seated everyone. Good morning, ladies and gentlemen. You will notice when you come in that we all stand and I don't tell you to sit down; that is because as judges of the facts we stand as a sign of respect for you and your duties.

So don't wait for us, we are going to stay on our feet until you are all seated.

All right. Mr. Vazquez, you may continue.

BY MR. VAZQUEZ:

Q. Officer Coladas, over yesterday's examination we talked about different locations, do you recall that?

A. Yes.

Q. Are those locations close to each other?

A. Yes.

Q. How close are they?

A. A block maybe.

**Q. Are they within walking distance?**

**A. Yes.**

**Q. With regard to the 428 building and the 435 building how close are they?**

**A. Seconds away; it's right there.**

**Q. When you were at the 428 building on April 3rd of 2014 where was Mr. Zerquera in relation to Mr. Ramirez?**

**A. Really close, right there.**

**Q. Are you able to use the screen to point out where Mr. Ramirez is?**

**A. By the fence line where the chain link fence kind of lines up by it.**

**Q. Who is that?**

**A. Dayaan Zerquera.**

**Q. Mr. Zerquera?**

**A. Yes.**

**Q. Where was Mr. Ramirez?**

**A. By the sidewalk area.**

**Q. Mr. Ramirez is here?**

**A. He wasn't at the chain link fence, a little bit off from the fence.**

**Q. While you were surveilling the area where would Mr. Ramirez go?**

**A. He would go to the fence right here.**

**Q. Can you explain his movement?**

A. He would bend down and reach for a baggie.
Q. Where would he go after he would get the baggie?
A. He would go back to the sidewalk.
Q. This kind of general movement?
A. He was still in the driveway area so he would go straight down.
Q. Now you have been to this building just on patrol?
A. Yes.
Q. Talking about just riding around in your vehicle?
A. Yes.
Q. When you have been riding around in your vehicle, not any time you have been stopped, have you seen any of the defendants in this area similarly positioned?
A. Yes.
Q. On Government's Exhibit 42 do you recognize anyone?
A. Yes.
Q. Who do you recognize?
A. To me it looks like Maurin Chacon, but it's very blurry.
Q. Have you seen Mr. Chacon or any of the other defendants seated there during these patrol drive-bys?
A. Yes.
Q. Have you seen them there consistently?
A. Yes.
Q. With regard to Government's Exhibit 42 how close was the firearm to the narcotics --

A. I want to say 10 to 15 feet, really close.
Q. Where was that firearm?
A. In his right pocket.
Q. And was Mr. Ramirez within direct line of sight of Mr. Zerquera?
A. Yes.
Q. Showing you Government's Exhibit 44. Could you see this firearm during your surveillance?
A. No.
Q. Where was the firearm?
A. In his right pocket.
Q. When did you first identify a firearm was on his person physically?
A. When Dayaan Zerquera advised me he had a firearm.
Q. So you had no idea --
A. No.
Q. The weapon was loaded.
A. Yes.
Q. You made an arrest regarding narcotics and a firearm on April 3rd, 2014, correct?
A. Yes.
Q. Was that the last time that you saw Zerquera, Ramirez or any of the defendants you have identified in court or during -- or in pictures through these patrol drive-bys where you did not stop?

MR. GONZALEZ: Objection.
THE COURT: Grounds?
MR. GONZALEZ: Form.
THE COURT: Mr. Vazquez let's break it up or break it down.
BY MR. VAZQUEZ:
Q. During your rolling patrols where you did not stop after April 3rd, 2014 did you see any of the defendants you have identified in court or those you have identified in photos?
A. Yes.
Q. Was that at the 428 building?
MR. HOROWITZ: Objection, leading.
THE COURT: Yes.
BY MR. VAZQUEZ:
Q. Where did you see them?
A. At the 428 building.
Q. Now you spoke with defense counsel about the incident on May 28, 2013 regarding why you went to the building. Do you recall that?
A. Yes.
Q. What was the nature of your assignment on May 28, 2013?
A. Patrolling high crime areas.
Q. What is the Problem Solving Team?
A. The unit that looks at the crime statistics and where we are having the most problems. When we receive complaints we

address those problems as well.
Q. Were you serving on the Problem Solving Team?
A. Yes.
Q. On May 28, 2013?
A. Yes.
Q. Why did you have an interest in the location of 428 NW 11th Avenue on May 28, 2013?
MR. HOROWITZ: Objection, asked and answered.
THE COURT: Sustained.
BY MR. VAZQUEZ:
Q. Why did you want to ask for consent to enter the 428 NW 11th Avenue location?
A. Reference previous arrests that happened there. I had an incident there, as well as I believed there was going to be narcotics --
MR. HOROWITZ: Objection, calls for speculation.
THE COURT: He is giving his opinion as to why.
Do not give us any hearsay, officer.
THE WITNESS: I believed there was going to be narcotics at that location or something illegal.
BY MR. VAZQUEZ:
Q. Is that why you asked Mr. Harralson for consent to search his home?
A. Yes.
Q. Did you provide a written consent form?

A. Yes.

MR. GONZALEZ: Objection, asked and answered.

THE COURT: I don't remember this so I will allow it.

BY MR. VAZQUEZ:

Q. Did you?

A. Yes.

Q. Did he sign a consent form?

A. Yes.

Q. After the consent form was signed did you enter the home?

MR. HOROWITZ: Objection.

THE COURT: Sustained.

BY MR. VAZQUEZ:

Q. What happened after he signed the consent form?

MR. HOROWITZ: Objection.

THE COURT: We went over this yesterday, Mr. Vazquez. I don't think it's redirect.

MR. VAZQUEZ: No further questions.

MR. GONZALEZ: May I have a brief recross on Exhibit 42? I did not touch upon the areas that he did on redirect.

THE COURT: No. You may step down, officer.

Call your next witness.

MR. VAZQUEZ: United States calls Miguel Mendoza. This testimony relates to a January 25th, 2014 incident.

THE COURT: Okay. Mr. Vazquez, is it your belief I

should give a limiting discussion as to one defendant?

MR. VAZQUEZ: I believe that is what the Court said yesterday.

THE COURT: If you could approach, again. I want to make certain we get it right. Just, Mr. Gonzalez, if you would. I want to make sure I have it right. This is the video, correct?

MR. VAZQUEZ: This is the video and also testimony regarding the behavior of codefendants and co-conspirators in front of the home.

THE COURT: The video is of Mr. Chacon?

MR. VAZQUEZ: Yes, Your Honor, Mr. Chacon was an identifiable co-conspirator.

THE COURT: So when we play the video is when I would say that the video can be only used with regard to your assessment against Mr. Chacon.

MR. VAZQUEZ: If that's what the Court ruled, however, (inaudible) robbery activity conducted by the group; Your Honor said you would give that instruction.

THE COURT: All right.

WITNESS SWORN

COURTROOM DEPUTY: Please state your full name for the record.

THE WITNESS: My name is Jose Mendoza.

BY MR. VAZQUEZ:
Q. Good morning, sir.
A. Good morning.
Q. How are you currently employed?
A. Construction.
Q. How long have you worked in the construction industry?
A. 22 years.
Q. Do you live in the City of Miami?
A. In the City of Miami.
Q. Without providing a specific address, what generally area do you live in?
A. Little Havana.
Q. How long have you lived there?
A. 20 years more or less.
Q. While you have lived -- has that been in the same home?
A. No.
Q. How long have you lived in your current home?
A. Some 13, 14 years.
Q. While you have lived in your home did you come to know a person who called himself Patron?
A. Yes.
Q. How did you come to meet that person?
A. They went across the street from my house to do illegal things.
Q. Mr. Mendoza, if you saw the person that you have described

as Patron again would you be able to identify that person?
A. Of course I would -- could I?
Q. Could you identify that person in court today?
THE COURT: You can get up, Mr. Mendoza.
THE WITNESS: May I go closer to look at them because I cannot see too well?
THE COURT: You may step over to where Mr. Vazquez is.
THE WITNESS: Yes.
BY MR. VAZQUEZ:
Q. Who is Patron?
A. Him.
Q. Who sir?
A. There.
THE COURT: You may resume your seat Mr. Mendoza.
BY MR. VAZQUEZ:
Q. Now you talked about what you saw Patron doing in your neighborhood?
A. Yes, I saw lots of things over there in the neighborhood, of course I did.
Q. Did you see the person you have identified as Patron selling narcotics?
MR. GONZALEZ: I am going to object as to leading.
THE COURT: You have to ask him what he saw.
Sustained.

BY MR. VAZQUEZ:
Q. Mr. Mendoza what did you see Patron doing in your neighborhood?
A. Oh, many things.
Q. Can you provide a specific example of what you saw him doing?
A. Let's say selling drugs. Many times looking where people were fighting. We even saw him many times with a pistol in his hand.
Q. What did he do with the pistol?
MR. GONZALEZ: I am going to object as to timeframe.
THE COURT: Answer the question, Mr. Mendoza, and then tell us approximately when.
What did he do with the pistol?
THE WITNESS: At times I saw him shooting.
BY MR. VAZQUEZ:
Q. Around what time, what year?
A. No, that was last year.
Q. How many times did you see Patron last year discharging a firearm?
A. I saw that about two times -- that I saw.
Q. Did you see Patron in the company of other people in front of the neighborhood -- in front of your home?
A. Eh (phonetic).
Q. Did you see any of those people in court today?

A. Yes.
Q. Can you identify them by an article of clothing?
A. Eh (phonetic).
Q. Can you please tell us what that article of clothing is.
A. The one in blue, the one with eye glasses over there and I don't know -- the rest I cannot see, and the one wearing a black shirt.
THE COURT: Light blue or dark blue?
THE WITNESS: Dark blue.
MR. VAZQUEZ: I believe there was a statement on both defendants.
THE COURT: I don't think so, Mr. Vazquez, but go ahead.
BY MR. VAZQUEZ:
Q. Sir, earlier you identified a person -- you used the word blue shirt; is that correct?
A. Yes.
Q. Did you see that individual in the company of Patron?
A. Yes.
Q. Can you identify that person by more than one article of clothing now?
A. He has a tie with lines like this.
Q. What is the person's skin color?
A. Dark, dark.
Q. Did you identify today in court a person wearing a black

shirt?
A. Yes.
Q. Is that another person that you also saw in the company of Patron?
A. Not in his company. But many times I did see him meeting him there.
Q. The individuals you have identified in court today, have you seen them doing anything in front of your house?
A. Yes.
Q. What have you seen them doing?
A. Selling drugs.
THE COURT: Break it down, Mr. Vazquez.
BY MR. VAZQUEZ:
Q. About what time, when, did you see them doing that?
A. Oh, oh, those people were there for almost one year.
Q. Did you see the person you have identified in the black shirt selling drugs?
A. No. I did see him but I believe he was consuming them.
Q. Did you see the person you have identified as wearing glasses selling drugs?
A. Yes.
MR. VAZQUEZ: For purposes of the record the individual identified as wearing a black shirt the Government would note the witness has identified Defendant Flores. And the individual identified as wearing the blue shirt, for

purposes of the record, is Defendant Dixon. And for purposes of the record the individual wearing the glasses the witness has identified as Defendant Altamirano.

THE COURT: All right.

BY MR. VAZQUEZ:

Q. Mr. Mendoza have you seen the individuals you have identified here today doing anything besides selling drugs --

MR. GONZALEZ: Objection as to individuals.

THE COURT: We're going to do the same exercise one by one so overruled.

THE WITNESS: Also, yes.

BY MR. VAZQUEZ:

Q. What did you see?

MR. RUBIO: Objection, the question is vague.

THE COURT: Let Mr. Vazquez get to the point. If he doesn't get to the point then --

MR. RUBIO: Yes, Your Honor.

BY MR. VAZQUEZ:

Q. What did you see?

A. Besides selling drugs I saw them many times --

MR. HOROWITZ: Objection as to them.

THE COURT: We know, Mr. Horowitz. We're going to get out hopefully within the next half hour what the gentleman saw, and then he is going to tell us specifically who he saw do what.

THE COURT: What did you see these folks do? And then you are going to tell us each person you saw do it.
Go ahead, Mr. Mendoza.
THE WITNESS: You cannot go by at night because they would snatch things from people --
THE COURT: Which of those people did that?
THE WITNESS: No, it was almost all of them together.
THE COURT, no no. You have to give me a particular who.
MR. VAZQUEZ: May I?
THE COURT: No, the witness can.
THE WITNESS: Such as --
BY MR. VAZQUEZ:
Q. Mr. Mendoza, did you see the individual in the black shirt furthest to the table to the left who you have identified in court today taking things?
A. No, No. I saw him together with them -- him.
Q. Did you see the individual in the blue shirts taking things from people as you have stated?
A. No. What he would do mainly was sell drugs.
Q. Did you ever see him take something from a person?
A. Not he specifically, but I did see him selling drugs.
Q. The question was --
THE INTERPRETER: Your Honor, the witness has asked if he could add something.

**THE COURT: Ladies and gentlemen, I am going to have you have a quick little coffee break and then we will be right back.**

**COURT SECURITY OFFICER: All rise, please.**

**JURY EXCUSED**

**THE COURT: What did the witness add?**

**THE INTERPRETER: The witness stated but some are missing.**

**THE COURT: It's true. All right, Mr. Vazquez, you need to be focused and you need to be focused without doing too much leading.**

**MR. VAZQUEZ: The only reason I was going by shirts is so they would be identified individually.**

**THE COURT: I understand. Shirts will get us through the morning.**

**All right. Five minutes, everybody.**

**RECESS TAKEN**

**COURT SECURITY OFFICER: All rise, please.**

**THE COURT: All right, Mr. Vazquez you may resume.**

**BY MR. VAZQUEZ:**

**Q. Mr. Mendoza, do you see the individuals you have identified wearing the purple shirt, Defendant Altamirano, taking items from individuals?**

**A. No; he would also sell.**

**Q. Did you see Mr. Chacon taking things from people?**

A. No, not him, he would only sell --
Q. Did you see, Mr. Chacon -- the individual you have identified as Patron -- take things from people?
A. The same one who is wearing glasses?
Q. No, sir; the person you have identified as Patron.
A. Okay him, yes, I did.
MR. VAZQUEZ: Permission to approach with the video.
THE COURT: Yes.
BY MR. VAZQUEZ:
Q. Showing you what has been marked for identification as Government's Exhibit 95.
Do you recognize it?
A. Yes.
Q. What is it?
A. A video taken with my camera.
Q. Showing you what has been admitted into evidence as Government's Exhibit 42.
Do you recognize it?
A. Yes.
Q. What is it?
A. That's across from my house.
Q. What is it?
A. That's the house number, 428, across the street from my house. Moreover, I know those individuals sitting there.
Q. Who is seated in the image depicted in Government's

Exhibit 42.

A. That is Joel and Hop Boy they call him Hop Boy.

Q. Showing you Government's Exhibit 36.

Do you recognize that?

A. Yes.

Q. What is it?

A. That is the house, that is the building 435 that is next to my house.

Q. And have you seen Mr. Chacon selling narcotics from the building located -- in Government's Exhibit 42 -- and by Chacon I mean the person you have identified as Patron here today?

A. Yes.

Q. Have you seen Chacon taking things from people around the structure in Government's Exhibit 42.

A. Yes.

Q. All right. Have you seen Chacon discharging a firearm in the area depicted in Government's Exhibit 42?

A. Yes.

Q. Have you seen Defendant Altamirano, the individual you have identified as wearing the glasses today, selling narcotics in the structure depicted in Government's Exhibit 42?

A. Yes.

Q. Have you seen Defendant Dixon, the individual you have identified as wearing a blue shirt here today in court, selling narcotics from the structure depicted in Government's

Exhibit 42?
A. And for a long time.
Q. Have you seen Mr. Flores the individual you have identified as wearing a black shirt in the area of the structure depicted on Government's Exhibit 42?
A. Yes. But this one -- I don't think he was selling; I think that he was consuming them.
Q. Did you see him in the area of Government's Exhibit 42?
A. Yes, I saw him there many times. And he hit my fence with a car.
Q. With regard to Government's Exhibit 36, within the year or timeframe you have testified to today, have you seen Defendant Chacon, the individual you have identified as Patron here in court, in this building or on the grounds of the building?
A. Yes, yes.
Q. Do you know who lived or lives in this area now or in the timeframe in the past year or so that you have described in court today?
A. A darker complexion man used to live there but he passed away so the young boys they went and got in to live there.
Q. When you say they are you referring to Patron who is Defendant Chacon who you have identified here today?
A. Yes. But it was several of them with him.
Q. Does that include Defendant Altamirano that you have identified as wearing the glasses today?

MR. HOROWITZ: Objection, leading.

THE COURT: Who does it include, Mr. Vazquez?

The witness has to testify.

BY MR. VAZQUEZ:

Q. Who else did you see in the structure from those you have identified here today?

A. The one with the blue shirt and the one with the glasses they would spend time there.

MR. VAZQUEZ: For purposes of the record the witness has identified Defendant Dixon and Defendant Altamirano.

BY MR. VAZQUEZ:

Q. Sir, you discussed having a camera system earlier, correct?

A. Yes.

Q. Do you know how that camera system operates?

A. Well, more-or-less.

Q. Are you able to the review materials that is on your camera system?

A. Yes.

Q. Now, the material on Government's Exhibit 95 which you identified here is this from your camera system?

A. Yes.

Q. Have you reviewed it?

A. Yes.

MR. VAZQUEZ: At this time I would move to admit into evidence Government's Exhibit 95.

MR. GONZALEZ: I would renew my previous objection --

MR. RUBIO: May I have a continuing objection on that.

THE COURT: The continuing objection is -- well, okay.

MR. HOROWITZ: If we might get the limiting instruction Your Honor.

THE COURT: Government's Exhibit 95 is admitted. I am going to give you a limiting instruction, ladies and gentlemen.

We talked about this earlier. The images you see the evidence you see from this video is only to be considered with regard to Mr. Chacon.

So in your deliberations as to Mr. Chacon this video may be considered, but not as to the other defendants.

VIDEOTAPE PLAYED FOR THE RECORD

BY MR. VAZQUEZ:

Q. Sir, do you recognize any of the individuals on the video?

A. Of course. The one that is there is Patron.

Q. Can you identify him on the screen?

A. The one that is here.

Q. You have identified Patron here in court. Is that how Patron, the individual that you have identified as Mr. Chacon, appeared?

A. No. Because with long hair -- I can recognize him because I have been in this struggle with them in my house for over a year.

MR. VAZQUEZ: If I might continue with the video.

VIDEOTAPE PLAYED FOR THE RECORD

BY MR. VAZQUEZ:

Q. Mr. Mendoza, do you see your screen right there?

A. Yes.

Q. Do you see what is depicted in the video?

A. It is already shown here in the video that they are checking him, and to me that clearly is a robbery.

MR. GONZALEZ: I am going to object as to speculation on his part. He was not there.

THE COURT: Clear that up for us, Mr. Vazquez.

BY MR. VAZQUEZ:

Q. Sir, you were not present for whatever is happening at this point in time, correct?

A. No, I was not present. But I would always watch what was going on in front of the cameras. When I hear the dogs bark -- when the dog would bark then I would turn the camera on and I would see what was happening outside.

Q. The activity, whatever it is called, that you see here had you seen this happening to other people as a result of Mr. Chacon with your own eyes?

MR. GONZALEZ: Objection, leading, Judge.

THE COURT: The answer is yes or no.

THE WITNESS: Yes.

VIDEOTAPE PLAYED FOR THE RECORD

THE COURT: Anything further, Mr. Vazquez.

MR. VAZQUEZ: Just allowing the video to complete.
THE COURT: All right.
VIDEOTAPE PLAYED FOR THE RECORD.
BY MR. VAZQUEZ:
Q. Did you see Defendant Chacon, the individual you have identified as Patron, in the company of numerous people in front of your house?
MR. HOROWITZ: Objection, Your Honor.
THE COURT: Sustained.
BY MR. VAZQUEZ:
Q. Have you seen Patron, Defendant Chacon, speaking to individuals in his company in front of your house?
MR. HOROWITZ: Same objection, Your Honor.
THE COURT: Haven't we covered this, Mr. Vazquez?
MR. VAZQUEZ: No, this is different.
THE COURT: You need to get at it a different way then.
BY MR. VAZQUEZ:
Q. Have you heard Chacon speak?
A. Yes.
Q. Have you heard Chacon speak with individuals who took up space in front of your house?
THE COURT: Come sidebar. Aside from the broad time-space continuum we are traveling on, he could have heard anyone in front of his house, the taxi driver, anyone. Who are we talking about here?

MR. VAZQUEZ: Talking about Mr. Chacon, talking about about his associates --

THE COURT: Who?

MR. VAZQUEZ: Both individuals who are here, people who are not here.

THE COURT: You need -- I can't just have "them". You need to ask, have you heard him speak to the guy in the glasses, when was it, and what did he say.

Did he speak to other people that you saw in front of the house? Do you know his name? You can show him a photo.

But this sort of amorphous kind of having a chat will not fly.

MR. RUBIO: Your Honor, with respect to this particular matter where Mr. Vazquez says these individuals and by implication is covering my client I would object.

THE COURT: This witness identified your client quite specifically. Now we're going into these comments, and I am telling Mr. Vazquez he must be specific.

BY MR. VAZQUEZ:

Q. Mr. Mendoza, has Patron spoken to you in the past year?

A. How so?

Q. Has he spoken to you? Has he directly spoken to you?

A. Yes we has spoken to me.

Q. Has Patron spoken to you about his role in the neighborhood?

MR. GONZALEZ: Objection, leading.

THE COURT: After this there will be nothing further on this.

Has he spoken to you about his role in the neighborhood yes or no?

THE WITNESS: No.

BY MR. VAZQUEZ:

Q. What has Patron said to you in the past year?

MR. GONZALEZ: Objection, timeframe.

THE COURT: We will get to that, Mr. Gonzalez, don't jump the gun.

THE WITNESS: Just how are you, fellow countryman, something like that.

BY MR. VAZQUEZ:

Q. Do you know how his voice sounds?

A. Yes, more or less.

Q. Have you heard Chacon speak to the man in the glasses in the past year, Defendant Altamirano who you have identified in court?

A. Yes.

Q. What has he said to him?

MR. HOROWITZ: Objection.

THE COURT: Overruled.

THE WITNESS: Well, I can't say because they speak in English and I don't.

BY MR. VAZQUEZ:
Q. Have you heard Defendant Chacon speak to the individual in the blue shirt who you have identified in court today?
A. Yes.
Q. Have you seen the person you have identified as Patron, Mr. Chacon, speak with the individual in the black shirt that you have identified in court today?
A. No, no, no. This guy would go there and he would meet with them, but I have not seen him speak to him.
Q. Have you seen Patron speaking with other individuals in the past year who you have not seen in court here today?
A. Yes.
Q. Have you heard Patron give them instructions?
MR. GONZALEZ: Objection, Judge, leading.
THE COURT: What have you heard Patron say?
THE WITNESS: The thing is they all speak in English. It could be they were born here or studied here. They all speak in English.
BY MR. VAZQUEZ:
Q. Have you seen Patron interacting with people you have not identified in court here today within the past year?
A. Yes.
Q. Have you seen those people -- not with language -- but responding to Patron?
A. Of course.

Q. How so?

THE COURT: I think we need some pictures, Mr. Vazquez.

BY MR. VAZQUEZ:

Q. Showing you what has been admitted into evidence as Government's Exhibit 19. Have you seen Patron interacting interacting with this individual?

A. Yes.

Q. Have you seen Defendant Chacon and this individual responding to each other?

A. How so?

Q. Have you seen this individual depicted in Government's Exhibit 19 reacting to anything Defendant Chacon has said?

MR. GONZALEZ: Objection, leading.

THE COURT: Overruled.

THE WITNESS: This young guy was one that would go around in a black Honda.

BY MR. VAZQUEZ:

Q. Did you see Defendant Chacon interacting with this person?

MR. GONZALEZ: Objection, asked and answered.

THE COURT: That's been asked and answered, but one more time and then we go on to the next time.

BY MR. VAZQUEZ:

Q. Did you see him interacting with this person?

A. Yes.

Q. How so?
A. This young guy would always be in a black car he would always be inside a black car. It was one of those people waiting for people to come by to attack --
THE COURT: All right. Let's move on to our next picture.
BY MR. VAZQUEZ:
Q. Showing you Government's Exhibit 18.
Do you recognize this person?
A. The thing with these guys is some of them --
THE COURT: No, no, no listen to the question, Mr. Mendoza. Do you recognize him?
THE WITNESS: I think I do. The thing is that this guy would wear a cap. They with call him, if I am not mistaken, they would call him El Guapo, the handsome one.
THE COURT: Have we admitted Government's Exhibit 18 into evidence? Are you offering it now?
MR. VAZQUEZ: Yes, ma'am.
THE COURT: Any objection.
MR. GONZALEZ: I had it admitted already. If not I have no objection.
THE COURT: I didn't think there would be an objection. It is admitted without objection.
MR. VAZQUEZ: Permission to publish Government's Exhibit 14. I believe it is admitted.

THE COURT: 14 is admitted.

BY MR. VAZQUEZ:

Q. Have you seen Defendant Chacon, the person you have identified as Patron, interacting with the person depicted in Government's Exhibit 14?

A. That one, I did not see him.

MR. VAZQUEZ: Permission to publish Government's Exhibit 11.

THE COURT: Yes, it is in evidence.

BY MR. VAZQUEZ:

Q. Showing you what has been admitted into evidence as Government's Exhibit 11.

Do you recognize this person?

A. Yes, that is Fat Boy.

Q. Have you seen Defendant Chacon who you identified as Patron interacting with this person?

A. Yes.

Q. Did that occur within the last year?

A. Every day.

Q. How would they interact?

A. He and Patron, they would interact much more because they would deal with each other more. It seems that they would be in charge of doing one thing and the others would dedicate themselves --

MR. GONZALEZ: I would object as to speculation.

THE COURT: Sustained.

BY MR. VAZQUEZ:

Q. Did you see the person you have identified as Fat Boy listening to Patron?

MR. GONZALEZ: Objection, speculation.

THE COURT: Overruled.

THE WITNESS: Can I answer something to the gentleman that is--

THE COURT: No, no. The question is, did you see Fat Boy listening to Patron?

THE WITNESS: Yes.

BY MR. VAZQUEZ:

Q. Did you see meandering down the road the person you have described as Fat Boy taking instructions from Mr. Patron?

MR. GONZALEZ: Objection, leading.

THE COURT: Sustained.

BY MR. VAZQUEZ:

Q. What type of interaction did you see between Fat Boy and Patron?

A. Because I believe these two were the ones in charge --

MR. GONZALEZ: Objection.

THE COURT: No, no, no. Ladies and gentlemen, we're going to take another five minute break.

JURY EXCUSED.

THE COURT: If you would take the witness outside for

just a second, Madam Interpreter.

WITNESS EXCUSED.

THE COURT: All right. Your witness can only answer direct questions. You cannot lead him, you cannot lead the police officers, you can lead no one, because you are the Government and you are on direct.

You can ask what he saw; he can characterize things he saw, he was angry, he was upset, he was loud, he yelled, all of that.

But you are going down a road, Mr. Vazquez, he is never going to follow. And we're not going to spend time anymore time on this.

Just as I am not going to allow the defense to go meandering down the road in cross, I am not going to allow it on the part of the Government either.

They can say what they saw and heard, but you can't lead them.

MR. VAZQUEZ: I will respect whatever the Court says --

THE COURT: Well, it's not just me; it is a couple years of case law.

MR. VAZQUEZ: A hundred percent, Your Honor.

THE COURT: Yes.

MR. VAZQUEZ: What I am trying to elicit, and what I think the Court has blocked in its ruling -- I am trying to get out what this witness has seen Chacon do.

THE COURT: How about this; what did you see Chacon do with this guy? Not I believe they were. If he is prepped appropriately he will say, I saw him yelling, I saw him pointing, I saw him giving him a bag.

He can say any of that. But I believe, it is my opinion, no.

What did you see Chacon do with this guy? What did you see him do with that guy? If he can't answer, he can't answer. We're not going to spend much more time.

So, five minutes.

RECESS TAKEN

THE COURT: Bring in our jury, please.

COURT SECURITY OFFICER: All rise, please.

THE COURT: Please be seated everyone.

You may continue, Mr. Vazquez.

BY MR. VAZQUEZ:

Q. Going back to Government's Exhibit 11. For the record this is an image of Miguel Rodriguez. What have you seen the person depicted in Government's Exhibit 11 do?

A. Many things.

Q. What is the first thing you can think of that he did?

A. He was one of the first ones who came across from my house to sell drugs.

Q. What else did the person do?

A. Steal.

MR. VAZQUEZ: May the Government ask for a clarification of the word provided to the interpreter?

THE COURT: Sure.

THE INTERPRETER: Robar; R-O-B-A-R for the court reporter.

BY MR. VAZQUEZ:

Q. Not theft, robbery? What is the meaning of that word?

THE COURT: No, no, no. The meaning of the word according to the interpreter is steal.

THE DEFENDANT: For the record it could be translated as to steal or to rob.

BY MR. VAZQUEZ:

Q. Who has been with the person depicted in Government's Exhibit 11 when these drug sales or robberies were happening?

A. Almost all of them.

Q. Who from the individuals that you have identified in court today specifically?

A. The guy in the purple shirt, the one in the blue shirt and Patron.

MR. VAZQUEZ: And for the record that is Defendants Dixon, Altamirano and Defendant Chacon.

Permission to publish Government's Exhibit 9.

THE COURT: Yes.

BY MR. VAZQUEZ:

Q. Showing you what has been admitted into evidence as

Government's Exhibit 9. Do you recognize that person?
A. Yes. But this one came over on very few occasions.
Q. What did you see this person do?
A. I believe selling drugs, this guy, because he would not come too much -- he would not be there on too many occasions.
Q. Who was with him when these drugs were being sold?
A. All of them.
Q. Sir, could you specifically state the person --
A. The same ones I just told you about.
Q. Can you identify those people specifically by an article of clothing.
A. The blue shirt, the one with the glasses and Patron.
MR. VAZQUEZ: For the record, Defendant Dixon, Defendant Altamirano and Defendant Chacon.
Permission to publish Government's Exhibit 8.
THE COURT: Yes.
BY MR. VAZQUEZ:
Q. Showing you Government's Exhibit 8.
Do you recognize it?
A. No. Not this one, no.
Q. Showing you an image, Government's Exhibit 7, do you recognize him?
A. No, I do not.
Q. Showing you what has been admitted into evidence as Government's Exhibit 6.

Do you recognize that?
A. This one, yes. But these would arrive at about eight.
Q. What have you seen this person do?
A. About this one I could not say because...
Q. Showing you what has been admitted into evidence as Government's Exhibit 12.
A. I did not see this one either.
Q. Showing you what has been admitted into evidence as Government's Exhibit 4.
Do you recognize this person?
A. These would just come in a car but they would not stay there, they would just come in for something.
THE COURT: Is that a yes or no as to 4?
BY MR. VAZQUEZ:
Q. Do you recognize the person depicted in Government's Exhibit 4?
A. I do know them, but the thing is they would only go by?
MR. VAZQUEZ: Your Honor, tender the witness.
THE COURT: Mr. Gonzalez, cross examination.
BY MR. GONZALEZ:
Q. Mr. Mendoza, you and I have never met before, correct?
A. Correct.
Q. Mr. Mendoza, you said Mr. Chacon, you mentioned him as Patron, that he was never disrespectful to you; is that correct?

**A. No.**
**Q. Now you indicated that you saw individuals using drugs in that area?**
**A. Yes.**
**Q. Did you see Mr. Chacon drinking beer or alcohol in that area?**
**A. Yes, the whole time.**
**Q. Did you see Mr. Chacon, my client, that is Mr. Patron, drinking to access?**
**MR. VAZQUEZ: Objection, relevance.**
**THE COURT: What could the possible relevance be, Mr. Gonzalez.**
**MR. GONZALEZ: To describe what he observed and in what context.**
**THE COURT: Sustained.**
**BY MR. GONZALEZ:**
**Q. Did you see Mr. Chacon smoking pot in the area?**
**A. Yes.**
**Q. Now you had this video camera across from the 482 residence -- your house is right across from there, and you had a camera, correct?**
**A. Yes.**
**Q. Did you turn over your camera and recordings of it to the police?**
**A. What is your question? I did not understand it.**

Q. Did you turn over footage to the police that covered more than just the January 25, 2014, video?
A. Yes.
Q. With regard to that video of January 25, 2014 you were not awake when that footage was taken?
A. Yes, I was awake. Because as soon as the dog barked I turned on the camera.
Q. But your camera doesn't give you voice, correct?
A. Some do, some don't.
Q. But the video that is in evidence that is --
A. Has none.
Q. Number 95, that has none?
A. No, it does not; it does not.
Q. And you did not hear what was being exchanged between the individuals on the camera in the video?
A. No, I didn't because I would look on the camera --
Q. Did you call the police that night?
A. Let me see, let me see. Yes, I did -- the problem is I would hardly ever call them because I was making the police go crazy.
Q. Did the police come to your residence on January 25, 2014, after this matter at 1 o'clock in the morning?
A. The thing is you call the police at 1 o'clock and they show up at 3 or 4 o'clock.
Q. The question is did you call the police and did they

respond?
A. Yes.
Q. And the individual in the video, do you know that individual from the neighborhood, the elderly person?
A. Yes. But I have not seen him ever again.
Q. Did you see him in the neighborhood interacting with --
THE INTERPRETER: Please give me a more precise word for interacting. It translates very poorly.
BY MR. GONZALEZ:
Q. Interacting meaning have any exchange of communication, words.
THE COURT: Talking.
MR. GONZALEZ: There you go.
BY MR. GONZALEZ:
Q. With my client Mr. Chacon prior to that day.
A. No, no, no.
Q. By that residence where you live at isn't there a market down on the corner there?
A. On 4th and 12th.
Q. Did you ever run into the individual that is in the video at the market?
A. Those people are always there on the block walking.
Q. Had you ever had any conversations with that individual there?
A. No.

Q. And that individual that is in the video he walks away, correct?
A. Yes.
Q. And Mr. Chacon goes in a different direction, right?
A. Yes, Patron he stays there.
Q. If Patron stayed there wouldn't you have called the police to make sure that they come on that particular day since they were still there?
A. Tell him that -- if I start calling the police -- there were 15 guys that were there. I would not be calling the police every so often, because I was going to get in trouble.
Q. Did you or ; did you not call the police?
A. Yes, I did call the police.
Q. And they did not come that day is that you are saying? They came the following day?
A. Yes. What happens is that I do not know because every time the police came no one was there.
Q. In the last year you said you witnessed Patron discharge a firearm in the area?
A. Yes.
Q. That is not on your video camera, correct?
A. That appears in my video camera, but I did not record it. That is to say my camera records, but the images are erased a month later.
Q. During that month you did not turn it over to the police,

is that what you are saying?
A. Yes.
Q. So then there is no video of this -- the discharge of any firearm?
A. Yes, there is. Not only once but -- the gun discharged several times. The police have one -- one or two.
Q. When in 2014 did this happen?
A. I do not have a sufficient memory for that; exactly I don't.
Q. Was it before the video of January 25, 2014, or afterwards?
A. Some before, some after.
Q. Now, showing you Government's Exhibit 36. That is the building you said some of these individuals were staying at?
A. Um-hm.
Q. This is the building where Mr. Chacon would stay at times?
A. Yes.
Q. So some of these individuals were actually living there; is that correct?
A. Yes.
Q. Was there like another family that was staying there in the upstairs --
A. At the other one -- this window over here.
Q. Are you pointing to the building on the left or on the right?
A. It depends on how you are looking at it.

Q. From your vantage point, right there.
A. The right, the right.
Q. So it would be the blue building?
A. I believe it is blue, yes. They are painted the same color but it looks blue because of the camera.
Q. Because of the angle it looks blue, but you are saying it is a white building to the right of 428?
A. Um-hm, yes.
Q. So some of the people would be staying in that building also?
A. Back then there was a family that lived up there and another family downstairs.
Q. These buildings were abandoned at that point, right?
A. No, these were --
Q. When you say these?
A. This one was --
THE COURT: By the way, don't interrupt each other and, Mr. Gonzalez, why do we care about the other people staying there.
MR. GONZALEZ: Because they said he was staying there that's why, and there were other people staying there --
THE COURT: Are these people part of this case?
MR. GONZALEZ: They are part of the events of November 20th, 2013.
THE COURT: Let's get to that.

BY MR. GONZALEZ:

Q. Now, you said some of these people were staying here in 2014. Some of these individuals were staying there earlier meaning the end of 2013?

A. Yes, yes.

Q. At one point you said the building in the middle, the 428 building, there was a gentleman that lived there but he passed away, and that is when the individuals came into the building?

A. No, he lived in this one here, 435.

Q. And 435 is the one with the plywood in the front, the one right in the middle?

A. This one right here in the middle.

Q. Did your camera or video record of any of the events of November 20th, November 21st, 2013, with regard to this area if you know?

MR. VAZQUEZ: Objection. Outside the scope of redirect.

THE COURT: Overruled.

THE WITNESS: What events are you talking about?

BY MR. GONZALEZ:

Q. You said there was police activity there on November 20th, November 21st, 2013. Did your video capture any of that? Did any of the cameras from your home capture any of that?

A. Yes, the cameras. I have had the cameras for a year -- a year and a month.

Q. So you are not sure if your cameras were in place back November 20th, November 21st, 2013, is that what you are saying?
A. I don't believe that they were there in -- my cameras were there. I have the images from when they were. I have had the camera for a year and two months approximately. That is when I started recording.
Q. What period of time of your cameras -- the footage did you turn over to the police?
A. No, it was things that looked like they were significant things, things that you would say you had to turn them over to the police.
Q. When Mr. Chacon spoke to you he spoke to you in Spanish; is that correct?
A. Yes.
Q. And when he interacted or talked to you he talked to you just about --basically greeting you, correct?
A. Of them I have never any complaint. They never got into anything with me. Why am I going to say any of that really?
Many times I would go out to tell them not to sell drugs in front of my gate -- the front gate of my house. And many times they did pay attention to me because I would go out and tell them and they would move.
Many times new ones would come, so I would tell one of the older ones to tell him, listen, I need for you to tell him not

to sell drugs right in front of my house.
Q. Now, Mr. Chacon spoke to you in Spanish because you did not understand English, correct?
A. I understand a little bit of English. I know certain words.
Q. When Mr. Chacon spoke with any of the people he was associating with he spoke with them in English, right?
A. In English, yes. I was never outside. I did not like to be outside because sometimes they would have scuffles between themselves; they would argue between themselves.
Q. You never spoke to that individual that is in the video of January 25, 2014, in regard to what happened that day, did you?
A. No. That person got lost from the block. I think he left the block.
Q. So you don't know what the conversation was about, whether it had to do with a debt or anything of that nature, correct?
A. No, I cannot tell you.
Q. Did you see that individual -- let me ask you, did you know him by the name of Rafa?
A. Who.
Q. The elderly person in the video, of your January 25, 2014, video?
A. The gentleman you mean?
Q. Yes, the gentleman?
A. No, I just look at them -- the only way I know them is I just know them by face.

Q. Did you ever see him -- besides on that day of January 25, 2014, did you ever see him talking with Chacon and any of the other individuals in front of your house?
A. The man you mean?
Q. The gentleman you described.
A. No, no, no. I would only see them go by. Only that time I saw them interacting, but I would see the gentleman go by.
THE COURT: How much more, Mr. Gonzalez?
MR. GONZALEZ: I am basically, done Judge, I just need to go over my notes for one second.
THE COURT: All right. Ladies and gentlemen, we're going to be concluded with all the cross examination by 12:30, and then we will go to lunch.
Govern yourself accordingly, gentlemen.
MR. GONZALEZ: I have no further questions, Your Honor.
Thank you.
THE COURT: All right, Mr. Horowitz.
MR. HOROWITZ: Thank you, Your Honor.
BY MR. HOROWITZ:
Q. Good morning, Mr. Mendoza.
A. Good morning.
Q. Mr. Mendoza, I would like to ask you some questions if I may about your camera.
A. Okay.
Q. It would be a fair statement to say you got the camera in

late 2013?
A. It would have to go back a month -- I don't remember, but I believe I did.
Q. The video we saw was taken January 25, 2014?
A. Um-hm.
Q. Did you get the camera about a month or two before that?
A. I believe it was 2, 3 months before.
Q. Did you install it yourself or did someone install it for you?
A. I myself did it.
Q. When you installed it you selected how you were going to position that camera so it showed right in front of your gate?
A. In front of the house I have four cameras.
Q. Are you able from inside the house to see the four angles?
A. Perfectly well.
Q. Do you have the ability to shut the camera on or off if you choose?
A. Of course.
Q. And is that camera running 24 hours a day?
A. Yes.
Q. Mr. Mendoza, I represent the young man with the glasses who is standing up.
A. Yes. Many times I told him to go find work, to not be out there by the gate.
Q. As a matter of fact,, the times you talked to him he asked

you for work; did he not?

MR. VAZQUEZ: Objection, relevance.

THE COURT: Mr. Horowitz, what is the relevance.

MR. HOROWITZ: The relevance is the interaction between my client and this witness that did not have anything to do with the allegations in the indictment.

THE COURT: And there we go because we are not concerned with anyone that does have to do with the allegations in the indictment. Sustained.

BY MR. HOROWITZ:

Q. Before we go into that area let me ask you a question about the videos you recorded. Did you ever record any videos of the young man with the glasses?

A. No. What he directly did is he would sell drugs; he only sold drugs.

Q. You never saw him take anything?

A. Well, what happened was that when the robberies, the assaults took place they were all there; so it's all of them.

Q. But he never participated, correct?

A. Participating like robbing?

Q. You testified that you never saw the young man with the glasses take anything from anyone; is that correct?

A. No, not on that day. But remember they all worked together.

Q. Mr. Mendoza, see this man, I am asking you questions only about this gentleman right here.

THE COURT: I think he has answered.

MR. HOROWITZ: He used the word we so I wanted to make sure.

THE COURT: Let's just move on shall we.

MR. HOROWITZ: Yes, Your Honor.

BY MR. HOROWITZ:

Q. Mr. Mendoza, what kinds of drugs did he sell?

A. I cannot tell you but that they sold drugs; they did sell drugs.

Q. You don't know what kind, do you?

A. All types of drugs were sold there.

Q. Did you buy any drugs?

A. I did not buy nor have I ever used any.

Q. You are a construction worker, you don't use drugs, you don't buy drugs, true?

A. I do not buy drugs; I do not use drugs. Why do I tell you he sold drugs? Because many times when the police would come they would toss the little packages and I found them.

Q. The police would toss the drugs away?

A. No, no, no, the guys there. When the police would come they would hide and when they had a chance they would toss them away.

Q. Mr. Mendoza, the man with the glasses, what kinds of drugs did he toss away if ever?

MR. VAZQUEZ: Objection, asked and answered.

THE COURT: Go ahead, one more time, and then we move on.

THE WITNESS: What type of drugs I cannot tell you because when the police would come I could not go and tell them, well, here's the drugs because I was going to get in trouble. You have to live there to know the problem we have to face on the block.

THE COURT: Thank you, Mr. Mendoza.

Let's move on, Mr. Horowitz.

MR. HOROWITZ: Yes, Your Honor.

No further questions.

THE COURT: Thank you. Mr. Korchin.

MR. KORCHIN: No questions.

THE COURT: Mr. Donet.

BY MR. DONET:

Q. Good afternoon, sir, how are you?

A. I am fine. How are you?

Q. Good. Can you tell us when you first moved in that house?

A. It was in 2000 or 1999 when I bought the house.

Q. Do you remember when the gentleman that lived across the street passed away?

A. That house across the street there is a long history about that house. That house some would come and then others would come. It was always for the same, for the same, for the same.

Q. Earlier today you told us when the elderly gentleman across

the street passed away these individuals you identified in photographs moved into that house, correct?
A. You are wrong. You are talking about the house across the street, the gentlemen lived in the building on the side.
Q. The building on the side when did that occur? When did he pass away, and when did these individuals you identified move in?
A. If I am not mistaken the gentleman died between September, December 2013 and furthermore they had not even taken the things away from the house and this -- these young men had already moved in.
Q. Now I represent James Dixon, this young man in the blue shirt, so I am going to ask you some questions about him specifically, okay?
A. Yes.
Q. I am going to try to ask the questions in a simple form so you can answer yes or no, and if you need to explain after you answer yes or no you may explain your answer, all right?
A. That's fine.
Q. The young men you identified that moved into the house, Mr. Dixon was not one of the first people that moved into the house or used to stay near that house, correct?
A. No, not him, not him.
Q. So he was not staying in that house, correct?
A. No, not him.

Q. He would occasionally go to that location, correct?
A. No. He would spend quite a while there. When he came he did stay there for quite a while. Him and the one with the glasses when they came they would stay almost all night long and almost all day long.
Q. That would have been -- when you first saw him would have been in December of 2013?
A. No, he came in 2014 and 2014 he came -- March after they did.
Q. So about March or April of 2014, correct?
A. Approximately, yes.
Q. And you never had any problem with him, any discussions or anything negative with him, correct?
A. No, I never had a -- once I did confront him because the one next to him when he got on my fence, he hit my fence, then I asked him if he had seen who it had been and then told me, no.
And when I saw the video he was talking with the young guy and so I told him, you see that I don't get in your way, I don't bother you, I see you come and you sell your things and I don't bother you, why do you lie to me when something like this happens?
Q. Was that a conversation you had in Spanish with Mr. Dixon?
A. No. I speak a little bit English; I spoke to him in English.

Q. I want to be clear, you never saw Mr. Dixon steal or take anything from anyone in front of your house, correct?
A. Again, I repeat, not him but when one of them -- all of them are there. Remember it is one and it's all of them. If something happened to one of them all of them would be there.
Q. Try to listen to my question carefully and answer yes or no.
Did you see Mr. Dixon take anything from anyone?
A. No, he would only sell. But when that was happening all of them were there.
Q. How many times did you see Mr. Dixon sell?
A. You should rather ask how many times I did not see him.
Q. I am asking how many times did you see him sell?
A. Since he moved there he was always selling.
Q. Did your cameras capture that?
A. Those are really mild things. I don't think that is all that important to inform the police because that happened every day.
Q. Mr. Mendoza, I am trying to ask you a question in simple format --
THE COURT: I think he has answered it, Mr. Donet.
Q. Do you remember the first time you saw Mr. Dixon sell?
A. I cannot tell you the first time, but if I saw him selling a lot of times I saw him selling a lot of time.
Q. What would he sell?

A. I cannot tell you because as I am telling you -- he was one of the most stubborn ones. The police would arrive and he would hide the drugs, he would go to the corner, and then he would come back.
Q. Did you ever see what kind of drugs he sold?
MR. VAZQUEZ: Objection, asked and answered.
THE COURT: One and a time.
THE WITNESS: No I cannot say.
BY MR. DONET:
Q. Did you ever see him counting money?
A. Oh, that yes, of course. I also saw him conducting transactions.
Q. You talked about -- showing you Government's Exhibit 11. You said you saw him interact with this individual.
A. Yes.
Q. Specifically what would he do?
A. What do you mean?
Q. You said the two of them spoke a lot and acted together. What did they do?
A. Thing is I do not know whether he was selling, as you call it, stones or the other one was selling marijuana, I do not know. They would sell different thing.
Q. What did you see Mr. Dixon do or say with the individual in the photograph?
A. Tell him Dixon does not speak Spanish, if they spoke they

spoke in English.
Q. You never saw Mr. Dixon give this individual money, correct?
A. No, no, no. I did not see him giving money but, yes, they were -- they would interact, yes.
Q. Showing you what has been admitted into evidence as Government's Exhibit 9. With this individual did you ever see Mr. Dixon give money to this individual Raymond Moore?
A. He would go very little over there.
Q. In fact, the times you saw Mr. Dixon make what you believed to be a sale, you never then saw him go and turn over money to anyone else, correct?
A. No.
MR. DONET: No further questions.
THE COURT: Thank you Mr. Donet. Mr. Rubio.
BY MR. RUBIO:
Q. I want to ask you some questions with respect to my client Mr. Jay Flores.
A. All right.
Q. You lived in the area a number of years?
A. Yes.
Q. This problem you had with individuals you have described, this started occurring at some point in time while you were living there, correct?
A. Yes.

Q. This was as a result of a group of people coming to the area of where you lived, correct?
A. I did not quite hear that. What did you say?
Q. These people came that you were having problems with -- was as a result of them coming to your area at some point, correct?
A. No, I did not have any problems with anyone. What they did was -- is that they left us without any privacy in the entire neighborhood.
Q. What I want you to tell us is about when did that start happening?
A. Well, that started -- in 2013 there were two. But at the end of 2013 that is when the invasion occurred; almost all of them came.
Q. Now I want to ask you specifically about Mr. Flores, the young man you have identified, who is standing up now, as wearing a black shirt. You saw him there as you described using drugs, correct?
A. Yes, I did. But over there he would not sell. I believe he would just take them.
Q. And would it be fair to say you saw him smoking marijuana there?
A. Yes, he did. He would just go there to use the drugs.
Q. Okay. You never saw him sell any drugs there?
THE COURT: Next question. We have established that, Mr. Rubio.

MR. RUBIO: Your Honor --
THE COURT: Next question.
BY MR. RUBIO:
Q. You never saw him --
THE COURT: Next question.
BY MR. RUBIO:
Q. You never saw him use any violence?
A. No, no, no.
Q. You never saw him with a gun?
A. No, him, I did not.
Q. You never saw him rob anyone?
A. I did not not him.
Q. You never saw him shoot a gun?
A. I did not.
Q. He was never present when any of that was happening, correct?
A. No, no not him. He would just come by.
Q. The one time he hit your fence he was intoxicated was he not?
MR. VAZQUEZ: Objection, speculation.
THE COURT: If he knows.
THE WITNESS: I do not believe he was intoxicated. What happened was I believe he got scared and left.
MR. RUBIO: Nothing further, thank you.
THE COURT: Redirect.

BY MR. VAZQUEZ:
Q. Mr. Mendoza, who did you speak to about moving the group from the front of the house -- from selling drugs in front of the house?
A. Fabo, Fabo -- how does it go? Fat Boy, Fat Boy. And with Patron I told him once or twice.
Q. Are you referring to the individual you have identified as Patron, Defendant Chacon for the record?
A. Um-hm.
Q. Is that a yes?
A. Yep.
Q. Why did you decide to speak with Patron about moving drug sales from the front of your house?
A. Because I could see he was the one that had more authority.
MR. GONZALEZ: Objection, speculation.
THE COURT: Overruled.
BY MR. VAZQUEZ:
Q. The camera system, you were asked questions about it. Do you recall that?
A. Um-hm.
Q. Is that a yes?
A. Yes.
Q. How does your camera system go from recording to not recording?
A. If you turn it off.

Q. Do you have to turn on the recording feature?
A. No. Once it's on it will record by itself.
Q. If you are unaware of an event what happens to the recording?
A. Unfortunately they are on the block, whenever something happens, there are people who do not work and then they tell me --
THE COURT: No, no, no, stop. Talking about a camera, yes?
BY MR. VAZQUEZ:
Q. What happens to the camera -- a recording if you don't preserve it automatically, what happens?
A. If I start recording small things, unimportant things -- because let's say so many things would go on there -- I would only look whenever there was a shooting.
Q. Sir, are your recordings automatically deleted if you do not preserve it?
A. Yes.
Q. You talked to defense counsel about robberies happening?
A. Um-hm.
Q. Is that a yes?
A. Yes.
Q. Was the individual you identified as Patron present when robberies were happening?
MR. GONZALEZ: Objection asked and answered.

THE COURT: Overruled.

THE WITNESS: Yes, yes.

Q. Was Defendant Altamirano, the person you identified as wearing glasses, present?

A. Present but not -- he would not participate but he would be present.

Q. Was Defendant Dixon, the person you identified as wearing the blue shirt, present while the robberies happened?

A. Present but he would not participate either.

MR. VAZQUEZ: No further questions, Your Honor.

THE COURT: Thank you, Mr. Mendoza you may step down.

THE WITNESS: Thank you.

THE COURT: Ladies and gentlemen of the jury, we're going to take our lunch recess. We're going to break until 1:45 today. Remember don't talk about anything you have heard with anyone else or amongst yourselves.

Have a good lunch and be back here at 1:45.

COURT SECURITY OFFICER: All rise, please.

JURY EXCUSED

THE COURT: Please be seated. What is our lineup for this afternoon?

MR. VAZQUEZ: We have 3 to 4 witnesses lined up. I can bring more if the Court needs.

THE COURT: No; I don't know that I will make it the whole afternoon.

MR. GONZALEZ: May we find out who they are?

MR. VAZQUEZ: I provided a tentative witness list, Your Honor.

MR. GONZALEZ: We have the list. We just want to know who they are.

MR. VAZQUEZ: I don't know the order. We may call Officer Lewis and Mr. Guzman. We have civilian witnesses.

I have told them the general nature of the civilians, but I would prefer not to give specific notice of the civilians.

THE COURT: Would you prefer to have the civilian witnesses testify today?

MR. VAZQUEZ: That is my preference.

THE COURT: Why don't we do that, and see how long my voice lasts.

MR. VAZQUEZ: I have one officer that is short that has to go in front of one of the civilian witnesses.

THE COURT: That's not a problem. All right. Mr. Gonzalez, we will perhaps talk at a later time, but I have gone through these Facebook pages, and I don't see them coming into evidence.

You can ask Mr. Guzman if he was in the music business; if he was in the music business with Mr. Chacon.

What that has to do with anything I don't know. But anything else is rank hearsay, it has nothing to do with his

credibility, his role in this conspiracy. I will allow you to give me argument on that before we hear from Mr. Guzman, but right now, having reviewed all these pages, I don't see it.

MR. GONZALEZ: There's all these different BMT -- different events where they are playing. I think Mr. Guzman can testify to that; he has personal knowledge of it.

The fact some of them deal with the BMT record label and they are going to be playing at the King of Diamonds, that they are going to be playing at some other clubs, I think that is the relevance of those posts.

I will review my documents and come up with additional argument.

THE COURT: The fact that he posts a picture of a cover of Rick Ross --

MR. GONZALEZ: In addition to all of that there are video recordings that Mr. Chacon did that were posted on U Tube. And those recordings are of things that are basically tied into what Rick Ross and some of the other rappers talk about; that is they talk about the trap, they talk about snitching.

It is all a part of the culture, Judge.

THE COURT: If I post a picture of Giselle on my likes it does not put me in her league.

MR. GONZALEZ: That is also what they rap about -- a lot of that, all the shows, the studio time, Nadim Guzman knows

about.

THE COURT: He shared studio time with Rick Ross?

MR. GONZALEZ: No, with Mr. Chacon.

THE COURT: None of that is coming in, none of it. You may ask Mr. Guzman whether he was a DJ, whether he promoted your client, if they ever played anywhere as a group.

But all the rest of this not coming in.

MR. KORCHIN: One brief thing.

THE COURT: Yes.

MR. KORCHIN: Regarding the civilian witnesses this afternoon, the list of potential witnesses was sent to us by e-mail, it looks like the tenth of February.

The last sentence of the e-mail reads, we have about eight civilian witnesses which we may call during the week. We will advise you the evening before the civilian witnesses are called of potential testimony.

THE COURT: Okay. I think it is time for them to get the names.

MR. VAZQUEZ: I will confer with them. I would ask if possible they could keep it to themselves for preparation of cross examination.

THE COURT: You mean not talk to their clients?

MR. VAZQUEZ: Not share the particular witnesses that will be called.

THE COURT: No, they need to be able to speak to their

clients about who is testifying here today. Let me make it clear, if anyone reaches out to any of these witnesses there will be consequences.

I am making it as clear as I possibly can. If you believe your clients don't understand please explain it to them, gentlemen. Or if the members of their family don't understand explain it to them.

But they deserve to know who is coming up.

MR. VAZQUEZ: I will tell them.

MR. GONZALEZ: Clearly we understand that and we understand the Court's concern.

THE COURT: Okay.

MR. GONZALEZ: I just want to add those witnesses have been out there 2 or 3 days, we have seen them, and no one has gone anywhere near any of them.

THE COURT: That is what I expected and I don't know why -- Mr. Vazquez if they are there and they are going they have to consult with their clients about cross.

MR. VAZQUEZ: I provided names -- I have a list right here. I will speak to counsel.

THE COURT: All right. I will see you back at 1:45.

(A.M. SESSION CONCLUDED)

- - -

**C E R T I F I C A T E**

**I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.**

**/S/PATRICIA SANDERS**

| | |
|---|---|
| **DATE FILED** | **PATRICIA SANDERS, RPR** |

DAILY COPY


## /

**/S/PATRICIA** [1] - 68:7

## 1

**1** [3] - 1:6, 41:22, 41:23
**10** [1] - 8:1
**104th** [1] - 2:4
**11** [6] - 33:8, 33:12, 36:17, 36:19, 37:14, 57:13
**11-3** [1] - 2:7
**1107** [1] - 2:4
**11th** [2] - 10:6, 10:12
**12** [1] - 39:6
**12:30** [1] - 49:12
**12th** [1] - 42:19
**13** [1] - 13:18
**14** [4] - 13:18, 32:25, 33:1, 33:5
**14-20017-CR-KMW** [1] - 1:2
**15** [2] - 8:1, 43:10
**150** [1] - 1:21
**18** [2] - 32:8, 32:16
**19** [2] - 31:6, 31:13
**1910** [1] - 1:24
**1999** [1] - 53:19
**1:30** [1] - 3:19
**1:45** [3] - 63:14, 63:17, 67:21

## 2

**2** [2] - 50:7, 67:14
**2-11-2015** [1] - 1:3
**20** [1] - 13:14
**2000** [2] - 1:19, 53:19
**2013** [14] - 9:18, 9:21, 10:4, 10:7, 45:24, 46:4, 46:14, 46:22, 47:2, 50:1, 54:9, 55:7, 59:11, 59:12
**2014** [17] - 6:6, 8:20, 9:8, 11:24, 41:2, 41:4, 41:21, 44:7, 44:10, 46:3, 48:11, 48:20, 49:2, 50:4, 55:8, 55:10
**20th** [4] - 45:24, 46:14, 46:21, 47:2
**21st** [3] - 46:14, 46:22, 47:2
**22** [1] - 13:7
**24** [1] - 50:19
**25** [8] - 41:2, 41:4, 41:21, 44:10, 48:11, 48:20, 49:1, 50:4
**25th** [1] - 11:24
**28** [4] - 9:18, 9:21, 10:4, 10:7

## 3

**3** [4] - 41:24, 50:7, 63:22, 67:14
**305.523.5528** [1] - 2:8
**3250** [1] - 2:2
**33128** [1] - 2:7
**33130** [1] - 1:22
**33132** [1] - 1:17
**33133** [1] - 2:3
**33134** [1] - 1:20
**33138** [1] - 2:5
**33156** [1] - 1:24
**36** [3] - 22:3, 23:11, 44:12
**3rd** [3] - 6:6, 8:20, 9:8

## 4

**4** [5] - 39:9, 39:13, 39:16, 41:24, 63:22
**400** [1] - 2:7
**406** [1] - 2:2
**42** [12] - 7:15, 7:24, 11:19, 21:17, 22:1, 22:10, 22:14, 22:17, 22:21, 23:1, 23:5, 23:8
**428** [9] - 6:3, 6:6, 9:11, 9:16, 10:6, 10:11, 21:23, 45:7, 46:6
**435** [4] - 6:3, 22:7, 46:9, 46:10
**44** [1] - 8:7
**482** [1] - 40:19
**4th** [2] - 1:16, 42:19

## 6

**6** [1] - 38:25
**614** [1] - 1:19

## 7

**7** [1] - 38:21

## 8

**8** [2] - 38:15, 38:18

## 9

**9** [3] - 37:22, 38:1, 58:7
**9130** [1] - 1:23
**95** [5] - 21:11, 24:19, 24:25, 25:6, 41:12
**99** [1] - 1:16

## A

**A.F.P.D** [1] - 1:21
**A.M** [2] - 1:5, 67:22
**A.U.S.A** [3] - 1:15, 1:15, 1:16
**abandoned** [1] - 45:13
**ability** [1] - 50:16
**able** [5] - 6:9, 14:1, 24:16, 50:14, 66:25
**above-entitled** [1] - 68:4
**access** [1] - 40:9
**according** [1] - 37:9
**accordingly** [1] - 49:14
**accurate** [1] - 68:4
**acted** [1] - 57:18
**activity** [3] - 12:18, 26:18, 46:21
**add** [3] - 19:25, 20:6, 67:13
**addition** [1] - 65:15
**additional** [1] - 65:11
**address** [3] - 3:16, 10:1, 13:10
**admit** [1] - 24:24
**admitted** [14] - 21:16, 25:6, 31:5, 32:16, 32:20, 32:23, 32:25, 33:1, 33:11, 37:25, 38:24, 39:5, 39:8, 58:6
**advise** [1] - 66:15
**advised** [2] - 3:7, 8:14
**afternoon** [4] - 53:16, 63:21, 63:25, 66:11
**afterwards** [1] - 44:10
**agreed** [1] - 3:21
**ahead** [3] - 16:13, 19:3, 53:1
**alcohol** [1] - 40:5
**allegations** [2] - 51:6, 51:8
**allow** [5] - 4:16, 11:3, 35:13, 35:14, 65:1
**allowing** [1] - 27:1
**almost** [6] - 17:15, 19:7, 37:15, 55:4, 55:5, 59:12
**Altamirano** [10] - 4:2, 18:3, 20:22, 22:19, 23:24, 24:10, 29:18, 37:21, 38:14, 63:3
**ALTAMIRANO** [1] - 1:7
**AMERICA** [1] - 1:3
**amorphous** [1] - 28:11
**angle** [1] - 45:6
**angles** [1] - 50:14
**angry** [1] - 35:8
**answer** [10] - 15:12, 26:22, 34:7, 35:3, 36:8, 36:9, 54:17, 54:18, 56:6
**answered** [9] - 10:8, 11:2, 31:20, 31:21, 52:1, 52:25, 56:21, 57:6, 62:25
**ANTHONY** [1] - 1:8
**anticipating** [1] - 4:18
**aPPEARANCES** [1] - 1:14
**APPEARANCES** [1] - 2:1
**appeared** [1] - 25:21
**approach** [2] - 12:4, 21:7
**appropriately** [1] - 36:3
**April** [4] - 6:6, 8:20, 9:8, 55:10
**area** [18] - 6:18, 6:22, 7:5, 7:13, 13:10, 22:17, 23:4, 23:8, 23:16, 40:3, 40:6, 40:17, 43:19, 46:14, 51:11, 58:20, 59:2, 59:5
**areas** [2] - 9:22, 11:19
**argue** [1] - 48:9
**argument** [2] - 65:2, 65:12
**arrest** [1] - 8:19
**arrests** [1] - 10:13
**arrive** [2] - 39:2, 57:2
**article** [4] - 16:2, 16:4, 16:20, 38:10
**aside** [1] - 27:22
**assaults** [1] - 51:18
**assessment** [1] - 12:16
**assignment** [1] - 9:21
**associates** [2] - 4:6, 28:2
**associating** [1] - 48:6
**attack** [1] - 32:4
**attention** [1] - 47:22
**authority** [1] - 61:14
**automatically** [2] - 62:12, 62:16
**Avenue** [3] - 2:7, 10:7, 10:12
**awake** [2] - 41:5, 41:6

## B

**bag** [1] - 36:4
**baggie** [2] - 7:1, 7:2
**bark** [2] - 26:15, 26:16
**barked** [1] - 41:6
**because..** [1] - 39:4
**beer** [1] - 40:5
**begin** [1] - 3:6
**behalf** [1] - 4:2
**behavior** [1] - 12:9
**belief** [1] - 11:25
**bend** [1] - 7:1
**between** [6] - 34:18, 41:14, 48:8, 48:9, 51:4, 54:8
**bit** [3] - 6:20, 48:4, 55:24
**black** [11] - 16:7, 16:25, 17:16, 17:23, 19:14, 23:4, 30:6, 31:17, 32:2, 32:3, 59:16
**block** [6] - 5:25, 42:22, 48:12, 48:13, 53:7, 62:5
**blocked** [1] - 35:24
**blue** [18] - 16:5, 16:8, 16:9, 16:16, 17:25, 19:18, 22:24, 24:7, 30:3, 37:18, 38:12, 45:3, 45:4, 45:5, 45:6, 54:12, 63:8
**blurry** [1] - 7:18
**BMT** [2] - 65:4, 65:7
**Bob** [1] - 4:19
**born** [1] - 30:17
**bother** [2] - 55:20, 55:21
**bought** [1] - 53:19
**Boulevard** [2] - 1:19, 1:23
**Boy** [9] - 22:2, 33:14, 34:3, 34:10, 34:14, 34:18, 61:5

DAILY COPY

**boys** [1] - 23:20
**break** [6] - 9:4, 17:12, 20:2, 34:23, 63:14
**brief** [2] - 11:18, 66:8
**brightest** [1] - 3:8
**bring** [4] - 3:2, 5:8, 36:12, 63:23
**broad** [1] - 27:22
**building** [22] - 6:3, 6:6, 7:7, 9:11, 9:16, 9:18, 22:7, 22:10, 23:14, 44:13, 44:15, 44:23, 45:3, 45:7, 45:9, 46:6, 46:7, 46:8, 54:4, 54:5
**buildings** [1] - 45:13
**bulb** [1] - 3:8
**business** [2] - 64:23
**buy** [4] - 52:12, 52:13, 52:15, 52:16
**BY** [66] - 2:6, 5:18, 9:6, 9:14, 10:10, 10:21, 11:4, 11:12, 13:1, 14:10, 14:16, 15:1, 15:16, 16:14, 17:13, 18:5, 18:12, 18:18, 19:13, 20:20, 21:9, 24:4, 24:11, 25:14, 26:2, 26:11, 27:4, 27:10, 27:17, 28:19, 29:7, 29:14, 30:1, 30:19, 31:4, 31:18, 31:23, 32:7, 33:2, 33:10, 34:2, 34:12, 34:17, 36:16, 37:6, 37:12, 37:24, 38:17, 39:14, 39:20, 40:16, 42:9, 42:14, 46:1, 46:20, 49:19, 51:10, 52:6, 53:15, 57:9, 58:16, 60:3, 60:6, 61:1, 61:17, 62:10
**bys** [2] - 7:20, 8:24

## C

**camera** [29] - 21:15, 24:12, 24:14, 24:16, 24:20, 26:16, 40:19, 40:20, 40:23, 41:7, 41:8, 41:15, 41:16, 43:21, 43:22, 43:23, 45:5, 46:13, 47:6, 49:23, 49:25, 50:6, 50:12, 50:16, 50:19, 61:18, 61:23, 62:8, 62:11
**cameras** [9] - 26:15, 46:23, 46:24, 47:1, 47:4, 47:8, 50:13, 56:15
**cannot** [11] - 14:6, 16:6, 19:4, 35:4, 48:16, 52:8, 53:3, 56:23, 57:1, 57:8
**cap** [1] - 32:14
**capture** [3] - 46:22, 46:23, 56:15
**car** [4] - 23:10, 32:2, 32:3, 39:11
**care** [1] - 45:18
**carefully** [1] - 56:6
**case** [3] - 1:2, 35:20, 45:22
**Center** [1] - 1:24
**certain** [3] - 3:11, 12:5, 48:4
**certify** [1] - 68:3
**CHACON** [1] - 1:6
**Chacon** [50] - 7:18, 7:19, 12:11, 12:12, 12:16, 20:25, 21:2, 22:9, 22:10, 22:13, 22:16, 23:13, 23:22, 25:10, 25:11, 25:20, 26:20, 27:5, 27:11, 27:18, 27:20, 28:1, 29:17, 30:2, 30:6, 31:9, 31:13, 31:19, 33:3, 33:15, 35:25, 36:1, 36:7, 37:21, 38:14, 39:23, 40:5, 40:8, 40:17, 42:15, 43:4, 44:15, 47:13, 48:2, 48:5, 49:2, 61:8, 64:23, 65:16, 66:3
**chain** [2] - 6:11, 6:20
**chance** [1] - 52:21
**changing** [1] - 5:1
**characterize** [1] - 35:7
**charge** [3] - 5:4, 33:23, 34:20
**chat** [1] - 28:11
**checking** [1] - 26:7
**choose** [1] - 50:17
**CHRISTOPHER** [1] - 1:7
**circumstances** [1] - 4:4
**City** [2] - 13:8, 13:9
**civilian** [6] - 64:7, 64:11, 64:17, 66:10, 66:14, 66:15
**civilians** [2] - 64:8, 64:10
**clarification** [1] - 37:2
**clear** [4] - 26:10, 56:1, 67:2, 67:4
**clearly** [2] - 26:7, 67:10
**client** [7] - 28:15, 28:16, 40:8, 42:15, 51:5, 58:17, 66:6
**clients** [4] - 66:22, 67:1, 67:5, 67:18
**close** [6] - 5:22, 5:24, 6:4, 6:8, 7:24, 8:1
**closer** [1] - 14:5
**clothing** [4] - 16:2, 16:4, 16:21, 38:11
**clubs** [1] - 65:9
**co** [2] - 12:9, 12:13
**co-conspirator** [1] - 12:13
**co-conspirators** [1] - 12:9
**codefendants** [1] - 12:9
**coffee** [1] - 20:2
**Coladas** [1] - 5:19
**color** [2] - 16:23, 45:4
**coming** [7] - 5:5, 59:1, 59:5, 64:20, 66:4, 66:7, 67:8
**comments** [1] - 28:17
**communication** [1] - 42:10
**company** [6] - 15:22, 16:18, 17:3, 17:5, 27:6, 27:12
**complaint** [1] - 47:18
**complaints** [1] - 9:25
**complete** [1] - 27:1
**complexion** [1] - 23:19
**concern** [1] - 67:11
**concerned** [1] - 51:8
**CONCLUDED** [1] - 67:22
**concluded** [1] - 49:12
**conducted** [1] - 12:18
**conducting** [1] - 57:11
**confer** [1] - 66:19
**confront** [1] - 55:14
**confused** [1] - 5:3
**consent** [6] - 10:11, 10:22, 10:25, 11:7, 11:9, 11:13
**consequences** [1] - 67:3
**considered** [2] - 25:9, 25:12
**consistent** [1] - 3:13
**consistently** [1] - 7:22
**conspiracy** [1] - 65:1
**conspirator** [1] - 12:13
**conspirators** [1] - 12:9
**construction** [3] - 13:5, 13:6, 52:14
**consult** [1] - 67:18
**consuming** [2] - 17:18, 23:7
**CONTD** [1] - 2:1
**content** [1] - 4:14
**context** [1] - 40:14
**continue** [3] - 5:17, 25:25, 36:15
**continuing** [2] - 25:2, 25:3
**continuum** [1] - 27:23
**conversation** [4] - 4:12, 4:19, 48:14, 55:23
**conversations** [1] - 42:23
**Coral** [1] - 1:20
**corner** [2] - 42:18, 57:3
**correct** [33] - 8:20, 12:7, 16:16, 24:12, 26:13, 39:21, 39:22, 39:25, 40:21, 41:8, 43:2, 43:21, 44:18, 47:14, 47:17, 48:3, 48:15, 51:19, 51:22, 54:2, 54:22, 54:24, 55:1, 55:10, 55:13, 56:2, 58:3, 58:12, 58:24, 59:2, 59:5, 59:17, 60:16
**counsel** [3] - 9:17, 62:19, 67:20
**counting** [1] - 57:10
**countryman** [1] - 29:12
**couple** [1] - 35:19
**course** [7] - 4:23, 14:2, 14:20, 25:16, 30:25, 50:18, 57:11
**court** [18] - 8:23, 9:9, 14:3, 15:25, 16:25, 17:7, 19:16, 22:24, 23:14, 23:18, 25:19, 29:19, 30:3, 30:7, 30:11, 30:21, 37:4, 37:16
**Court** [9] - 2:6, 4:7, 4:9, 4:15, 12:2, 12:17, 35:18, 35:24, 63:23
**COURT** [144] - 1:1, 1:12, 3:1, 3:6, 3:22, 4:11, 4:17, 4:21, 5:1, 5:9, 5:10, 9:2, 9:4, 9:13, 10:9, 10:17, 11:3, 11:11, 11:15, 11:21, 11:25, 12:4, 12:11, 12:14, 12:20, 14:4, 14:7, 14:15, 14:24, 15:12, 16:8, 16:12, 17:12, 18:4, 18:9, 18:15, 18:22, 19:1, 19:6, 19:8, 19:11, 20:1, 20:4, 20:6, 20:9, 20:14, 20:18, 20:19, 21:8, 24:2, 25:3, 25:6, 26:10, 26:22, 26:25, 27:2, 27:9, 27:14, 27:16, 27:22, 28:3, 28:6, 28:16, 29:2, 29:10, 29:23, 30:15, 31:2, 31:15, 31:21, 32:5, 32:11, 32:16, 32:19, 32:22, 33:1, 33:9, 34:1, 34:6, 34:9, 34:16, 34:22, 34:25, 35:3, 35:19, 35:22, 36:1, 36:12, 36:13, 36:14, 37:3, 37:8, 37:23, 38:16, 39:13, 39:19, 40:11, 40:15, 42:12, 45:17, 45:22, 45:25, 46:18, 49:8, 49:11, 49:17, 51:3, 51:7, 52:1, 52:4, 53:1, 53:8, 53:12, 53:14, 56:21, 57:7, 58:15, 59:24, 60:2, 60:5, 60:21, 60:25, 61:16, 62:8, 63:1, 63:11, 63:13, 63:18, 63:20, 63:24, 64:11, 64:14, 64:18, 65:13, 65:22, 66:2, 66:4, 66:9, 66:17, 66:22, 66:25, 67:12, 67:16, 67:21
**Court's** [1] - 67:11
**COURTROOM** [1] - 12:22
**cover** [1] - 65:14
**covered** [2] - 27:14, 41:1
**covering** [1] - 28:15
**crazy** [1] - 41:20
**credibility** [1] - 65:1
**crime** [2] - 9:22, 9:24
**cross** [5] - 35:14,

DAILY COPY

39:19, 49:12, 66:21, 67:18
**culture** [1] - 65:21
**current** [1] - 13:17

## D

**Dadeland** [1] - 1:23
**dark** [4] - 16:8, 16:9, 16:24
**darker** [1] - 23:19
**DATE** [1] - 68:9
**Datran** [1] - 1:24
**DAVID** [1] - 2:1
**DAY** [1] - 1:4
**Dayaan** [2] - 6:14, 8:14
**days** [1] - 67:14
**deal** [2] - 33:22, 65:7
**debt** [1] - 48:15
**December** [2] - 54:9, 55:7
**decide** [1] - 61:12
**dedicate** [1] - 33:23
**DEFENDANT** [1] - 37:10
**defendant** [1] - 12:1
**Defendant** [27] - 17:24, 18:1, 18:3, 20:22, 22:19, 22:23, 23:12, 23:22, 23:24, 24:10, 27:5, 27:11, 29:18, 30:2, 31:9, 31:13, 31:19, 33:3, 33:15, 37:21, 38:13, 38:14, 61:8, 63:3, 63:7
**defendants** [6] - 7:12, 7:19, 8:23, 9:8, 16:11, 25:12
**Defendants** [2] - 1:8, 37:20
**DEFENDANTS** [1] - 1:18
**defense** [3] - 9:17, 35:13, 62:19
**DeLeon** [1] - 1:19
**deleted** [1] - 62:16
**deliberations** [1] - 25:11
**depicted** [11] - 21:25, 22:17, 22:21, 22:25, 23:4, 26:5, 31:12, 33:4, 36:19, 37:13, 39:15
**DEPUTY** [1] - 12:22
**describe** [1] - 40:13
**described** [6] - 13:25, 23:17, 34:14, 49:5, 58:22, 59:16
**deserve** [1] - 67:8
**Diamonds** [1] - 65:8
**died** [1] - 54:8
**different** [8] - 4:25, 5:20, 27:15, 27:16, 43:4, 57:22, 65:4, 65:5
**direct** [3] - 8:4, 35:4, 35:6
**direction** [1] - 43:4
**directly** [2] - 28:22, 51:14
**discharge** [2] - 43:18, 44:3
**discharged** [1] - 44:5
**discharging** [2] - 15:19, 22:16
**discussed** [1] - 24:12
**discussion** [1] - 12:1
**discussions** [1] - 55:12
**dismiss** [1] - 3:22
**DISPOTO** [1] - 1:16
**disrespectful** [1] - 39:24
**distance** [1] - 6:1
**DISTRICT** [3] - 1:1, 1:1, 1:12
**DIVISION** [1] - 1:2
**Dixon** [18] - 18:1, 22:23, 24:10, 37:21, 38:13, 54:12, 54:21, 55:23, 56:1, 56:8, 56:11, 56:22, 57:23, 57:25, 58:2, 58:8, 58:10, 63:7
**DIXON** [1] - 1:7
**DJ** [1] - 66:5
**documents** [1] - 65:11
**dog** [2] - 26:16, 41:6
**dogs** [1] - 26:15
**done** [1] - 49:9
**Donet** [2] - 53:14, 58:15
**DONET** [4] - 2:1, 53:15, 57:9, 58:14
**donet** [1] - 56:21
**down** [11] - 5:12, 7:1, 7:6, 9:5, 11:21, 17:12, 34:13, 35:10, 35:14, 42:18, 63:11
**downstairs** [1] - 45:12
**drinking** [2] - 40:5, 40:9
**drive** [2] - 7:20, 8:24
**drive-bys** [2] - 7:20, 8:24
**driver** [1] - 27:24
**driveway** [1] - 7:5
**drug** [2] - 37:14, 61:12
**drugs** [36] - 15:7, 17:11, 17:17, 17:20, 18:7, 18:20, 19:20, 19:22, 36:23, 38:4, 38:6, 40:2, 47:20, 48:1, 51:14, 51:15, 52:7, 52:8, 52:9, 52:11, 52:12, 52:14, 52:15, 52:16, 52:17, 52:19, 52:23, 53:3, 53:5, 57:3, 57:5, 59:17, 59:22, 59:23, 61:3
**during** [6] - 7:20, 8:8, 8:23, 9:7, 43:25, 66:14
**duties** [1] - 5:14

## E

**e-mail** [2] - 66:12, 66:13
**eight** [2] - 39:2, 66:14
**either** [4] - 3:22, 35:15, 39:7, 63:9
**El** [1] - 32:15
**elderly** [3] - 42:4, 48:20, 53:25
**elicit** [1] - 35:23
**employed** [1] - 13:4
**end** [3] - 4:19, 46:4, 59:12
**English** [10] - 29:25, 30:16, 30:18, 48:3, 48:4, 48:6, 48:7, 55:24, 55:25, 58:1
**enter** [2] - 10:11, 11:9
**entire** [1] - 59:7
**entitled** [1] - 68:4
**erased** [1] - 43:23
**ESQ** [4] - 1:18, 1:23, 2:1, 2:4
**established** [1] - 59:24
**evening** [1] - 66:15
**event** [1] - 62:3
**events** [4] - 45:23, 46:13, 46:19, 65:5
**evidence** [14] - 21:16, 24:25, 25:9, 31:5, 32:17, 33:9, 33:11, 37:25, 38:24, 39:5, 39:8, 41:10, 58:6, 64:21
**exactly** [1] - 44:8
**examination** [4] - 5:19, 39:19, 49:12, 66:21
**example** [1] - 15:5
**exchange** [1] - 42:10
**exchanged** [1] - 41:14
**EXCUSED** [4] - 20:5, 34:24, 35:2, 63:19
**exercise** [1] - 18:9
**Exhibit** [42] - 7:15, 7:24, 8:7, 11:19, 21:11, 21:17, 22:1, 22:3, 22:10, 22:14, 22:17, 22:21, 23:1, 23:5, 23:8, 23:11, 24:19, 24:25, 25:6, 31:6, 31:13, 32:8, 32:16, 32:25, 33:5, 33:8, 33:12, 36:17, 36:19, 37:14, 37:22, 38:1, 38:15, 38:18, 38:21, 38:25, 39:6, 39:9, 39:16, 44:12, 57:13, 58:7
**expected** [1] - 67:16
**explain** [5] - 6:25, 54:17, 54:18, 67:5, 67:7
**eye** [1] - 16:5
**eyes** [1] - 26:20

## F

**Fabo** [2] - 61:5
**face** [2] - 48:25, 53:7
**Facebook** [2] - 3:18, 64:20
**fact** [4] - 50:25, 58:10, 65:7, 65:13
**facts** [1] - 5:13
**fair** [2] - 49:25, 59:20
**family** [4] - 44:20, 45:11, 45:12, 67:6
**far** [1] - 3:14
**Fat** [7] - 33:14, 34:3, 34:9, 34:14, 34:18, 61:5
**feature** [1] - 62:1
**February** [1] - 66:12
**feet** [2] - 5:15, 8:1
**fellow** [1] - 29:12
**fence** [9] - 6:11, 6:20, 6:21, 6:24, 23:9, 55:15, 60:18
**few** [1] - 38:2
**fighting** [1] - 15:8
**FILED** [1] - 68:9
**fine** [2] - 53:17, 54:19
**firearm** [11] - 7:25, 8:2, 8:8, 8:10, 8:12, 8:14, 8:19, 15:20, 22:16, 43:19, 44:4
**first** [8] - 8:12, 36:21, 36:22, 53:18, 54:21, 55:6, 56:22, 56:23
**five** [3] - 20:16, 34:23, 36:10
**FL** [7] - 1:17, 1:20, 1:22, 1:24, 2:3, 2:5, 2:7
**Flagler** [1] - 1:21
**Flores** [4] - 17:24, 23:3, 58:18, 59:14
**FLORES** [1] - 1:8
**FLORIDA** [1] - 1:1
**fly** [1] - 28:12
**focused** [2] - 20:10
**folks** [1] - 19:1
**follow** [1] - 35:11
**following** [1] - 43:15
**footage** [3] - 41:1, 41:5, 47:8
**FOR** [6] - 1:15, 1:18, 25:13, 26:1, 26:24, 27:3
**foregoing** [1] - 68:3
**form** [6] - 9:3, 10:25, 11:7, 11:9, 11:13, 54:16
**format** [1] - 56:20
**Fort** [1] - 2:3
**forward** [1] - 4:23
**four** [2] - 50:13, 50:14
**FOUR** [1] - 1:4
**FRANK** [1] - 2:4
**front** [23] - 3:19, 12:10, 15:22, 15:23, 17:8, 26:15, 27:7, 27:12, 27:21, 27:24, 28:9, 46:10, 47:21, 48:1, 49:3, 50:12, 50:13, 56:2, 61:3, 61:13, 64:17
**full** [2] - 3:11, 12:22
**furthermore** [1] - 54:9
**furthest** [1] - 19:15

## G

**Gables** [1] - 1:20
**gate** [4] - 47:21, 50:12, 50:24
**gearing** [1] - 4:12
**general** [2] - 7:4, 64:8

DAILY COPY

**generally** [1] - 13:10
**gentleman** [11] - 18:23, 34:7, 46:7, 48:22, 48:23, 49:5, 49:7, 51:25, 53:20, 53:25, 54:8
**gentlemen** [9] - 5:11, 20:1, 25:7, 34:22, 49:11, 49:14, 54:4, 63:13, 67:6
**Giselle** [1] - 65:22
**glasses** [16] - 16:5, 17:20, 18:2, 21:4, 22:20, 23:25, 24:7, 28:8, 29:17, 38:12, 50:21, 51:13, 51:22, 52:23, 55:4, 63:4
**Gonzalez** [9] - 3:17, 3:19, 12:5, 29:10, 39:19, 40:12, 45:18, 49:8, 64:19
**GONZALEZ** [44] - 1:18, 3:21, 9:1, 9:3, 11:2, 11:18, 14:23, 15:11, 18:8, 25:1, 26:8, 26:21, 29:1, 29:9, 30:14, 31:14, 31:20, 32:20, 33:25, 34:5, 34:15, 34:21, 39:20, 40:13, 40:16, 42:9, 42:13, 42:14, 45:20, 45:23, 46:1, 46:20, 49:9, 49:15, 61:15, 62:25, 64:1, 64:4, 65:4, 65:15, 65:24, 66:3, 67:10, 67:13
**Goodman** [1] - 3:20
**govern** [1] - 49:14
**Government** [5] - 4:16, 17:23, 35:6, 35:15, 37:1
**Government's** [41] - 7:15, 7:24, 8:7, 21:11, 21:17, 21:25, 22:3, 22:10, 22:14, 22:17, 22:21, 22:25, 23:5, 23:8, 23:11, 24:19, 24:25, 25:6, 31:6, 31:12, 32:8, 32:16, 32:24, 33:5, 33:7, 33:12, 36:17, 36:19, 37:13, 37:22, 38:1, 38:15, 38:18, 38:21, 38:25, 39:6, 39:9, 39:15, 44:12, 57:13, 58:7
**greeting** [1] - 47:17
**grounds** [2] - 9:2, 23:14
**group** [4] - 12:18, 59:1, 61:2, 66:6
**Guapo** [1] - 32:15
**gun** [4] - 29:11, 44:5, 60:9, 60:13
**guy** [11] - 28:7, 30:8, 31:16, 32:2, 32:13, 36:2, 36:7, 36:8, 37:18, 38:4, 55:18
**guys** [3] - 32:10, 43:10, 52:20
**Guzman** [6] - 64:7, 64:22, 65:2, 65:5, 65:25, 66:5

## H

**hair** [1] - 25:22
**half** [1] - 18:23
**hand** [1] - 15:9
**handsome** [1] - 32:15
**hardly** [1] - 41:19
**Harralson** [4] - 4:4, 4:23, 4:24, 10:22
**Havana** [1] - 13:12
**hear** [4] - 26:15, 41:14, 59:3, 65:2
**heard** [10] - 27:18, 27:20, 27:23, 28:7, 29:17, 30:2, 30:13, 30:15, 35:16, 63:15
**hearsay** [2] - 10:18, 64:25
**HELD** [1] - 1:11
**hereby** [1] - 68:3
**HERMAN** [1] - 2:4
**hide** [2] - 52:21, 57:3
**high** [1] - 9:22
**highlights** [1] - 4:21
**himself** [1] - 13:20
**history** [1] - 53:22
**hit** [3] - 23:9, 55:15, 60:18
**hm** [6] - 44:14, 45:8, 50:5, 61:9, 61:20, 62:20
**holds** [1] - 3:24
**home** [9] - 4:5, 10:23, 11:9, 12:10, 13:15, 13:17, 13:19, 15:23, 46:23
**Honda** [1] - 31:17
**Honor** [18] - 4:2, 12:12, 12:18, 18:17, 19:24, 25:5, 27:8, 27:13, 28:13, 35:21, 39:18, 49:15, 49:18, 52:5, 53:10, 60:1, 63:10, 64:3
**HONORABLE** [1] - 1:12
**Hop** [2] - 22:2
**hopefully** [1] - 18:23
**HOROWITZ** [24] - 1:23, 4:2, 4:15, 4:20, 4:24, 9:12, 10:8, 10:16, 11:10, 11:14, 18:21, 24:1, 25:4, 27:8, 27:13, 29:22, 49:18, 49:19, 51:4, 51:10, 52:2, 52:5, 52:6, 53:10
**Horowitz** [4] - 18:22, 49:17, 51:3, 53:9
**HOSSEINI** [1] - 1:15
**hour** [1] - 18:23
**hours** [1] - 50:19
**house** [36] - 13:23, 17:8, 21:21, 21:23, 21:24, 22:7, 22:8, 25:23, 27:7, 27:12, 27:21, 27:24, 28:10, 36:22, 40:20, 47:21, 48:1, 49:3, 50:13, 50:14, 53:18, 53:19, 53:22, 53:23, 54:2, 54:3, 54:10, 54:20, 54:21, 54:22, 54:24, 56:2, 61:3, 61:4, 61:13
**hundred** [1] - 35:21

## I

**idea** [1] - 8:15
**identifiable** [1] - 12:13
**identification** [1] - 21:10
**identified** [49] - 8:23, 9:9, 14:21, 16:15, 17:7, 17:16, 17:19, 17:23, 17:24, 17:25, 18:3, 18:7, 19:15, 20:13, 20:21, 21:3, 21:5, 22:11, 22:20, 22:24, 23:3, 23:13, 23:22, 23:25, 24:6, 24:10, 24:20, 25:19, 25:20, 27:6, 28:16, 29:18, 30:3, 30:5, 30:7, 30:21, 33:4, 33:15, 34:3, 37:16, 54:1, 54:6, 54:20, 59:15, 61:7, 62:23, 63:3, 63:7
**identify** [8] - 8:12, 14:1, 14:3, 16:2, 16:20, 16:25, 25:17, 38:10
**IGNACIO** [1] - 1:15
**ILHAM** [1] - 1:15
**illegal** [2] - 10:20, 13:23
**illuminated** [1] - 5:4
**image** [3] - 21:25, 36:18, 38:21
**images** [3] - 25:8, 43:23, 47:5
**implication** [1] - 28:15
**important** [1] - 56:17
**inaudible** [1] - 12:18
**incident** [3] - 9:17, 10:14, 11:24
**include** [2] - 23:24, 24:2
**indeed** [1] - 3:17
**indicated** [1] - 40:2
**indictment** [2] - 51:6, 51:9
**individual** [32] - 16:18, 17:23, 17:25, 18:2, 19:14, 19:18, 21:2, 22:19, 22:23, 23:3, 23:13, 25:20, 27:5, 30:2, 30:6, 31:7, 31:9, 31:12, 42:3, 42:4, 42:20, 42:23, 43:1, 48:10, 48:17, 57:14, 57:23, 58:2, 58:7, 58:8, 61:7, 62:23
**individually** [1] - 20:13
**individuals** [23] - 17:7, 18:6, 18:8, 20:21, 20:23, 21:24, 25:15, 27:12, 27:20, 28:4, 28:14, 30:10, 37:16, 40:2, 41:15, 44:13, 44:17, 46:3, 46:8, 49:3, 54:1, 54:6, 58:22
**industry** [1] - 13:6
**inform** [2] - 4:9, 56:17
**inside** [3] - 4:5, 32:3, 50:14
**install** [2] - 50:8
**installed** [1] - 50:11
**instruction** [3] - 12:19, 25:4, 25:7
**instructions** [2] - 30:13, 34:14
**interact** [4] - 33:20, 33:21, 57:14, 58:5
**interacted** [1] - 47:16
**interacting** [11] - 30:20, 31:6, 31:7, 31:19, 31:24, 33:4, 33:16, 42:6, 42:8, 42:10, 49:7
**interaction** [2] - 34:18, 51:4
**interest** [1] - 10:6
**INTERPRETER** [4] - 19:24, 20:7, 37:4, 42:7
**Interpreter** [1] - 35:1
**interpreter** [2] - 37:2, 37:9
**interrupt** [1] - 45:17
**intoxicated** [2] - 60:18, 60:22
**invasion** [1] - 59:12
**issue** [1] - 5:4
**issues** [1] - 4:14
**items** [1] - 20:22
**itself** [3] - 4:11, 4:13, 62:2

## J

**JAMES** [1] - 1:7
**James** [1] - 54:12
**January** [9] - 11:24, 41:2, 41:4, 41:21, 44:10, 48:11, 48:20, 49:1, 50:4
**JAY** [1] - 1:8
**Jay** [1] - 58:18
**Joel** [1] - 22:2
**Jose** [1] - 12:24
**JR** [2] - 2:1, 2:4
**JUDGE** [1] - 1:12
**Judge** [6] - 3:20, 3:21, 26:21, 30:14, 49:9, 65:21
**judges** [1] - 5:13
**jump** [1] - 29:11
**JURY** [4] - 1:11, 20:5, 34:24, 63:19
**jury** [11] - 3:2, 3:3, 3:11, 3:15, 3:22, 4:9, 4:15, 5:3, 5:8, 36:12, 63:13

## K

**KATHLEEN** [1] - 1:12
**keep** [1] - 66:20
**kind** [6] - 3:13, 6:11, 7:4, 28:11, 52:10, 57:5
**kinds** [2] - 52:7, 52:23
**King** [1] - 65:8

**knowledge** [1] - 65:6
**knows** [2] - 60:21, 65:25
**KORCHIN** [4] - 1:21, 53:13, 66:8, 66:10
**Korchin** [1] - 53:12

## L

**label** [1] - 65:7
**ladies** [6] - 5:11, 20:1, 25:7, 34:22, 49:11, 63:13
**language** [1] - 30:23
**last** [9] - 3:7, 4:3, 4:9, 8:22, 15:18, 15:19, 33:18, 43:18, 66:13
**lasts** [1] - 64:15
**late** [2] - 3:23, 50:1
**Lauderdale** [1] - 2:3
**law** [1] - 35:20
**lead** [4] - 35:4, 35:5, 35:17
**leading** [9] - 9:12, 14:23, 20:11, 24:1, 26:21, 29:1, 30:14, 31:14, 34:15
**league** [1] - 65:23
**leave** [1] - 4:20
**left** [5] - 19:15, 44:23, 48:12, 59:7, 60:23
**less** [3] - 13:14, 24:15, 29:16
**Lewis** [1] - 64:7
**lie** [1] - 55:21
**light** [2] - 3:9, 16:8
**limiting** [3] - 12:1, 25:4, 25:7
**line** [2] - 6:11, 8:4
**lined** [1] - 63:22
**lines** [2] - 6:11, 16:22
**lineup** [1] - 63:20
**link** [2] - 6:11, 6:20
**list** [4] - 64:2, 64:4, 66:11, 67:19
**listen** [3] - 32:11, 47:25, 56:6
**listening** [2] - 34:4, 34:10
**live** [6] - 13:8, 13:11, 23:19, 23:20, 42:17, 53:6
**lived** [12] - 13:13, 13:15, 13:17, 13:19, 23:16, 45:11, 46:7, 46:9, 53:20, 54:4, 58:20, 59:2
**lives** [1] - 23:16
**living** [2] - 44:17, 58:24
**loaded** [1] - 8:17
**located** [1] - 22:10
**location** [4] - 10:6, 10:12, 10:20, 55:1
**locations** [2] - 5:20, 5:22
**look** [4] - 14:5, 41:16, 48:24, 62:15
**looked** [1] - 47:10
**looking** [2] - 15:7, 44:25
**looks** [5] - 7:18, 9:24, 45:5, 45:6, 66:12
**lost** [1] - 48:12
**loud** [1] - 35:8
**lunch** [4] - 3:23, 49:13, 63:14, 63:17

## M

**ma'am** [1] - 32:18
**Madam** [1] - 35:1
**mail** [2] - 66:12, 66:13
**man** [10] - 23:19, 29:17, 49:4, 50:21, 51:13, 51:21, 51:24, 52:23, 54:12, 59:15
**MANUEL** [1] - 1:18
**March** [2] - 55:8, 55:10
**marijuana** [2] - 57:21, 59:20
**MARK** [1] - 1:16
**marked** [1] - 21:10
**market** [2] - 42:17, 42:21
**Mary** [1] - 2:2
**material** [1] - 24:19
**materials** [1] - 24:16
**matter** [6] - 3:15, 3:16, 28:14, 41:22, 50:25, 68:5
**matters** [1] - 3:2
**MAURIN** [1] - 1:6
**Maurin** [1] - 7:18
**mean** [5] - 22:11, 48:22, 49:4, 57:17, 66:22
**meandering** [2] - 34:13, 35:14
**meaning** [4] - 37:7, 37:8, 42:10, 46:4
**meet** [2] - 13:22, 30:8
**meeting** [1] - 17:5
**members** [1] - 67:6
**memory** [1] - 44:8
**men** [2] - 54:10, 54:20
**Mendoza** [26] - 11:23, 12:24, 13:25, 14:4, 14:15, 15:2, 15:12, 18:6, 19:3, 19:14, 20:21, 26:3, 28:20, 32:12, 39:21, 39:23, 49:20, 49:22, 50:21, 51:24, 52:7, 52:23, 53:8, 56:19, 61:2, 63:11
**mentioned** [1] - 39:23
**met** [1] - 39:21
**mIAMI** [1] - 1:2
**Miami** [8] - 1:17, 1:22, 1:24, 2:5, 2:7, 2:7, 13:8, 13:9
**middle** [3] - 46:6, 46:11, 46:12
**might** [2] - 25:4, 25:25
**Miguel** [2] - 11:23, 36:18
**mild** [1] - 56:16
**minute** [1] - 34:23
**minutes** [2] - 20:16, 36:10
**missing** [1] - 20:8
**mistaken** [2] - 32:14, 54:8
**money** [5] - 57:10, 58:2, 58:4, 58:8, 58:11
**month** [5] - 43:24, 43:25, 46:25, 50:2, 50:6
**months** [2] - 47:6, 50:7
**Moore** [1] - 58:8
**more-or-less** [1] - 24:15
**moreover** [1] - 21:24
**morning** [7] - 5:10, 13:2, 13:3, 20:15, 41:22, 49:20, 49:21
**most** [2] - 9:25, 57:2
**motion** [1] - 3:5
**move** [7] - 24:24, 32:5, 47:23, 52:4, 53:1, 53:9, 54:6
**moved** [6] - 53:18, 54:2, 54:11, 54:20, 54:21, 56:14
**movement** [2] - 6:25, 7:4
**moving** [2] - 61:2, 61:12
**MR** [177] - 3:4, 3:21, 4:2, 4:15, 4:20, 4:24, 5:18, 9:1, 9:3, 9:6, 9:12, 9:14, 10:8, 10:10, 10:16, 10:21, 11:2, 11:4, 11:10, 11:12, 11:14, 11:17, 11:18, 11:23, 12:2, 12:8, 12:12, 12:17, 13:1, 14:10, 14:16, 14:23, 15:1, 15:11, 15:16, 16:10, 16:14, 17:13, 17:22, 18:5, 18:8, 18:12, 18:14, 18:17, 18:18, 18:21, 19:10, 19:13, 20:12, 20:20, 21:7, 21:9, 24:1, 24:4, 24:9, 24:11, 24:24, 25:1, 25:2, 25:4, 25:14, 25:25, 26:2, 26:8, 26:11, 26:21, 27:1, 27:4, 27:8, 27:10, 27:13, 27:15, 27:17, 28:1, 28:4, 28:13, 28:19, 29:1, 29:7, 29:9, 29:14, 29:22, 30:1, 30:14, 30:19, 31:4, 31:14, 31:18, 31:20, 31:23, 32:7, 32:18, 32:20, 32:24, 33:2, 33:7, 33:10, 33:25, 34:2, 34:5, 34:12, 34:15, 34:17, 34:21, 35:18, 35:21, 35:23, 36:16, 37:1, 37:6, 37:12, 37:20, 37:24, 38:13, 38:17, 39:14, 39:18, 39:20, 40:10, 40:13, 40:16, 42:9, 42:13, 42:14, 45:20, 45:23, 46:1, 46:16, 46:20, 49:9, 49:15, 49:18, 49:19, 51:2, 51:4, 51:10, 52:2, 52:5, 52:6, 52:25, 53:10, 53:13, 53:15, 57:6, 57:9, 58:14, 58:16, 60:1, 60:3, 60:6, 60:20, 60:24, 61:1, 61:15, 61:17, 62:10, 62:25, 63:10, 63:22, 64:1, 64:2, 64:4, 64:6, 64:13, 64:16, 65:4, 65:15, 65:24, 66:3, 66:8, 66:10, 66:19, 66:23, 67:9, 67:10, 67:13, 67:19
**music** [2] - 64:22, 64:23
**must** [1] - 28:18

## N

**N.E** [2] - 1:16, 2:4
**Nadim** [1] - 65:25
**name** [4] - 12:22, 12:24, 28:10, 48:18
**names** [2] - 66:18, 67:19
**narcotics** [9] - 5:7, 7:25, 8:19, 10:15, 10:20, 14:22, 22:9, 22:20, 22:25
**nature** [3] - 9:21, 48:15, 64:8
**near** [2] - 54:22, 67:15
**need** [13] - 3:2, 3:16, 3:24, 20:10, 27:16, 28:6, 28:7, 31:2, 47:25, 49:9, 54:17, 66:25
**needs** [1] - 63:23
**negative** [1] - 55:13
**neighborhood** [9] - 14:18, 14:19, 15:3, 15:23, 28:25, 29:5, 42:4, 42:6, 59:8
**never** [22] - 35:11, 39:21, 39:24, 47:18, 48:7, 48:10, 51:16, 51:19, 51:21, 55:12, 55:14, 56:1, 58:2, 58:11, 59:23, 60:4, 60:7, 60:9, 60:11, 60:13, 60:15
**new** [1] - 47:24
**next** [11] - 4:12, 4:18, 11:22, 18:23, 22:7, 31:22, 32:5, 55:15, 59:24, 60:2, 60:5
**night** [4] - 3:7, 19:4, 41:17, 55:4
**none** [4] - 41:11, 41:12, 66:4
**North** [1] - 2:7
**note** [1] - 17:24
**notes** [1] - 49:10
**nothing** [4] - 4:22, 29:2, 60:24, 64:25
**notice** [2] - 5:11, 64:9
**November** [7] - 45:23, 46:14, 46:21, 46:22, 47:2
**number** [3] - 21:23, 41:12, 58:20
**Number** [1] - 1:2
**numerous** [1] - 27:6
**NW** [2] - 10:6, 10:11

DAILY COPY


## O

**o'clock** [3] - 41:22, 41:23, 41:24
**object** [5] - 14:23, 15:11, 26:8, 28:15, 33:25
**objection** [40] - 4:7, 4:17, 9:1, 9:12, 10:8, 10:16, 11:2, 11:10, 11:14, 18:8, 18:14, 18:21, 24:1, 25:1, 25:2, 25:3, 26:21, 27:8, 27:13, 29:1, 29:9, 29:22, 30:14, 31:14, 31:20, 32:19, 32:21, 32:23, 34:5, 34:15, 34:21, 40:10, 46:16, 51:2, 52:25, 57:6, 60:20, 61:15, 62:25
**observed** [1] - 40:13
**occasionally** [1] - 55:1
**occasions** [2] - 38:2, 38:5
**occur** [2] - 33:18, 54:5
**occurred** [1] - 59:12
**occurring** [1] - 58:23
**OF** [3] - 1:1, 1:3, 1:11
**offering** [1] - 32:17
**OFFICER** [5] - 5:9, 20:4, 20:18, 36:13, 63:18
**officer** [4] - 3:25, 10:18, 11:21, 64:16
**Officer** [2] - 5:19, 64:7
**officers** [1] - 35:5
**often** [1] - 43:11
**older** [1] - 47:25
**once** [4] - 44:5, 55:14, 61:6, 62:2
**one** [58] - 3:4, 12:1, 16:5, 16:6, 16:20, 17:15, 18:9, 18:10, 21:4, 23:6, 24:7, 25:16, 25:18, 31:16, 31:21, 32:3, 32:15, 33:6, 33:23, 35:5, 36:22, 37:18, 38:2, 38:12, 38:20, 39:2, 39:4, 39:7, 43:17, 44:6, 44:22, 45:16, 46:6, 46:9, 46:10, 46:12, 47:24, 49:10, 53:1, 54:21, 55:3, 55:15, 56:3, 56:4, 56:5, 57:1, 57:7, 57:21, 60:18, 61:14, 64:16, 64:17, 66:8, 67:14
**ones** [6] - 34:20, 36:22, 38:9, 47:24, 47:25, 57:2
**operates** [1] - 24:14
**opinion** [2] - 10:17, 36:6
**order** [1] - 64:6
**outside** [5] - 26:17, 34:25, 46:16, 48:7, 48:8
**overruled** [5] - 18:10, 29:23, 34:6, 46:18, 61:16
**Overruled** [2] - 31:15, 63:1
**own** [1] - 26:20

## P

**packages** [1] - 52:18
**PAGES** [1] - 1:6
**pages** [3] - 3:18, 64:20, 65:3
**painted** [1] - 45:4
**part** [5] - 26:9, 35:15, 45:22, 45:23, 65:21
**participate** [2] - 63:5, 63:9
**participated** [1] - 51:19
**participating** [1] - 51:20
**particular** [4] - 19:8, 28:13, 43:7, 66:23
**pass** [1] - 54:6
**passed** [4] - 23:19, 46:7, 53:21, 54:1
**past** [6] - 23:17, 28:20, 29:8, 29:18, 30:11, 30:21
**PATRICIA** [2] - 2:6, 68:9
**patricia_sanders@flsd.uscourts.gov** [1] - 2:8
**patrol** [3] - 7:7, 7:20, 8:24
**patrolling** [1] - 9:22
**patrols** [1] - 9:7
**Patron** [48] - 13:20, 14:1, 14:11, 14:17, 14:21, 15:2, 15:19, 15:22, 16:18, 17:4, 21:3, 21:5, 22:11, 23:13, 23:21, 25:16, 25:19, 25:20, 27:6, 27:11, 28:20, 28:24, 29:8, 30:5, 30:10, 30:13, 30:15, 30:20, 30:24, 31:6, 33:4, 33:15, 33:21, 34:4, 34:10, 34:14, 34:19, 37:19, 38:12, 39:24, 40:8, 43:5, 43:6, 43:18, 61:6, 61:8, 61:12, 62:23
**PAUL** [1] - 1:21
**pay** [1] - 47:22
**people** [30] - 15:7, 15:22, 15:25, 17:15, 19:5, 19:6, 19:19, 20:25, 21:3, 22:13, 26:19, 27:6, 28:4, 28:9, 30:20, 30:23, 32:3, 32:4, 38:10, 42:22, 45:9, 45:18, 45:21, 45:22, 46:2, 48:5, 54:21, 59:1, 59:4, 62:6
**percent** [1] - 35:21
**perfectly** [1] - 50:15
**perhaps** [2] - 3:10, 64:19
**period** [1] - 47:8
**permission** [5] - 21:7, 32:24, 33:7, 37:22, 38:15
**person** [41] - 8:12, 13:20, 13:22, 13:25, 14:1, 14:3, 14:21, 16:15, 16:20, 16:25, 17:3, 17:16, 17:19, 19:2, 19:21, 21:5, 22:11, 30:5, 31:19, 31:24, 32:9, 33:3, 33:4, 33:13, 33:16, 34:3, 34:13, 36:18, 36:24, 37:13, 38:1, 38:3, 38:8, 39:3, 39:10, 39:15, 42:4, 48:12, 48:20, 63:3, 63:7
**person's** [1] - 16:23
**personal** [1] - 65:6
**PHILIP** [1] - 1:23
**phonetic)** [2] - 15:24, 16:3
**photo** [1] - 28:10
**photograph** [1] - 57:24
**photographs** [1] - 54:2
**photos** [1] - 9:9
**physically** [1] - 8:13
**physician** [1] - 3:7
**picture** [3] - 32:6, 65:13, 65:22
**pictures** [2] - 8:24, 31:2
**pistol** [3] - 15:8, 15:10, 15:14
**place** [2] - 47:1, 51:18
**planned** [1] - 3:18
**play** [1] - 12:14
**played** [1] - 66:6
**PLAYED** [4] - 25:13, 26:1, 26:24, 27:3
**playing** [3] - 65:5, 65:8, 65:9
**plug** [1] - 3:18
**plywood** [1] - 46:10
**pocket** [2] - 8:3, 8:11
**point** [9] - 6:9, 18:15, 18:16, 26:13, 45:1, 45:13, 46:6, 58:23, 59:5
**pointing** [2] - 36:4, 44:23
**police** [25] - 35:5, 40:24, 41:1, 41:17, 41:19, 41:21, 41:23, 41:25, 43:6, 43:9, 43:10, 43:12, 43:13, 43:17, 43:25, 44:6, 46:21, 47:9, 47:12, 52:17, 52:19, 52:20, 53:4, 56:17, 57:2
**Ponce** [1] - 1:19
**poorly** [1] - 42:8
**Portela** [1] - 4:5
**PORTELA** [1] - 1:6
**Portela's** [1] - 3:15
**position** [1] - 50:12
**positioned** [1] - 7:13
**possible** [2] - 40:11, 66:20
**possibly** [1] - 67:4
**post** [1] - 65:22
**posted** [1] - 65:16
**posts** [2] - 65:10, 65:13
**pot** [1] - 40:17
**potential** [2] - 66:11, 66:16
**precise** [1] - 42:7
**prefer** [2] - 64:9, 64:11
**preference** [1] - 64:13
**preparation** [1] - 66:20
**prepped** [1] - 36:2
**present** [9] - 26:12, 26:14, 60:15, 62:23, 63:4, 63:5, 63:6, 63:8, 63:9
**preserve** [2] - 62:12, 62:17
**press** [2] - 4:10, 4:16
**previous** [2] - 10:13, 25:1
**privacy** [1] - 59:7
**problem** [5] - 41:18, 53:6, 55:12, 58:22, 64:18
**Problem** [2] - 9:23, 10:2
**problems** [4] - 9:25, 10:1, 59:4, 59:6
**PROCEEDINGS** [1] - 1:11
**proceedings** [1] - 68:4
**promoted** [1] - 66:5
**provide** [2] - 10:25, 15:5
**provided** [3] - 37:2, 64:2, 67:19
**providing** [1] - 13:10
**publish** [4] - 32:24, 33:7, 37:22, 38:15
**purple** [2] - 20:22, 37:18
**purposes** [4] - 17:22, 18:1, 24:9
**put** [1] - 65:23

## Q

**questions** [13] - 11:17, 35:4, 49:15, 49:22, 51:24, 53:11, 53:13, 54:13, 54:16, 58:14, 58:17, 61:18, 63:10
**quick** [2] - 3:23, 20:2
**quite** [4] - 28:16, 55:2, 55:3, 59:3

## R

**Rafa** [1] - 48:18
**Ramirez** [7] - 6:7, 6:10, 6:17, 6:19, 6:22, 8:4, 8:22
**rank** [1] - 64:25
**rap** [1] - 65:24
**rappers** [1] - 65:18
**rather** [2] - 4:22, 56:12
**Raymond** [1] - 58:8
**reach** [1] - 7:1
**reaches** [1] - 67:2
**reacting** [1] - 31:13
**reads** [1] - 66:13
**really** [4] - 6:8, 8:1,

DAILY COPY

47:19, 56:16
**reason** [1] - 20:12
**receive** [1] - 9:25
**recess** [1] - 63:14
**RECESS** [2] - 20:17, 36:11
**recognize** [16] - 7:15, 7:17, 21:12, 21:18, 22:4, 25:15, 25:22, 32:9, 32:12, 33:13, 38:1, 38:19, 38:22, 39:1, 39:10, 39:15
**RECORD** [4] - 25:13, 26:1, 26:24, 27:3
**record** [15] - 12:23, 17:22, 18:1, 18:2, 24:9, 36:17, 37:10, 37:20, 38:13, 43:22, 46:13, 51:12, 61:8, 62:2, 65:7
**recorded** [1] - 51:12
**recording** [7] - 47:7, 61:23, 61:24, 62:1, 62:4, 62:11, 62:13
**recordings** [4] - 40:23, 62:16, 65:16, 65:17
**records** [1] - 43:23
**recross** [1] - 11:18
**redirect** [4] - 11:16, 11:20, 46:17, 60:25
**reference** [2] - 4:5, 10:13
**referring** [2] - 23:21, 61:7
**regard** [8] - 6:3, 7:24, 12:15, 23:11, 25:10, 41:4, 46:14, 48:11
**regarding** [5] - 3:4, 8:19, 9:18, 12:9, 66:10
**rejoin** [1] - 5:2
**relates** [1] - 11:24
**relation** [1] - 6:7
**relevance** [6] - 40:10, 40:11, 51:2, 51:3, 51:4, 65:10
**remember** [7] - 11:3, 50:2, 51:23, 53:20, 56:4, 56:22, 63:15
**renew** [1] - 25:1
**repeat** [1] - 56:3
**REPORTED** [1] - 2:6
**reporter** [1] - 37:5
**Reporter** [1] - 2:6
**represent** [2] - 50:21, 54:12
**residence** [3] - 40:19, 41:21, 42:17
**respect** [4] - 5:13, 28:13, 35:18, 58:17
**respond** [1] - 42:1
**responding** [2] - 30:24, 31:10
**rest** [2] - 16:6, 66:7
**result** [3] - 26:19, 59:1, 59:5
**resume** [2] - 14:15, 20:19
**resumes** [2] - 3:8, 3:25
**review** [2] - 24:16, 65:11
**reviewed** [2] - 24:22, 65:3
**Rick** [3] - 65:14, 65:18, 66:2
**riding** [2] - 7:9, 7:11
**rise** [5] - 5:9, 20:4, 20:18, 36:13, 63:18
**road** [3] - 34:13, 35:10, 35:14
**rob** [2] - 37:11, 60:11
**Robar** [1] - 37:4
**ROBAR** [1] - 37:4
**robberies** [5] - 37:14, 51:17, 62:19, 62:24, 63:8
**robbery** [3] - 12:18, 26:7, 37:7
**robbing** [1] - 51:20
**RODOLFO** [1] - 1:6
**Rodriguez** [1] - 36:18
**role** [3] - 28:24, 29:4, 65:1
**rolling** [1] - 9:7
**Ross** [3] - 65:14, 65:18, 66:2
**RPR** [2] - 2:6, 68:9
**Rubio** [2] - 58:15, 59:25
**RUBIO** [11] - 2:4, 3:4, 18:14, 18:17, 25:2, 28:13, 58:16, 60:1, 60:3, 60:6, 60:24
**ruled** [1] - 12:17
**ruling** [2] - 3:4, 35:24
**run** [1] - 42:20
**running** [1] - 50:19

## S

**sale** [1] - 58:11
**sales** [2] - 37:14, 61:13
**SANDERS** [3] - 2:6, 68:7, 68:9
**saw** [48] - 8:22, 13:25, 14:17, 14:19, 14:24, 15:5, 15:8, 15:15, 15:21, 17:3, 18:20, 18:24, 19:2, 19:17, 23:9, 28:9, 35:7, 35:8, 35:16, 36:3, 36:4, 40:2, 49:7, 50:4, 51:16, 51:21, 55:6, 55:18, 56:1, 56:22, 56:23, 56:24, 57:11, 57:14, 58:2, 58:10, 58:11, 59:16, 59:20, 59:23, 60:4, 60:7, 60:9, 60:11, 60:13
**scared** [1] - 60:23
**scope** [1] - 46:16
**screen** [3] - 6:9, 25:17, 26:3
**scuffles** [1] - 48:8
**search** [1] - 10:22
**seat** [1] - 14:15
**seated** [7] - 3:1, 5:10, 5:16, 7:20, 21:25, 36:14, 63:20
**second** [2] - 35:1, 49:10
**seconds** [1] - 6:5
**SECURITY** [5] - 5:9, 20:4, 20:18, 36:13, 63:18
**see** [77] - 5:1, 8:7, 9:8, 9:15, 14:6, 14:21, 15:2, 15:19, 15:22, 15:25, 16:6, 16:18, 17:5, 17:14, 17:16, 17:18, 17:19, 18:13, 18:19, 19:1, 19:14, 19:18, 19:21, 19:22, 20:21, 20:25, 21:2, 23:8, 24:5, 25:8, 25:9, 26:3, 26:5, 26:17, 26:18, 27:5, 31:19, 31:24, 33:6, 34:3, 34:9, 34:13, 34:18, 36:1, 36:7, 36:8, 38:3, 39:7, 40:5, 40:8, 40:17, 41:18, 42:6, 48:17, 49:1, 49:2, 49:6, 49:7, 50:14, 51:24, 55:19, 55:20, 56:8, 56:11, 56:12, 56:13, 57:5, 57:10, 57:23, 58:4, 58:7, 61:14, 64:14, 64:20, 65:3, 67:21
**selected** [1] - 50:11
**sell** [18] - 19:20, 20:24, 21:1, 36:23, 47:20, 48:1, 51:14, 52:7, 52:8, 55:20, 56:9, 56:11, 56:13, 56:22, 56:25, 57:22, 59:18, 59:23
**selling** [19] - 14:22, 15:7, 17:11, 17:17, 17:20, 18:7, 18:20, 19:22, 22:9, 22:20, 22:24, 23:6, 38:4, 56:14, 56:23, 56:24, 57:20, 57:21, 61:3
**sent** [1] - 66:11
**sentence** [1] - 66:13
**September** [1] - 54:8
**serving** [1] - 10:2
**SESSION** [2] - 1:5, 67:22
**several** [2] - 23:23, 44:6
**shall** [1] - 52:4
**share** [1] - 66:23
**shared** [1] - 66:2
**shirt** [19] - 16:7, 16:16, 17:1, 17:17, 17:23, 17:25, 19:14, 20:22, 22:24, 23:4, 24:7, 30:3, 30:6, 37:18, 38:12, 54:13, 59:16, 63:8
**shirts** [3] - 19:18, 20:12, 20:14
**shoot** [1] - 60:13
**shooting** [2] - 15:15, 62:15
**shop** [1] - 3:9
**Shores** [1] - 2:5
**short** [1] - 64:16
**show** [2] - 28:10, 41:23
**showed** [1] - 50:12
**showing** [16] - 8:7, 21:10, 21:16, 22:3, 31:5, 32:8, 33:11, 37:25, 38:18, 38:21, 38:24, 39:5, 39:8, 44:12, 57:13, 58:6
**shown** [1] - 26:6
**shows** [1] - 65:25
**shut** [1] - 50:16
**side** [2] - 54:4, 54:5
**sidebar** [1] - 27:22
**sidewalk** [2] - 6:18, 7:3
**sight** [1] - 8:4
**sign** [2] - 5:13, 11:7
**signed** [2] - 11:9, 11:13
**significant** [1] - 47:10
**similarly** [1] - 7:13
**simple** [2] - 54:16, 56:19
**sit** [1] - 5:12
**sitting** [1] - 21:24
**skin** [1] - 16:23
**small** [1] - 62:13
**smoking** [2] - 40:17, 59:20
**snatch** [1] - 19:5
**snitching** [1] - 65:20
**sold** [6] - 38:6, 51:15, 52:8, 52:11, 52:17, 57:5
**Solving** [2] - 9:23, 10:2
**someone** [1] - 50:8
**sometimes** [1] - 48:8
**soon** [1] - 41:6
**sort** [1] - 28:11
**sounds** [1] - 29:15
**South** [1] - 1:23
**sOUTHERN** [1] - 1:1
**space** [2] - 27:21, 27:23
**Spanish** [4] - 47:13, 48:2, 55:23, 57:25
**speaking** [2] - 27:11, 30:10
**specific** [4] - 13:10, 15:5, 28:18, 64:9
**specifically** [9] - 18:24, 19:22, 28:17, 37:17, 38:8, 38:10, 54:14, 57:16, 59:14
**speculation** [6] - 10:16, 26:8, 33:25, 34:5, 60:20, 61:15
**spend** [4] - 24:8, 35:11, 36:9, 55:2
**spoken** [6] - 28:20, 28:22, 28:23, 28:24, 29:4
**stand** [2] - 5:12, 5:13
**standing** [2] - 50:22, 59:15
**start** [4] - 3:25, 43:9, 59:9, 62:13
**started** [3] - 47:7, 58:23, 59:11
**state** [2] - 12:22, 38:8
**statement** [3] - 4:8, 16:10, 49:25
**States** [2] - 2:6, 11:23
**STATES** [4] - 1:1, 1:3, 1:12, 1:15
**statistics** [1] - 9:24
**stay** [6] - 5:15, 39:11, 44:15, 54:22, 55:3,

DAILY COPY

55:4
**stayed** [1] - 43:6
**staying** [9] - 44:13, 44:20, 45:9, 45:19, 45:20, 45:21, 46:2, 46:3, 54:24
**stays** [1] - 43:5
**steal** [4] - 36:25, 37:9, 37:11, 56:1
**step** [3] - 11:21, 14:7, 63:11
**still** [2] - 7:5, 43:8
**stones** [1] - 57:21
**stop** [3] - 8:25, 9:7, 62:8
**stopped** [1] - 7:12
**straight** [1] - 7:5
**Street** [4] - 1:16, 1:21, 2:2, 2:4
**street** [6] - 13:23, 21:23, 53:21, 53:22, 54:1, 54:4
**stricken** [1] - 4:10
**structure** [5] - 22:14, 22:21, 22:25, 23:4, 24:5
**struggle** [1] - 25:23
**stubborn** [1] - 57:2
**studied** [1] - 30:17
**studio** [2] - 65:25, 66:2
**stuff** [1] - 5:6
**sufficient** [1] - 44:8
**Suite** [4] - 1:19, 1:24, 2:2, 2:7
**suppress** [1] - 3:5
**surveillance** [1] - 8:8
**surveilling** [1] - 6:22
**Sustained** [2] - 34:1, 40:15
**sustained** [9] - 4:7, 4:16, 4:17, 10:9, 11:11, 14:25, 27:9, 34:16, 51:9
**SWORN** [1] - 12:21
**system** [6] - 24:12, 24:14, 24:17, 24:20, 61:18, 61:23

## T

**table** [1] - 19:15
**TAKEN** [2] - 20:17, 36:11
**taxi** [1] - 27:24
**Team** [2] - 9:23, 10:2
**tender** [1] - 39:18
**tentative** [1] - 64:2
**tenth** [1] - 66:12
**testified** [3] - 4:24, 23:12, 51:21
**testify** [3] - 24:3, 64:12, 65:6
**testifying** [1] - 67:1
**testimony** [6] - 3:8, 3:25, 4:10, 11:24, 12:8, 66:16
**THE** [173] - 1:12, 1:15, 3:1, 3:6, 3:22, 4:11, 4:17, 4:21, 5:1, 5:10, 9:2, 9:4, 9:13, 10:9, 10:17, 10:19, 11:3, 11:11, 11:15, 11:21, 11:25, 12:4, 12:11, 12:14, 12:20, 12:24, 14:4, 14:5, 14:7, 14:9, 14:15, 14:24, 15:12, 15:15, 16:8, 16:9, 16:12, 17:12, 18:4, 18:9, 18:11, 18:15, 18:22, 19:1, 19:4, 19:6, 19:7, 19:8, 19:11, 19:12, 19:24, 20:1, 20:6, 20:7, 20:9, 20:14, 20:19, 21:8, 24:2, 25:3, 25:6, 25:13, 26:1, 26:10, 26:22, 26:23, 26:24, 26:25, 27:2, 27:3, 27:9, 27:14, 27:16, 27:22, 28:3, 28:6, 28:16, 29:2, 29:6, 29:10, 29:12, 29:23, 29:24, 30:15, 30:16, 31:2, 31:15, 31:16, 31:21, 32:5, 32:11, 32:13, 32:16, 32:19, 32:22, 33:1, 33:9, 34:1, 34:6, 34:7, 34:9, 34:11, 34:16, 34:22, 34:25, 35:3, 35:19, 35:22, 36:1, 36:12, 36:14, 37:3, 37:4, 37:8, 37:10, 37:23, 38:16, 39:13, 39:19, 40:11, 40:15, 42:7, 42:12, 45:17, 45:22, 45:25, 46:18, 46:19, 49:8, 49:11, 49:17, 51:3, 51:7, 52:1, 52:4, 53:1, 53:3, 53:8, 53:12, 53:14, 56:21, 57:7, 57:8, 58:15, 59:24, 60:2, 60:5, 60:21, 60:22, 60:25, 61:16, 62:8, 63:1, 63:2, 63:11, 63:12, 63:13, 63:20, 63:24, 64:11, 64:14, 64:18, 65:13, 65:22, 66:2, 66:4, 66:9, 66:17, 66:22, 66:25, 67:12, 67:16, 67:21
**theft** [1] - 37:7
**them"** [1] - 28:6
**themselves** [4] - 33:24, 48:9, 66:20
**thinking** [1] - 3:13
**tie** [1] - 16:22
**tied** [1] - 65:18
**time-space** [1] - 27:23
**timeframe** [4] - 15:11, 23:12, 23:17, 29:9
**today** [25] - 3:10, 3:24, 14:3, 15:25, 16:25, 17:7, 18:7, 19:16, 22:11, 22:20, 22:24, 23:12, 23:18, 23:22, 23:25, 24:6, 30:3, 30:7, 30:11, 30:21, 37:17, 53:25, 63:15, 64:12, 67:1
**together** [4] - 19:7, 19:17, 51:23, 57:18
**took** [2] - 27:20, 51:18
**toss** [4] - 52:18, 52:19, 52:21, 52:24
**totally** [1] - 4:25
**touch** [1] - 11:19
**transactions** [1] - 57:12
**TRANSCRIPT** [1] - 1:11
**transcription** [1] - 68:4
**translated** [1] - 37:10
**translates** [1] - 42:8
**trap** [1] - 65:19
**traveling** [1] - 27:23
**trial** [1] - 5:1
**TRIAL** [1] - 1:11
**trouble** [2] - 43:11, 53:6
**true** [2] - 20:9, 52:15
**try** [2] - 54:16, 56:6
**trying** [3] - 35:23, 35:24, 56:19
**Tube** [1] - 65:17
**turn** [9] - 26:16, 40:23, 41:1, 43:25, 47:9, 47:11, 58:11, 61:25, 62:1
**turned** [1] - 41:7
**twice** [1] - 61:6
**Two** [1] - 1:24
**two** [8] - 5:6, 15:21, 34:20, 44:6, 47:6, 50:6, 57:18, 59:11
**type** [2] - 34:18, 53:3
**types** [1] - 52:11

## U

**ultimately** [1] - 4:7
**um-hm** [5] - 44:14, 45:8, 50:5, 61:9, 61:20
**Um-hm** [1] - 62:20
**unaware** [1] - 62:3
**unfortunately** [1] - 62:5
**unimportant** [1] - 62:13
**unit** [1] - 9:24
**UNITED** [3] - 1:1, 1:3, 1:15
**United** [2] - 2:6, 11:23
**uNITED** [1] - 1:12
**unless** [1] - 4:23
**up** [16] - 3:2, 3:25, 4:12, 5:5, 6:12, 9:4, 14:4, 26:10, 27:20, 41:24, 45:11, 50:22, 59:15, 63:22, 65:11, 67:8
**upset** [1] - 35:8
**upstairs** [1] - 44:21

## V

**vague** [1] - 18:14
**vantage** [1] - 45:1
**VAZQUEZ** [96] - 1:15, 5:18, 9:6, 9:14, 10:10, 10:21, 11:4, 11:12, 11:17, 11:23, 12:2, 12:8, 12:12, 12:17, 13:1, 14:10, 14:16, 15:1, 15:16, 16:10, 16:14, 17:13, 17:22, 18:5, 18:12, 18:18, 19:10, 19:13, 20:12, 20:20, 21:7, 21:9, 24:4, 24:9, 24:11, 24:24, 25:14, 25:25, 26:2, 26:11, 27:1, 27:4, 27:10, 27:15, 27:17, 28:1, 28:4, 28:19, 29:7, 29:14, 30:1, 30:19, 31:4, 31:18, 31:23, 32:7, 32:18, 32:24, 33:2, 33:7, 33:10, 34:2, 34:12, 34:17, 35:18, 35:21, 35:23, 36:16, 37:1, 37:6, 37:12, 37:20, 37:24, 38:13, 38:17, 39:14, 39:18, 40:10, 46:16, 51:2, 52:25, 57:6, 60:20, 61:1, 61:17, 62:10, 63:10, 63:22, 64:2, 64:6, 64:13, 64:16, 66:19, 66:23, 67:9, 67:19
**Vazquez** [22] - 4:8, 5:3, 5:17, 9:4, 11:15, 11:25, 14:7, 16:12, 17:12, 18:15, 20:9, 20:19, 24:2, 26:10, 26:25, 27:14, 28:14, 28:18, 31:3, 35:10, 36:15, 67:17
**vehicle** [2] - 7:9, 7:11
**Vicar** [1] - 5:4
**video** [34] - 12:6, 12:8, 12:11, 12:14, 12:15, 21:7, 21:15, 25:9, 25:11, 25:15, 25:25, 26:5, 26:6, 27:1, 40:19, 41:2, 41:4, 41:10, 41:15, 42:3, 42:20, 43:1, 43:21, 43:22, 44:3, 44:10, 46:13, 46:22, 48:10, 48:20, 48:21, 50:4, 55:18, 65:16
**videos** [2] - 51:12
**VIDEOTAPE** [4] - 25:13, 26:1, 26:24, 27:3
**violence** [1] - 60:7
**voice** [5] - 3:12, 3:24, 29:15, 41:8, 64:15
**vs** [1] - 1:5

## W

**wait** [1] - 5:15
**waiting** [1] - 32:4
**walking** [2] - 6:1, 42:22
**walks** [1] - 43:1
**wants** [1] - 4:15
**watch** [1] - 26:14
**weapon** [1] - 8:17
**wear** [1] - 32:14
**wearing** [15] - 16:6, 16:25, 17:19, 17:23, 17:25, 18:2, 20:22, 21:4, 22:20, 22:24, 23:4, 23:25, 59:16, 63:4, 63:7
**week** [1] - 66:14
**West** [1] - 1:21
**white** [1] - 45:7

DAILY COPY

**whole** [2] - 40:7, 63:25
**WILLIAMS** [1] - 1:12
**window** [1] - 44:22
**WITNESS** [27] - 10:19, 12:21, 12:24, 14:5, 14:9, 15:15, 16:9, 18:11, 19:4, 19:7, 19:12, 26:23, 29:6, 29:12, 29:24, 30:16, 31:16, 32:13, 34:7, 34:11, 35:2, 46:19, 53:3, 57:8, 60:22, 63:2, 63:12
**witness** [18] - 4:3, 5:2, 11:22, 17:24, 18:2, 19:11, 19:24, 20:6, 20:7, 24:3, 24:9, 28:16, 34:25, 35:3, 35:25, 39:18, 51:5, 64:2
**witnessed** [1] - 43:18
**witnesses** [12] - 4:1, 63:22, 64:7, 64:12, 64:17, 66:10, 66:11, 66:14, 66:15, 66:23, 67:2, 67:13
**word** [7] - 3:10, 16:15, 37:2, 37:7, 37:8, 42:7, 52:2
**words** [2] - 42:11, 48:4
**worker** [1] - 52:14
**written** [1] - 10:25

## Y

**year** [17] - 15:17, 15:18, 15:19, 17:15, 23:11, 23:17, 25:24, 28:20, 29:8, 29:18, 30:11, 30:21, 33:18, 43:18, 46:24, 46:25, 47:6
**years** [5] - 13:7, 13:14, 13:18, 35:20, 58:20
**yelled** [1] - 35:8
**yelling** [1] - 36:3
**yesterday** [4] - 3:9, 5:4, 11:15, 12:3
**yesterday's** [1] - 5:19
**young** [11] - 23:20, 31:16, 32:2, 50:21, 51:13, 51:21, 54:10, 54:12, 54:20, 55:18, 59:15
**yourself** [2] - 49:14, 50:8
**yourselves** [1] - 63:16

## Z

**Zerquera** [6] - 6:7, 6:14, 6:15, 8:5, 8:14, 8:22