DAILY COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NUMBER 14-20017-CR-KMW

UNITED STATES OF AMERICA 2-23-2015

DAY TEN
A.M. SESSION

vs.

PAGES 1-76

MAURIN CHACON
RODOLFO PORTELA
CHRISTOPHER ALTAMIRANO
JAMES DIXON
JAY ANTHONY FLORES,
Defendants

---

TRANSCRIPT OF JURY TRIAL PROCEEDINGS HELD
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

---

APPEARANCES:

FOR THE UNITED STATES:
IGNACIO VAZQUEZ, A.U.S.A.
ILHAM HOSSEINI, A.U.S.A.
MARK DISPOTO, A.U.S.A.
99 N.E. 4th Street
Miami, FL 33132

FOR DEFENDANTS:
MANUEL GONZALEZ, ESQ.
2000 Ponce DeLeon Boulevard
Suite 614
Coral Gables, FL 33134

PAUL KORCHIN, A.F.P.D
150 West Flagler Street
Miami, FL 33130

PHILIP HOROWITZ, ESQ.
9130 South Dadeland Boulevard
Suite 1910 - Two Datran Center
Miami, FL 33156

DAILY COPY

**APPEARANCES CONTD.**

**DAVID DONET, JR. ESQ.**
**3250 Mary Street**
**Suite 406**
**Fort Lauderdale, FL 33133**

**HERMAN FRANK RUBIO, JR. ESQ.**
**1107 N.E. 104th Street**
**Miami Shores, FL 33138**

REPORTED BY:

PATRICIA SANDERS, RPR
*United States Court Reporter*
400 North Miami Avenue, Suite 11-3
Miami, FL 33128
T: 305.523.5528
patricia_sanders@flsd.uscourts.gov.

THE COURT: Good morning. Hope everyone had a relaxed weekend.

Is there anything we need to discuss before our jury comes in? We are missing apparently one juror.

MR. VAZQUEZ: Yes, Your Honor. Just so things can be as smooth as possible, we have the binders with the exhibit transcripts that have been admitted.

I believe in accord with what the Court suggested I have a list of transcripts, the CD'S and stills for the witnesses. I can ask to move them into evidence if Your Honor would like.

They have been reviewed by the detective who is testifying, and I would do that at the beginning, and maybe it would be a little smoother.

THE COURT: Is there any objection by the gentlemen of the defense?

MR. GONZALEZ: No, Your Honor.

MR. DONET: No, Your Honor.

MR. RUBIO: No, Your Honor.

THE COURT: All right. Thank you for working together Friday afternoon to get this streamlined. I know I keep coming back to that word. I will have to get a new word.

We know what are witness line-up is. We're going to go till four, or if they can stay a little longer that would be great.

The juror who ordinarily has her classes in Doral does not have a class tonight. There is still a child care issue for one of the jurors, and I don't want to burden her any more than I already have.

MR. GONZALEZ: Your Honor, I apologize, but what is the witness line-up?

MR. VAZQUEZ: We will be resuming with Detective Bernat. We have detective Walter Lewis, who we were trying to get to earlier. He is a very quick witness who relates to the incident on July 17th, 2012 with Mr. Gabriel Alfonso.

And then we will turn to Detective Veloz, who has the transcripts of the undercover buys where he personally purchased the narcotics.

And then we will be calling the chemist.

THE COURT: There was a question on Friday, and I had dealt with it. The Government is not calling the confidential informant, but the defense I assume knows who that person is.

MR. VAZQUEZ: He is on the video, but his name and date of birth and all that --

THE COURT: That has not been revealed by you?

MR. VAZQUEZ: That's correct.

THE COURT: I am assuming the defense knows who that person is.

MR. HOROWITZ: No, Your Honor.

MR. GONZALEZ: We see who the person is. We don't know

his name or any of that information.

MR. HOROWITZ: We just know that he is referred to as El Viejo, or the old man.

We don't know what the terms of his agreement is with the City of Miami.

THE COURT: I guess I meant to say your clients knows who he is because -- or whoever was on the video with him and dealt with him. So it's not a party that no one has ever encountered.

All right. Is there anything else?

MR. VAZQUEZ: The Marshals raised with us -- I know we will have our status conference -- so I just wanted to raise it because they asked me, and I follow the Court's lead.

They had raised the issue about the second trial. They have their own logistical issues to deal with. And I said we have an upcoming status conference, and that dictates what happens when.

THE COURT: I don't think it will come as a galloping shock that I don't believe we are going to go to trial on March 9th.

I don't think I can do another long trial until I shake off whatever this is. But we will discuss it more fully at the calendar call.

MR. VAZQUEZ: Thank you, Your Honor.

THE COURT: I will be back when we have our full

complement of jurors.

COURT IN RECESS

THE COURT: All right. We have all our jurors. If you would bring in our jurors.

COURT SECURITY OFFICER: All rise, please.

THE COURT: Please be seated everyone. Good morning, ladies and gentlemen of the jury; it's good to see you.

Detective, you are still under oath.

Mr. Vazquez, you may continue your examination.

MR. VAZQUEZ: Thank you, Your Honor. As a preliminary matter, and by agreement of the parties, the Government is seeking to admit without objection Government's Exhibit -- transcripts under Government's Exhibits 119, 122, 125, 129, 133, 137, 203.

THE COURT: Very good.

MR. VAZQUEZ: And audio disks that are marked for identification purposes as 117, 121, 123, 127, 131, 135, 201.

And stills associated with the disk at 118, 124, 128, 132, 136 and 202.

THE COURT: All right. Is that correct, gentlemen of the defense?

MR. HOROWITZ: That is correct subject to the Court's admonition regarding the transcripts and the prior instruction.

THE COURT: All right. Ladies and gentlemen, the parties have agreed that the following evidence will be entered

into evidence. There are photo stills, Government's Exhibits 118, 124, 128, 132, 136 and 202.

Government's Exhibit 117, 121, 123, 127, 131, 135 and 201, which are the audio tapes.

And then transcripts of these audio tapes 119, 122, 125, 129, 133, 137, 203 which are all admitted into evidence.

I would ask you, ladies and gentlemen, to remember there are audio recordings and there are transcripts. And that the transcripts are being admitted as aids to you with regard to the content of the conversation and the identity of the speakers.

You are instructed that whether, again, the transcript correctly reflects that content or the identity of the speakers is entirely for you as the finders of fact to decide based on your evaluation of the testimony about how the transcript was prepared.

And in your own examination of the transcript in relation to listening to the tape recording because that is the evidence, the primary evidence, of what the content of the recordings are.

If you determine the transcript is in any way incorrect or un-reliable you should disregard it to that extent.

All right. You may proceed, Mr. Vazquez.

MR. VAZQUEZ: Thank you, Your Honor.

May I pass out the binders?

THE COURT: Ladies and gentlemen, in order to bring some more efficiency the parties have agreed you will received binders in order to follow along with the transcripts and have them organized in a way that moves this along more efficiently.

BY MR. VAZQUEZ:

Q. Detective, I want to turn you back to December 13th of 2013, where we left off.

Do you recall that?

A. Yes.

Q. On that date were you a part of a controlled phone call with a confidential informant?

A. Yes, I was.

Q. What was your role?

A. I was monitoring the telephone call.

MR. VAZQUEZ: Permission to publish Government's Exhibit 11 which coincides with Government's Exhibit 112.

THE COURT: Yes

AUDIOTAPE PLAYED FOR THE RECORD

BY MR. VAZQUEZ:

Q. Detective, were you present for that recording?

A. Yes, I was.

Q. Do you recognize the voices on the recording?

A. Yes.

Q. Whose voices are they?

A. Confidential informant and Raymond Moore .
Q. What happened after the controlled call involving the confidential informant?
A. The confidential informant was taken to the location to buy narcotics.
Q. What happened -- what did you do with regard to the confidential informant before this purchase?
A. Cleared the confidential informant and checked him for any contraband, which yielded negative results, and deployed him.
MR. VAZQUEZ: Permission to publish Government's Exhibit 113.
THE COURT: Yes. Since they are all admitted you can just announce it so we know to follow along that you are in fact publishing what has been admitted.
MR. VAZQUEZ: This transcript coincides with what has been marked as Government's Exhibit 118.
THE COURT: All right.
MR. VAZQUEZ: For purposes of the record, I am going to begin the recording at the 8:14 mark.
VIDEOTAPE PLAYED FOR THE RECORD.
BY MR. VAZQUEZ:
Q. I paused the recording at the 8:47 mark. Do you recognize any persons on the recording?
A. Yes, I do.
Q. Who do you recognize?

A. Sitting down behind this gentleman, unknown gentleman, in the front is Maurin Chacon, and to the left of the screen in a hoodie jacket is James Dixon.

VIDEOTAPE PLAYED FOR THE RECORD

MR. VAZQUEZ: For purposes of the record I am advancing to the 13 minute 25 second mark.

VIDEOTAPE PLAYED FOR THE RECORD

MR. VAZQUEZ: For purposes of the record on audio track four I am advancing to the six-minute mark, which coincides with page four of the transcript.

VIDEOTAPE PLAYED FOR THE RECORD

MR. VAZQUEZ: For purposes of the record I am advancing to the nine minute 53 second mark, also on page four.

VIDEOTAPE PLAYED FOR THE RECORD.

MR. VAZQUEZ: For purposes of the record advancing to the 12:28 mark.

VIDEOTAPE PLAYED FOR THE RECORD.

BY MR. VAZQUEZ:

Q. Detective, what happened after the purchase of narcotics shown on the video?

MR. GONZALEZ: Objection, leading and testifying.

THE COURT: Overruled.

THE WITNESS: The confidential informant walked directly back to my vehicle.

MR. VAZQUEZ: Permission to publish.

THE COURT: Yes.
BY MR. VAZQUEZ:
Q. Showing you what has been marked for identification as Government's Exhibit 116.
Do you recognize that?
A. Yes, I do.
Q. What do you see there?
A. The narcotics purchased by the confidential informant on December 13th.
Q. And is it in substantially the same condition as when the confidential informant provided it to law enforcement?
A. Yes, it is.
MR. VAZQUEZ: At this time I would move to admit into evidence Government's Exhibit 1116.
THE COURT: Any objection?
MR. GONZALEZ: No, Your Honor.
THE COURT: Government's Exhibit 116 is admitted without objection.
MR. VAZQUEZ: Permission to publish.
THE COURT: Yes.
BY MR. VAZQUEZ:
Q. What is shown on the screen?
A. A baggie containing several rocks of cocaine.
Q. Showing you what has been admitted into evidence as Government's Exhibit 114, page one.

Do you recognize that?
A. Yes, I do.
Q. What is it?
A. A still image taken from the recording off the confidential informant the day the narcotics were purchased on December 13th.
Q. What does it show?
A. Maurin Chacon.
Q. Showing you the second page of Government's Exhibit 114.
Do you recognize what that is?
A. Yes.
Q. What is it?
A. A picture of the recording taken on December 13th of the confidential informant, of James Dixon and Maurin Chacon.
Q. I want to turn your attention to December 17, 2013.
Do you remember that date?
A. Yes, I do.
Q. On that date were you part of a controlled purchase of narcotics in this investigation?
A. Yes, I was.
MR. VAZQUEZ: Permission to approach the witness?
THE COURT: Yes.
MR. VAZQUEZ: I would ask for permission to pass out the transcripts, which has been identified as Government's Exhibit 119.

**THE COURT: What tab?**

**MR. VAZQUEZ: Tab five.**

**THE COURT: All right.**

**MR. VAZQUEZ: Permission to publish the recording.**

**THE COURT: Yes.**

**MR. VAZQUEZ: For purposes of the record I am starting the recording at the six minute 39 second mark.**

**VIDEOTAPE PLAYED FOR THE RECORD**

**BY MR. VAZQUEZ:**

**Q. Do you recognize anyone in the courtroom?**

**A. Yes, I do.**

**Q. Who do you recognize?**

**A. The person standing up as Maurin Chacon.**

**Q. Do you know where this location is?**

**A. Yes. On 11th Avenue between NW 4th Street and 5th Street on the east side.**

**Q. Are you aware of who these individuals are on the recording at the six minute 57 second mark?**

**A. The guy in the back with the white shirt is Steven Castro.**

**VIDEOTAPE PLAYED FOR THE RECORD**

**BY MR. VAZQUEZ:**

**Q. Detective, do you recognize anyone at this stage of the recording?**

**A. Yes, that is James Dixon.**

**VIDEOTAPE PLAYED FOR THE RECORD**

BY MR. VAZQUEZ:

Q. Do you recognize the individual who just walked into the screen?

A. Yes, that is Miguel Rodriguez.

VIDEOTAPE PLAYED FOR THE RECORD.

BY MR. VAZQUEZ:

Q. What did you just see occur on the video recording?

A. I saw an exchange of currency for narcotics by the confidential informant and Maurin Chacon

Q. After this incident what occurred with regard to this investigation on this given day?

A. The confidential informant walked directly back to my vehicle and handed me the narcotics.

MR. VAZQUEZ: Permission to publish.

THE COURT: Yes.

BY MR. VAZQUEZ:

Q. Showing you what has been marked for identification as Government's Exhibit 120.

Do you recognize it?

A. Yes.

Q. What is it?

A. A baggie containing several loose pieces of rocks -- of cocaine.

Q. When was this recovered?

A. December 17th.

Q. And is this in substantially the same condition as when you received it on December 17th?
A. Yes, it is.
MR. VAZQUEZ: At this time I would move to admit into evidence Government's Exhibit 120.
MR. GONZALEZ: No objection.
THE COURT: It is admitted without objection.
BY MR. VAZQUEZ:
Q. Was this recovered immediately after the transaction that was conducted that we watched on the screen?
A. Yes.
MR. VAZQUEZ: Permission to publish.
BY MR. VAZQUEZ:
THE COURT: Yes.
Q. Are you able to see the screen?
A. Yes, I am.
Q. What is shown on the screen?
A. A clear plastic baggie containing several pieces of loose cocaine.
Q. Showing you what has been admitted into evidence as Government's Exhibit 118.
Do you recognize it?
A. Yes; Maurin Chacon.
Q. Are you able to circle on your screen?
A. Half of it.

Q. You can clear it by clicking on the bottom left. All right. Page two of Government's Exhibit 118.
Do you recognize that?
A. Yes.
Q. What is that?
A. Steven Castro in the white shirt and Joel Diaz with glasses.
Q. Can you circle Mr. Castro?
A. (Witness indicates on the screen)
Q. And Mr. Diaz?
A. Yes.
Q. Let the record reflect the witness has drawn a circle on Mr. Castro wearing a white shirt and Mr. Diaz who is wearing a black shirt.
Q. Page three of Government's Exhibit 118.
Do you recognize that?
A. Yes.
Q. What is it?
A. A picture of James Dixon and Maurin Chacon in the back.
Q. Could you circle Mr. Chacon?
A. (Witness indicates on the screen)
Q. Could you circle Mr. Dixon.
A. (Witness indicates on the screen)
MR. VAZQUEZ: Let the record reflect the witness has placed a circle on the image to the left of Mr. Chacon and a

circle over the shoulder of the image of Mr. Dixon.

BY MR. VAZQUEZ:

Q. Showing you the fourth page of Exhibit 118. Do you recognize that?

A. Yes.

Q. What is it?

A. A picture of Maurin Chacon.

MR. VAZQUEZ: Permission to pass out the transcript associated with Exhibit (inaudible) which is the sixth tab.

MR. VAZQUEZ: Permission to publish Government's Exhibit 121.

THE COURT: Yes.

AUDIOTAPE PLAYED FOR THE RECORD

BY MR. VAZQUEZ:

Q. Detective, do you recognize the voices in the recording?

A. Yes.

Q. Whose voices were those?

A. The voices of the confidential informant and Christopher Altamirano.

MR. VAZQUEZ: At this time I would ask permission to disburse Government's Exhibit 125.

THE COURT: Yes.

MR. VAZQUEZ: And this is associated with tab seven.

THE COURT: All right.

VIDEOTAPE PLAYED FOR THE RECORD

MR. VAZQUEZ: For the record I am publishing Government's Exhibit 123.

BY MR. VAZQUEZ:

Q. Detective, who do you see in the video?

A. Christopher Altamirano.

VIDEOTAPE PLAYED FOR THE RECORD

BY MR. VAZQUEZ:

Q. Detective, what did you just see happen?

A. An exchange of currency for narcotics.

Q. Showing you what has been marked for identification as Government's Exhibit 126.

Do you recognize it?

A. Yes, I do.

Q. What is it?

A. The narcotics purchased on January 9th, a clear plastic baggie containing several loose rocks of cocaine.

MR. VAZQUEZ: Permission to publish.

THE COURT: Yes.

BY MR. VAZQUEZ:

Q. Do you see the screen?

A. Yes.

Q. What do you see?

A. A baggie containing loose rocks of cocaine.

Q. Is there a particular type of cocaine you recognize?

MR. HOROWITZ: Objection, competence.

THE COURT: Overruled.

THE WITNESS: It is rock cocaine.

BY MR. VAZQUEZ:

Q. Does it have a street name?

A. Rock, hard.

Q. What is crack --

MR. HOROWITZ: Objection, leading.

THE COURT: Sustained.

BY MR. VAZQUEZ:

Q. What do you recognize this to be?

A. Rock cocaine, crack cocaine, hard, white.

Q. What occurred after the purchase?

A. The confidential informant walked directly back to my vehicle and handed me the narcotics.

Q. What did you do with the confidential informant after he returned?

A. After he handed me -- the confidential informant handed me the narcotics I checked him, cleared him for narcotics, and it yielded negative.

Q. Where did this occur?

A. On 11th Avenue between 4th and 5th Street on the east side.

Q. Showing you what has been admitted into evidence as Government's Exhibit 124.

Do you recognize that?

A. Yes, I do.

Q. What is it is?
A. A picture of Christopher Altamirano.
Q. Where is this image?
A. Northwest 11th Avenue between 4th and 5th Street in front of 435 NW 11th Avenue.
Q. Showing you the second image of Government's Exhibit 124. What do you see?
A. A picture of Christopher Altamirano looking at his hand, at rock cocaine or crack.
Q. Showing you the third image of Government's Exhibit 124. What is it?
A. A picture of Christopher Altamirano.
Q. On January 16th, 2014, did you participate in an undercover purchase of narcotics as a part of this investigation?
A. Yes, I did.
MR. VAZQUEZ: At this time I would move to disburse Government's Exhibit 129. It is associated with tab eight from the jury binder.
THE COURT: All right.
MR. VAZQUEZ: For purposes of the record I am publishing Government's Exhibit 127, track two.
VIDEOTAPE PLAYED FOR THE RECORD.
MR. VAZQUEZ: For purposes of the record advancing to the five minute and fourteen second mark.
VIDEOTAPE PLAYED FOR THE RECORD.

BY MR. VAZQUEZ:

Q. Who do you see on the screen?

A. Christopher Altamirano.

Q. What area is this event happening.

A. This was Little Havana just north of Fifth Street, NW 11th Avenue and 6th Street. So north of 4th and 5th Street where they normally do the transactions.

MR. HOROWITZ: Objection regarding what they normally do, move to strike.

THE COURT: Sustained; that will be stricken.

BY MR. VAZQUEZ:

Q. Where is this event happening in relationship to those multiple locations?

A. One street north.

Q. Detective, what did you do with the confidential informant before this transaction occurred?

A. I cleared him of all contraband, made sure he had nothing on him.

Q. What happened after this transaction?

A. He came directly back to my vehicle, I took the narcotics that were purchased from him and checked him for all contraband which yielded negative results.

MR. VAZQUEZ: Permission to publish.

THE COURT: Yes.

BY MR. VAZQUEZ:

Q. Showing you what has been marked for identification as Government's Exhibit 130.

Do you recognize it?

A. Yes, I do.

Q. What is it?

A. Several loose rocks of cocaine.

Q. Where did these items come from in relation to this investigation?

A. They came from Christopher Altamirano.

MR. HOROWITZ: Objection competence.

May I approach?

THE COURT: Yes.

MR. HOROWITZ: Your Honor, this witness can testify this is what happened (inaudible) but he did not have the eyeball to see if they were purchased or not.

He can say he checked the confidential informant before he left and then the informant came back and gave him Government's Exhibit 130.

Other than that he can't say from whence they came.

MR. VAZQUEZ: He can say he watched the video and saw a hand-to-hand transaction.

THE COURT: Right if the jury disagrees that is fine. If you want to clarify it you can say, what did you just see on the video? I saw Christopher Altamirano.

And then you cross on that.

MR. HOROWITZ: Yes, Your Honor.

THE COURT: One more thing while we are all here. I recall last week when I said -- I said don't give the jurors a notebook because it had the un-redacted portions.

But now that you have your line-up I think at a break since we have reached accord on these transcripts we should perhaps populate the binders.

So, when we break one of the Government lawyers and one of the defense lawyers can sit down and fill the binders with the transcripts.

MR. VAZQUEZ: Yes, Your Honor.

BY MR. VAZQUEZ:

Q. Detective, with regard to Government's Exhibit 130 is it in substantially the same condition as when you received it on January 16th, 2014?

A. Yes, it is.

MR. VAZQUEZ: At this time I would move to admit into evidence Government's Exhibit 130.

THE COURT: All right. It is admitted.

MR. VAZQUEZ: Permission to publish.

THE COURT: Yes.

BY MR. VAZQUEZ:

Q. Do you see the screen?

A. Yes.

Q. What is it?

A. Several loose rocks of cocaine, crack cocaine.
Q. Were you monitoring the transaction as it was happening?
A. I was.
Q. Were you monitoring the confidential informant before and after the transaction?
A. Yes, I was.
Q. And at any point in time did you hear some other person engaging in a drug transaction with the confidential informant?
A. I did not.
Q. What do you believe you saw on the video?
A. A drug transaction between the confidential informant and Christopher Altamirano.
Q. Detective on January 23, 2014, did you participate in an undercover drug transaction as a part of this investigation?
A. Yes, I did.
MR. VAZQUEZ: I would ask to disburse 113 which is in line with tab nine of the binder.
THE COURT: Yes.
VIDEOTAPE PLAYED FOR THE RECORD.
BY MR. VAZQUEZ:
Q. Who did you just see in the video?
A. Christopher Altamirano.
VIDEOTAPE PLAYED FOR THE RECORD
Q. Prior to the events on the video we just watched what did you do with regard to the confidential informant?

A. I cleared him of all contraband made sure he had nothing on him.

Q. What happened after this transaction?

A. He came directly back to my vehicle, I took the narcotics that were purchased from him and then checked him for all -- for contraband which yielded negative results.

Q. At any point during this video did any other person engage the confidential informant in a transaction?

A. No, sir.

Q. What do you believe you just saw on the video?

A. An exchange of U.S. currency for narcotics between the confidential informant and Christopher Altamirano.

MR. VAZQUEZ: Permission to publish.

THE COURT: Yes.

BY MR. VAZQUEZ:

Q. Showing you what has been marked for identification as Government's Exhibit 134. Do you recognize it?

A. Yes, I do.

Q. What it?

A. A clear plastic baggie containing several loose rocks of cocaine.

Q. Is it in substantially the same condition as when you first saw it?

A. Yes, it is.

MR. VAZQUEZ: At this time I would move to admit into

evidence Government's Exhibit 134.

THE COURT: Government's Exhibit 134 is admitted.

MR. VAZQUEZ: Permission to publish.

THE COURT: Yes.

BY MR. VAZQUEZ:

Q. Showing you the screen. What do you see?

A. Several loose rocks of cocaine.

Q. When did you receive this?

A. The date of the transaction from the confidential informant.

Q. Who was involved in that transaction?

A. Christopher Altamirano.

MR. HOROWITZ: Objection, asked and answered.

THE COURT: Overruled.

THE WITNESS: Christopher Altamirano.

BY MR. VAZQUEZ:

Q. Showing you what has been admitted into evidence as Government's Exhibit 132.

What do you see?

A. A picture of Christopher Altamirano.

Q. Do you know where that is from?

A. NW 11th Avenue in between 4th and 5th Street.

Q. What does this image come from?

A. Audio video recording placed on the confidential informant.

THE COURT: Ladies and gentlemen, I think it's time

for our morning break. We will take ten minutes. Don't talk about the case with each other. Get some coffee, and we will be back in about ten minutes.

COURT SECURITY OFFICER: All rise, please.

JURY EXCUSED

THE COURT: Well, two things. I admitted 134. Perhaps I was thinking of that evidence in terms of the other evidence, and I did not ask the defense for their objection, which was my mistake.

If you have an objection you may put it on the record.

MR. HOROWITZ: No objection subject to it being tied up later, and that is as to all of drug evidence.

THE COURT: All right. If someone from the defense team could make sure what is going into the binder is what everyone has agreed on, and then we can populate the binder and not have to do it seriatim.

MR. DONET: Perhaps if we could collate them and put it together since the jury -- some of the jurors have their note pads there.

THE COURT: That's a good idea, Mr. Donet. Thank you for that.

RECESS TAKEN

MR. VAZQUEZ: Your Honor, the next transcripts are 137 and 203. 137 corresponds with tab ten and 203 corresponds with tab 28.

THE COURT: All right. Thank you. Let's bring in our jury.

COURT SECURITY OFFICER: All rise, please.

THE COURT: Please be seated everyone. Ladies and gentlemen of the jury you are going to be given two more transcripts. You will be given Exhibit 137, which goes behind tab ten and Exhibit 203, which goes behind tab 28.

All right. Mr. Vazquez, you may continue with your examination.

BY MR. VAZQUEZ:

Q. On January 28th, 2014, did you participate in an undercover drug transaction involving this investigation?

THE WITNESS: Yes, I did.

MR. VAZQUEZ: Permission to publish.

THE COURT: Yes.

MR. VAZQUEZ: And for purposes of the record, I have inserted Government's Exhibit 135; that correlates with the transcript at Government's 137.

Moving to the eight-minute, 25 second mark which translates to the first page of the transcript.

THE COURT: All right.

VIDEOTAPE PLAYED FOR THE RECORD

BY MR. VAZQUEZ:

Q. Detective, are you able to see who exactly is involved in that transaction?

**A. No, sir.**
**Q. Prior to that transaction what did you do with regard to the confidential informant?**
**A. I cleared the confidential informant of any contraband, which yielded negative results.**
**Q. And were you monitoring the recording?**
**A. Yes, I was.**
**Q. All right. And do you recognize any persons other than the confidential informant on the recording?**
**A. I recognized the voice of Christopher Altamirano.**
**Q. And prior to the drug transaction did the confidential informant have any narcotics on his person?**
**A. No, he did not. I checked him for any contraband.**
**Q. After the interaction depicted in the recording -- did you hear any third parties interacting with the confidential informant?**
**A. I did not.**
**Q. What happened when the confidential informant returned to you?**
**A. He immediately give me the narcotics that were purchased, and I once again checked him for any and all contraband, which yielded negative results.**
**Q. Showing you what has been marked for identification as Government's Exhibit 338.**
**Do you recognize that?**

A. Yes, I do.
Q. What is it?
A. Several loose rocks of cocaine or crack cocaine.
Q. When did you receive these items in the course of investigation?
A. I receive it from the confidential informant.
Q. When?
A. After he purchased it from Christopher Altamirano.
MR. VAZQUEZ: At this time I would move to admit into evidence Government's Exhibit 338.
THE COURT: It will be admitted.
MR. VAZQUEZ: Permission to publish.
THE COURT: Yes.
BY MR. VAZQUEZ:
Q. Are you able to see the screen?
A. Yes, sir.
Q. What do you see?
A. Several loose rocks of cocaine also known as crack cocaine.
Q. On May first, 2014 did you participate in an undercover drug transaction?
A. Yes, I did.
Q. What was your role that day?
A. That day I believe I was the eyeball.
Q. What does the phrase eyeball mean?
A. Eyeball means I was in close proximity to the drug

transaction to view it first hand, making sure the confidential informant was safe. And I also watched him leave the drug transaction back to the undercover vehicle.

MR. VAZQUEZ: Permission to publish Government's Exhibit 201.

THE COURT: Yes.

VIDEOTAPE PLAYED FOR THE RECORD

BY MR. VAZQUEZ:

Q. Who do you see on the recording?

A. I see Christopher Altamirano.

VIDEOTAPE PLAYED FOR THE RECORD.

BY MR. VAZQUEZ:

Q. Detective, prior to the confidential informant's encounter with the person you just described as Christopher Altamirano, what did you do with regard to the confidential informant?

A. That day I did not do anything with the informant, I was the eyeball.

Q. Were you present when the informant -- was the informant handled in the same manner as he was throughout the entire case?

A. Yes, as I recall.

Q. Were you present when the informant returned to the police location?

A. I was.

Q. What did the informant have?

A. The informant had the narcotics and handed them over to another detective.
Q. Were you present for that?
A. I was not present for that.
Q. Did you eventually see the narcotics?
A. Yes, I did.
Q. On the scene?
A. At the police station.
Q. Did you review the audio communications while they were occurring?
A. Yes, I did.
Q. At any point in time did any third party interact with Christopher Altamirano?
A. Nobody else interacted with him.
Q. At any point in time did anyone interact with the confidential informant other than Christopher Altamirano?
A. No, sir.
Q. Showing you what has been marked for identification as Government's Exhibit 200.
Do you recognize it?
A. Yes, I do.
Q. What is it?
A. Several loose rocks of cocaine, crack cocaine that were given to another detective.
Q. Were you present when these narcotics were processed at

some point in time by the City of Miami Police Department?
A. Yes, I was.
Q. When did that happen?
A. Directly after the buy they were taken to the property unit.
Q. And is it in substantially the same condition as when you first observed it?
A. Yes.
MR. VAZQUEZ: At this time I would move to admit into evidence Government's Exhibit 200.
MR. HOROWITZ: Objection, foundation as to this witness.
THE COURT: Overruled. Government's Exhibit 200 is admitted over objection.
MR. VAZQUEZ: Permission to publish.
THE COURT: Yes.
BY MR. VAZQUEZ:
Q. Showing you what has been admitted into evidence as Government's Exhibit 200.
Do you recognize it?
A. Yes, sir.
Q. What do you see?
A. Several loose rocks of cocaine.
Q. Showing you what has been admitted into evidence as Government's Exhibit 202.

Do you recognize it?
A. Yes, I do.
Q. What is it?
A. A picture of Christopher Altamirano.
Q. Do you know the approximate location of where this still was captured?
A. Just south of Sixth Street on NW 11th Avenue.
Q. On May 2nd of 2014 did you participate in the undercover drug transaction involving an undercover detective?
A. Yes.
Q. While you were participating in that portion of the investigation were narcotics recovered by City of Miami Police officers that were essentially abandoned?
A. Yes.
Q. Do you recall where they were found?
A. Not off the top of my head. I would have to refer to my report.
MR. VAZQUEZ: Permission to publish.
THE COURT: Yes.
BY MR. VAZQUEZ:
Q. Take a look at the document. When you have reviewed it if you would look up.
A. Yes, sir.
Q. Do you recall where the abandoned narcotics were located?
A. I do not, sir.

Q. Do you recall participating in the collection of the abandoned narcotics?
A. No, sir.
Q. Directing your attention to November 27, 2013. Do you recall that date?
A. Yes.
Q. At that time did you participate in the collection of DNA samples of an individual by the name of Rodolfo Portela?
A. Yes, I did.
Q. And if you would please identify him by an article of clothing that he is wearing.
A. He is wearing a mustard long sleeved shirt with a mustard tie.
Q. On that date did Mr. Portela offer to speak with you?
A. Yes, he did.
Q. Showing you what has been marked for identification as Government's Exhibit 237.
Do you recognize it?
A. Yes, I do.
Q. What is it.
A. A statement of rights -- advisement of rights and waiver form, Miranda Rights.
Q. Is Government's Exhibit 237 a fair and accurate depiction of the Miranda waiver involved in the November 27, 2013 encounter you had with Mr. Portela?

A. Yes, its.

MR. VAZQUEZ: At this time I would move to admit into evidence Government's Exhibit 237.

MR. GONZALEZ: No objection.

THE COURT: Government's Exhibit 237 is admitted.

BY MR. VAZQUEZ:

Q. Were you present when Government's Exhibit 237 was provided to Mr. Portela?

A. Yes, I was.

Q. Did you see Mr. Portela execute Government's Exhibit 237?

A. Yes, I did.

Q. On the left hand side, the first advice of rights, do you see any written notation?

A. The RP Rodolfo Portela initialed.

Q. Who made that initial?

A. Rodolfo Portela did himself after understanding each line.

Q. How were the rights provided to Mr. Portela?

A. Special Agent Perez gave him the rights. He read them out loud, as well as Mr. Portela read them back.

Once he understood each right he initialed next to it acknowledging that he understood it.

Q. There is a signature block. Who executed that?

A. Rodolfo Portela signed as well as printed his name and dated the form.

Q. There is a witness line and printed name and date.

Who executed that?
A. I did.
Q. After Mr. Portela signed this document did he speak with you?
A. Yes, he did.
Q. What did Mr. Portela tell you?
A. He began speaking of the firearms that he was in possession of. He spoke about the first firearm which was the Ruger. He stated that he was in the projects where he saw a group of individuals behind a big trash can place an item behind it that he thought were narcotics.
When those individuals left the area he went to retrieve the narcotics and found the firearm.
He also went on to say the second firearm he purchased for $50 off of NW 11th Avenue in the area of Second Street as he was walking towards Flagler Street southbound.
He stated an older man approached him and attempted to sell the firearm for a hundred dollars. Mr. Portela negotiated the price to $50 because that is the amount of money he had.
He went on to say he wanted to get out of jail and he would work for us as a Government informant if he could be put back on the street.
He knew where narcotics were being held, where there was a gun stashed, quote unquote. And the only people he stated he wouldn't so called snitch on or tell us about is his family.

When he was asked about who his family was he said his BMT family.

MR. HOROWITZ: Objection, reserve a motion.

THE COURT: All right.

BY MR. VAZQUEZ:

Q. Detective, where were you when this statement was collected?

A. Dade County Jail.

Q. Was this statement recorded?

A. It was not.

Q. Why not?

A. I did not take any documentation as far as paperwork, no recording devices with me that day. Because my intention was not to take a statement from Mr. Portela, it was just to assist Special Agent Perez in the execution of a warrant for his DNA.

Q. Why didn't you have Mr. Portela write out a statement?

A. No particular reason. He just started speaking with us. He waived his rights. He was adamant about speaking with us. We read him his rights, and he just engaged in a conversation.

Q. Were you present when the DNA was collected from Mr. Portela?

A. Yes, I was.

Q. Who took custody of the DNA swab?

A. Special Agent Perez.

Q. Detective, when you were speaking with Mr. Portela did he

reference which guns and which incidents he was talking about with you? Did he specify?
A. He said that the day I arrested him he had the Ruger firearm, the little black firearm, with him for only about a day before he got caught with it.
The secondary gun he was caught with, which was a chrome firearm he said he purchased for $50 from an old man in the area of 11th Avenue and Second Street.
Q. Did you follow up with him on the accuracy of the gun he described as a Ruger versus any other kind of make?
A. I did not.
Q. Did Mr. Portela reference the firearm involved in his arrest where you were a part of the arrest team?
A. He told me he found it behind a trash can approximately a day before.
Q. When you were talking about that firearm -- you used the word Ruger.
What date was he referring to?
A. I think it was July. I don't remember the exact date.
Q. Was that in reference to your arrest?
A. That was in reference to my arrest, yes.
Q. When Mr. Portela was speaking to you about the Second Street incident do you know what event he was talking about?
A. He was speaking about a traffic stop that occurred with him and his girlfriend.

Q. Detective, if you can recall in your conversation with Mr. Portela if he described when that traffic stop happened?
A. It occurred after he was arrested for the Ruger, several months later.
MR. VAZQUEZ: Tender the witness.
THE COURT: Cross examination Mr. Gonzalez.
BY MR. GONZALEZ:
Q. Good morning, Detective Bernat.
A. Good morning, sir.
Q. Almost afternoon. Detective Bernat you testified on Friday that you worked in Little Havana -- I think you called it the Net, one of the nets, between 2013 and 2014; is that correct?
A. Yes.
Q. And you specifically talked about the events of July 26th of 2013?
A. Yes.
Q. And you along with other Miami detectives and others were doing surveillance in the area?
A. Yes, sir.
Q. As a matter of fact,, you testified to the fact that there was a point in time that Maurin Chacon was detained initially.
Do you recall that?
A. Yes, sir.
Q. And was this -- was it still daylight when he was detained initially?

A. Yes, sir.
Q. What time of day are we talking about? Are we talking about late afternoon, almost late evening, or early that day?
A. I recall it being daylight. I don't recall specifically the time.
Q. When Mr. Chacon was detained you said that he was let go, he was not arrested initially?
A. That's correct, sir.
Q. When he was detained he would have been patted down to see if he had any narcotics or anything of that nature on him?
A. I was not there for that detainment.
Q. When he was initially detained you were the lead detective on this particular day?
A. Yes, I was.
Q. When he was detained and let go was it because there were narcotics -- if he would have had narcotics you would have arrested him, correct?
A. That's correct.
Q. On July 26th of 2013 there was never any firearm seized from Mr. Chacon?
A. That's correct.
Q. You said that later on that day -- I guess the afternoon of July 26th of 2013 you observed a hand-to-hand transaction.
Do you recall that?
A. Yes.

Q. At this point are we still daylight or is it nighttime?
A. I believe at that point it was nighttime.
Q. It was night?
A. It was nighttime I believe, yes.
Q. You also testified last Friday that it was a hand-to-hand transaction of U.S. currency, that is money, for narcotics.
You said you observed that with your own eyes?
A. Yes, sir.
Q. Now the prosecutor went on to ask you questions about fronting of marijuana. That is -- what you testified to was not about fronting of marijuana to be paid at a later date. You testified that you actually saw money being exchanged for marijuana?
A. Yes.
Q. And fronting would be the individual would maybe turn over narcotics to be paid, I guess, on credit at a later time, later date, correct?
A. It could be that, or it could also be the fact they don't have -- for example, if the narcotics cost $10 and they only had $5 -- he is still fronting the narcotics with the expectation of being paid the money owed at a later date.
Q. What you testified to was not fronting, you testified to an actual exchange?
A. I saw an exchange. I don't know what type of deal they had going on amongst themselves.

Q. You say you saw an exchange of money and what later on turned out to be the two little buds of marijuana, correct?
A. What I saw was exchange of money and a value of marijuana.
Q. As the lead detective you did not take any money from Mr. Chacon and impound it?
A. Not that I recall.
Q. You would agree money given by someone buying drugs is considered seizable money, meaning the Government can keep it because it is for the purchase of narcotics, correct?
A. We can, yes.
Q. You testified about the informant -- that you did certain procedures with the informant; do you recall that? About making sure he was clear, you recall that?
A. Yes, sir.
Q. As a matter of fact,, with regard to -- I know it has not been placed into evidence, but if you gave the informant some monies, whatever money you gave, that was City of Miami funds, correct?
A. ATF funds.
Q. Pardon me?
A. ATF.
Q. At that point ATF was working with the City of Miami?
A. Not at that point. At that point we weren't working together, and we were making confidential informant buys.
Q. The money the informant was getting -- it was Government

money, right? Either the City of Miami or the ATF?
A. When he started working with us yes.
Q. I am talking about say the events of 2013. You mentioned December 13th, you mentioned December 17th, and then you mentioned others.
Whatever money the informant was given, was that still a City of Miami investigation or at that point was it ATF funds?
A. ATF funds.
Q. So there was Government money being given to the informant?
A. That's correct.
Q. And before you gave him the money that money had to be taken out -- certain procedures had to be followed in order to get the cash, right?
A. You would have to ask the agent on that.
Q. You recall, do you not, even photographs of the money that was being given to the informant?
That was done, right?
A. Yes, it was.
Q. That is to be able to track down that money down and say, we gave the informant $60, $40; is that correct?
Is what we're talking about? And to say, here is where it came from, correct?
A. Yes.
Q. With regard to December 13, 2013, the events of that particular day, you mentioned Raymond Moore, correct?

A. I believe so, yes.
Q. The confidential informant with regard to the events of December 13th, the informant was buying from Raymond Moore?
A. He went through so many dates that right now I would have to go back through my notes.
Q. Do you have your notes with you?
A. No, I do not, sir.
Q. Okay. The first transaction we talked about was video and transcripts 111 and 112.
MR. GONZALEZ: May I approach the witness to see if Government's Exhibit 112 helps to refresh his recollection.
THE COURT: Yes.
BY MR. GONZALEZ:
Q. Does that refresh your recollection?
A. Yes, thank you.
Q. Detective Bernat, what transpired on December 13, 2013 that was the informant with Raymond Moore, correct?
A. Yes, sir.
Q. I believe you also testified to another event that was on December 6th. That would have been with Raymond Moore and the informant, correct?
A. I would have to refer back to the transcript.
Q. If I may, Government's Exhibit 108 in evidence is the transcript.
MR. VAZQUEZ: I would ask -- there are multiple dates

and persons that are involved. There's been a misstatement of facts.

THE COURT: If there's been a misstatement then you will clear it up on redirect, and perhaps the witness will clear it up now.

But now we will see if his memory is refreshed.

BY MR. GONZALEZ:

Q. Is December 6th a transaction that involved the confidential informant and Raymond Moore?

A. Yes, it is.

Q. Now Detective Bernat, what the informant was basically doing was pretending in this case to be someone that was interested in buying a small amount of crack cocaine for himself or for someone else?

A. I guess in essence he was.

Q. $60 gets you two, three rocks of crack cocaine?

A. Depends on the size.

Q. What was seized in this matter and what is in evidence as part of the narcotics -- and I'm specifically talking about the December 13th and December 17th dates.

We're talking about two or three rocks of crack cocaine on each occasion, correct?

A. I would have to review the evidence again.

Q. All right. Showing you what has been admitted into evidence as Government's Exhibit 116. It deals with the events of

December 13, 2013. Do you need to look at the package to determine the amount of crack cocaine we're talking about?
A. If you could turn it over, please.
Q. Okay. That doesn't look very helpful there. Can you spot it from where you are at or would you like me to bring it over to you?
A. If you could bring it over, please.
MR. GONZALEZ: Permission to approach.
THE COURT: Yes.
BY MR. GONZALEZ:
Q. How much crack cocaine is in Government's Exhibit 116?
A. I count six rocks, sir.
Q. So that would be the equivalent of $10 a rock if it was $60 worth?
A. Yes, sir.
Q. Showing you what has been admitted into evidence as Government's Exhibit 120. This is the narcotics from December 17, 2013.
I am going to turn it over to see if that will help you from where you are.
Can you tell from there what 120 depicts?
A. I see two larger pieces of rock cocaine. As I stated previously, many times this rock cocaine will become moist and crumble up and turn to paste.
Q. You would agree it was $60 worth on December 13th, 2013?

A. Yes -- this was December 16th.
Q. I will get there. It was $60 on December 13th and also $60 on December 17th, 2013?
A. For that amount I would have to verify the transcripts.
Q. All right. If I show you the transcripts of December 17th, 2013, which is Government's Exhibit 119 would that help refresh your recollection as to what amount we're talking about?
A. Yes, sir.
MR. GONZALEZ: Permission to approach.
THE COURT: Yes.
BY MR. GONZALEZ:
Q. Did it help refresh your recollection?
A. I don't see where it discusses how much he was going to purchase.
Q. It's not discussed in the transcript?
A. I don't see it.
Q. It would not be on the audio either, correct?
A. No.
Q. With regard to the events of December 13, 2013 you were listening but you were not the eyeball, you were not viewing what was going on with your own eyes, correct?
A. Correct.
Q. With regard to the events of December 17, 2013 you were listening on that occasion also but you were not in direct eye

contact with what was going on; is that correct?
A. Correct.
Q. You conducted the surveillance on numerous occasions throughout 2013 and 2014, correct?
A. I don't --
Q. Between 11th, 5th and 6th. That is the area we have been talking about?
A. I don't understand the question.
Q. Did you conduct surveillance on other dates, besides the dates in question here, besides December 13th, 17th and the other dates you just testified to?
Did you do surveillance on other occasions?
A. Yes, I did.
Q. And isn't it a fact, Detective Bernat, that during 2013, 2014 you stopped Mr. Chacon on many occasions?
A. Yes, I did.
Q. And when you stopped him it would have been at least five times or more during that period of time, correct?
A. I don't recall how many times.
Q. When you stopped him you did not seize any drugs from him?
A. Not that I can remember.
Q. And you didn't seize any guns from him, correct?
A. That's correct.
MR. GONZALEZ: If I may have a moment.
THE COURT: You may.

MR. GONZALEZ: I have nothing further.

THE COURT: Mr. Horowitz.

MR. HOROWITZ: Thank you, Your Honor.

BY MR. HOROWITZ:

Q. Good afternoon, detective.

A. Good afternoon, sir.

Q. Detective Bernat, the confidential informant we have been talking about is an older gentleman?

A. Yes.

Q. When I say older like mid fifties?

A. Not sure of his age.

Q. Were you his handler?

A. I am not his handler.

Q. When you used him -- the first time you used him in connection with this investigation was October 24, 2013, correct?

A. I don't recall the first time we used him.

Q. Do you recall using him to buy drugs from Nadim Guzman on October 24, 2013?

A. No.

Q. Do you recall sending him in with $60 to buy $60 of drugs from Nadim Guzman?

A. No.

Q. Do you recall Nadim Guzman keeping the money and not supplying the drugs?

A. That I do recall.
Q. Do you recall if that was October 24, 2013?
A. Sounds right, yes.
Q. Nadim Guzman was given $60 by an informant for drugs?
A. By an informant, yes.
Q. And the money that was given him was money that is called serialized money. Do you know what that term means?
A. No, I do not.
Q. Money similar to this one dollar bill is taken and put on a copy machine; is it not?
A. Yes, sir.
Q. And the serial numbers, which are unique to each bill, are kept in your file?
A. Yes.
Q. The reason is, is that if Nadim Guzman was given the money and doesn't supply the drugs and is subsequently stopped you can go into his pockets, correct?
A. Correct.
Q. And pull out whatever money he has in his pockets, correct?
A. The money that was handed for the narcotics, yes.
Q. And you can match the money in Nadim Guzman's pocket to the serial numbers on the bills that you copied before you sent the confidential informant in, correct?
A. Yes, sir.
Q. Now, after giving Nadim Guzman the money he never sold any

drugs to the informant?
A. No, he did not.
Q. As a matter of fact,, you and other officers with the City of Miami Police Department stopped Mr. Guzman later that day?
A. I was not a part of that stop.
Q. But it's your understanding that Mr. Guzman had the serialized money --
MR. VAZQUEZ: Objection, calls for hearsay, as well as speculation.
THE COURT: Sustained.
BY MR. HOROWITZ:
Q. Did you ever return the money that was taken from Mr. Guzman to ATF?
A. Again, I was not a part of the stop; I did not retrieve the money.
Q. I want to talk to you about the events of January ninth, 2014.
Do you remember that day?
A. I would have to look at the transcripts.
Q. If I just say January ninth, 2014 there is a transaction, you are not aware of that?
A. I am aware of it being a transaction.
Q. You did not have the eyeball of that transaction, did you?
A. Not on that day.
Q. You patted down the confidential informant before he left?

A. Correct.
Q. Then you patted him down again when the confidential informant came back sometime later?
A. Correct.
Q. When you don't have the eyeball you do however -- you can listen to the audio, correct?
A. Correct.
Q. And the video that was presented to the jury, you are not watching a monitor where you are, correct?
A. That's correct.
Q. Does the informant have the ability to turn the recorder on and off?
A. The ability?
Q. Yes, sir.
A. He does not know how the equipment functions.
Q. You did not prep him on how the equipment functions?
A. No.
Q. On the video that you saw of Mr. Altamirano, it was your testimony that the transaction took place where?
A. If I could view the video again I could tell you.
Q. Well, on that video --
MR. HOROWITZ: Could we have the ELMO, please.
THE COURT: Ms. Greer.
MR. HOROWITZ: Thank you.
BY MR. HOROWITZ:

Q. Showing you Government's Exhibit 24.
Do you recognize that now?
A. Yes.
Q. Did you see Mr. Altamirano coming from that house?
A. No.
Q. Showing you what has been admitted into evidence as Government's Exhibit 36.
Do you recognize that residence?
A. I do.
Q. Did you see Mr. Altamirano coming from that residence?
A. Again I would have to look at the video.
Q. Do you have any independent recollection of that video that we saw about an hour ago?
A. I have seen numerous videos, so to distinguish one from the other is difficult.
Q. I believe this is the first transaction that you testified to regarding Mr. Altamirano.
Do you recall Mr. Altamirano coming from this building?
A. Again, I would have to review the video.
Q. Showing you Government's Exhibit 42. Do you recognize that residence?
A. Yes, I do.
Q. You are very familiar with that residence?
A. As familiar as I am with the one across the street.
Q. Did you see Mr. Altamirano coming from that residence?

A. Again, I would have to review the video.
Q. In any of these videos you have testified to regarding Mr. Altamirano, did you see him coming from any of these three residences previously admitted as Government's 24, 36 and 42?
A. I would have to review the video.
Q. As a matter of fact,, some of these transactions -- all of these transactions occurred at a distance away from these residences?
A. That is not correct.
Q. Well, one was on 11th and Fifth, correct?
A. I believe so.
Q. Not in front of these houses, correct?
A. I believe one occurred in front of 435 NW 11th Avenue, which is the building that is boarded up.
Q. Each one of these transactions who was Mr. Altamirano with?
A. By himself.
Q. In every one of these transactions Mr. Altamirano was walking down the street; was he not?
A. Yes.
Q. The transaction of January 16th, 2014, is that the same situation where you did not have the eyeball?
A. Correct.
Q. Same with January 23rd?
A. Correct.
Q. January 28th?

A. Correct.
Q. Now, on May 1st you did have the eyeball is that a fair statement?
A. Yes, sir.
Q. And the transaction on May 1st it was the informant's suggestion to ask Mr. Altamirano for a gun, correct?
A. No, it was not.
Q. Isn't it true it was the informant that said, do you have a gun to sell me because my nephew has a gun, and I want one?
A. He did ask him that.
Q. So, it was the informant that brought up this conversation, correct?
A. That's correct.
Q. At your request?
A. Correct.
Q. And Mr. Altamirano, said I don't have a gun, I don't know, I'll have to see, correct?
A. He spoke about -- prior to that he spoke about calibers.
Q. And this was at the request of the informant?
A. Correct.
Q. At no time did Mr. Altamirano ever sell a gun to the informant?
A. Correct.
Q. At no time did Mr. Altamirano produce a gun to show to the informant?

A. Correct.
Q. At no point in time did he produce any ammunition to the informant?
A. Correct.
Q. On January 23rd -- and we will go back a couple of transactions -- it was also the informant that asked Mr. Altamirano what else are you selling?
A. Yes, sir.
Q. Mr. Altamirano did not offer anything else, it is the informant that is trying to get more?
A. Correct.
Q. It is the informant that is desiring to get the gun, to get different types of drugs?
A. At my request.
Q. The informant was being paid?
A. Yes, he was.
Q. The more drugs the informant gets the more money he gets?
A. No, sir.
Q. If the informant gets a gun does he get money for that too?
A. Not necessarily.
Q. The reason it's "not necessarily" is because he never got a gun, correct?
A. Correct.
Q. The transaction of January 28th that is the one you see a lot of palm trees.

Do you recall that video?
A. Yes, sir.
Q. On the January 28th transaction you don't have the eyeball, correct?
A. Correct.
Q. Which means you can hear what is going on but you can't see what is going on, correct?
A. Correct.
Q. On that video you don't see Mr. Altamirano, correct?
A. Correct.
Q. As a matter of fact,, you don't even see the informant, you see a lot of palm frons?
A. The informant is never seen on any of the videos?
Q. You can't tell where the informant was?
A. Correct.
Q. Camera is pointing up, is that true?
A. Correct.
MR. HOROWITZ: No further questions, thank you.
THE COURT: Mr. Korchin.
BY MR. KORCHIN:
Q. Detective, with respect to the events on July 26th, 2013, you arrested Mr. Portela on that date, correct?
A. Yes, sir.
Q. You were not involved with the seizure of ammunition and a magazine on that date?

**A. I was not involved.**
**Q. And with respect to your meeting with Mr. Portela on November 27, 2013, this was not a chance encounter with Mr. Portela, was it?**
**A. What do you mean by chance?**
**Q. It was you and another agent -- you had planned to go see Mr. Portela on November 27, 2013, correct?**
**A. We planned to execute a search warrant that was signed off on by a Judge.**
**Q. A warrant to get his DNA?**
**A. Yes, sir.**
**Q. And when did you and the other law enforcement officer make the decision to go out to see Mr. Portela on November 27th?**
**A. When the search warrant was issued we decided to execute it.**
**Q. Was that issued a day or two before November 27, 2013?**
**A. I don't recall the exact date.**
**Q. It would have been before November 27th; would it not?**
**A. Could have been the same day; I don't recall.**
**Q. You don't recall?**
**A. I don't recall.**
**Q. You do remember meeting with the other law enforcement officer for the specific purpose of going to see Mr. Portela on November 27, 2013?**
**A. Actually I met him at the Dade County Jail.**

Q. So you made arrangements with the other agent to meet him at the jail on November 27, 2013?
A. Yes.
Q. That other agent -- what is the name of the other agent?
A. Special Agent Rosniel Perez.
Q. With the ATF?
A. Yes.
Q. So you and Special Agent Perez made an agreement to meet together at the Dade County Jail on November 27, 2013 to get Mr. Portela's DNA?
A. Correct.
Q. And so did you have paper with you?
A. I did not bring anything with me.
Q. Nothing?
A. My police ID.
Q. No paper?
A. No paper.
Q. Nothing to write with?
A. Nothing to write with.
Q. No tape recorder?
A. No tape recorder.
Q. How about the other agent, did he bring a tape recorder with him?
A. He did not.
Q. Did he have paper with him?

A. He had his binder.
Q. He had a binder. Did the binder appear to have paper inside of it?
A. Yes.
Q. Did he have something to write with?
A. I believe in his binder he does, yes.
Q. He had something to write with, okay.
And one of you had a Miranda waiver form?
A. Special Agent Rosniel Perez did.
Q. Of course you did not go out there to take a statement from Mr. Portela?
A. That's correct.
Q. You went out there to get his DNA?
A. That's correct.
Q. But Special Agent Perez had a Miranda waiver form with him?
A. He did.
Q. The purpose of such a form is to advise someone of their right to silence and counsel before a statement is made, correct?
A. That's correct.
Q. The purpose of the trip was to get DNA?
A. Yes.
Q. And not to interview Mr. Portela?
MR. VAZQUEZ: Objection, asked and answered.
THE COURT: Overruled.

BY MR. KORCHIN:
Q. And not to interview Mr. Portela?
A. That's correct.
Q. But Special Agent Perez had the Miranda waiver form, we know that?
MR. VAZQUEZ: Objection, asked and answered.
THE COURT: Sustained.
BY MR. KORCHIN:
Q. It's important in many ways when a law enforcement officer takes a statement from somebody that the statement be preserved accurately, correct?
A. That's correct.
Q. As a matter of fact,, during this trial you have demonstrated an ability to videotape and audiotape human contact?
A. Yes.
Q. And to preserve an accurate description of an occurrence, correct?
A. Correct.
Q. As to the statements you have testified to as to Mr. Portela, we know there is absolutely no videotape of your meeting with him on November 27, 2013?
A. That's correct.
Q. And there is no audiotape?
A. That's correct.

Q. There is nothing written by Mr. Portela about the statements he made on November 27, 2013, correct?

A. Correct.

Q. I know you did not have paper. It appears Special Agent Perez may have had paper. Setting that aside, we have the Miranda waiver form in evidence.

Now, I think you testified that Mr. Portela initialed parts of the form?

A. Yes.

Q. And signed the form?

A. Correct.

Q. And you witnessed that on the front of the form?

A. That's correct.

Q. Since we're not absolutely certain whether Special Agent Perez had paper or what type, we do know that on the other side of this form there's blank piece of paper?

A. Correct.

Q. You and Special Agent Perez could have had Mr. Portela write a statement on the reverse side of the Miranda waiver form, correct?

A. Yes.

Q. Or in the alternative you or Special Agent Perez could have written a statement on the reverse side of the form and asked Mr. Portela to sign or initial it, correct?

A. We could have, yes.

Q. You testified on direct examination that when Mr. Portela was talking to you and Special Agent Perez on November 27, 2013 that he referred to the firearm of July 26th, 2013, as the Ruger, correct?
A. Correct.
Q. Detective Bernat, I am going to show you the firearm that is in evidence as the firearm seized on July 26th, 2013.
MR. KORCHIN: Permission to publish.
THE COURT: Yes.
BY MR. KORCHIN:
Q. Would you please take a look at that firearm from July 26th, 2013.
A. Yes.
Q. Is it a Ruger?
A. No; it is a Kel-Tec.
Q. It is important when you take a statement from a suspect that the -- that it's accurate, is it not?
Isn't it important when you take a statement from a suspect to make sure it is accurately recorded?
A. Yes.
MR. KORCHIN: No further questions, Your Honor.
THE COURT: All right. Ladies and gentlemen, we're going to break for lunch. Again, don't talk to each other about the case or anyone else, or let anyone talk to you about the case.

Let's break until quarter of two. That should give you time to get your lunch and go outside if you wish.

All right. See you back here at quarter of two.

JURY EXCUSED

THE COURT: Please be seated everyone. If you would Mr. Vazquez, the next packet of transcripts if you could write out on a legal pad the exhibit and tab number.

I will have it typed up and put it on the ELMO so when we give them the packet they can look and make any adjustment they have, and in it goes.

All right. Mr. Horowitz, you had a motion.

MR. HOROWITZ: If we may take up the motion after lunch -- because it pertains to maybe four out of five of the defendants -- to give us the opportunity to discuss it over lunch.

It won't take over a minute or two.

THE COURT: Then be back at 1:40 rather than 1:45.

MR. HOROWITZ: That will be perfect.

THE COURT: I do have one brief matter sidebar, but the defendants can go back to have their lunch. If the attorneys will come sidebar, please.

I just wanted to put on the record that Mr. Rubio made a very lovely gesture to Ms. Greer for bringing out coffee on Friday; he sent in some fruit. I know it was well intentioned, but Ms. Greer cannot accept it, my chambers cannot accept it.

**I don't think I could allow the jurors to have it either. But there will be a division of the Clerk's Office that will have a very happy afternoon.**

**So, thank you, Mr. Rubio. I just wanted to put that on the record.**

**All right, everybody, I will see you back at 1:40 for those motions.**

**LUNCHEON RECESS TAKEN**

- - -

**C E R T I F I C A T E**

**I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.**

**/S/PATRICIA SANDERS**

**___________ _______________________**

**DATE FILED PATRICIA SANDERS, RPR**

DAILY COPY


## $

**$10** [2] - 42:19, 47:13
**$40** [1] - 44:20
**$50** [3] - 37:15, 37:19, 39:7
**$60** [9] - 44:20, 46:16, 47:13, 47:25, 48:2, 50:21, 51:4

## /

**/S/PATRICIA** [1] - 67:7

## 1

**1** [1] - 1:6
**104th** [1] - 2:4
**108** [1] - 45:23
**11** [1] - 8:17
**11-3** [1] - 2:7
**1107** [1] - 2:4
**111** [1] - 45:9
**1116** [1] - 11:14
**112** [3] - 8:17, 45:9, 45:11
**113** [2] - 9:11, 24:16
**114** [2] - 11:25, 12:9
**116** [4] - 11:4, 11:17, 46:25, 47:11
**117** [2] - 6:17, 7:3
**118** [7] - 6:18, 7:2, 9:16, 15:21, 16:2, 16:15, 17:3
**119** [4] - 6:13, 7:5, 12:25, 48:6
**11th** [12] - 13:15, 19:21, 20:4, 20:5, 21:5, 26:22, 34:7, 37:15, 39:8, 49:6, 55:10, 55:13
**120** [4] - 14:18, 15:5, 47:17, 47:21
**121** [3] - 6:17, 7:3, 17:11
**122** [2] - 6:13, 7:5
**123** [3] - 6:17, 7:3, 18:2
**124** [5] - 6:18, 7:2, 19:23, 20:6, 20:10
**125** [3] - 6:13, 7:6, 17:21
**126** [1] - 18:11
**127** [3] - 6:17, 7:3, 20:21
**128** [2] - 6:18, 7:2
**129** [3] - 6:13, 7:6, 20:17
**12:28** [1] - 10:16
**13** [5] - 10:6, 44:24, 45:16, 47:1, 48:20
**130** [4] - 22:2, 22:18, 23:13, 23:18
**131** [2] - 6:17, 7:3
**132** [3] - 6:19, 7:2, 26:18
**133** [2] - 6:14, 7:6
**134** [4] - 25:17, 26:1, 26:2, 27:6
**135** [3] - 6:17, 7:3, 28:17
**136** [2] - 6:19, 7:2
**137** [6] - 6:14, 7:6, 27:23, 27:24, 28:6, 28:18
**13th** [10] - 8:7, 11:9, 12:6, 12:13, 44:4, 45:3, 46:20, 47:25, 48:2, 49:10
**14-20017-CR-KMW** [1] - 1:2
**150** [1] - 1:21
**16th** [4] - 20:13, 23:15, 48:1, 55:20
**17** [3] - 12:15, 47:18, 48:24
**17th** [8] - 4:10, 14:25, 15:2, 44:4, 46:20, 48:3, 48:5, 49:10
**1910** [1] - 1:24
**1:40** [2] - 65:17, 66:6
**1:45** [1] - 65:17
**1st** [2] - 56:2, 56:5

## 2

**2-23-2015** [1] - 1:3
**200** [4] - 32:19, 33:10, 33:13, 33:19
**2000** [1] - 1:19
**201** [3] - 6:17, 7:4, 31:5
**2012** [1] - 4:10
**2013** [36] - 8:8, 12:15, 35:4, 35:24, 40:12, 40:15, 41:19, 41:23, 44:3, 44:24, 45:16, 47:1, 47:18, 47:25, 48:3, 48:6, 48:20, 48:24, 49:4, 49:14, 50:15, 50:19, 51:2, 58:21, 59:3, 59:7, 59:16, 59:24, 60:2, 60:9, 62:22, 63:2, 64:2, 64:3, 64:7, 64:12
**2014** [12] - 20:13, 23:15, 24:13, 28:11, 30:19, 34:8, 40:12, 49:4, 49:15, 52:17, 52:20, 55:20
**202** [3] - 6:19, 7:2, 33:25
**203** [5] - 6:14, 7:6, 27:24, 28:7
**23** [1] - 24:13
**237** [6] - 35:17, 35:23, 36:3, 36:5, 36:7, 36:10
**23rd** [2] - 55:23, 57:5
**24** [5] - 50:15, 50:19, 51:2, 54:1, 55:4
**25** [2] - 10:6, 28:19
**26th** [7] - 40:14, 41:19, 41:23, 58:21, 64:3, 64:7, 64:12
**27** [11] - 35:4, 35:24, 59:3, 59:7, 59:16, 59:24, 60:2, 60:9, 62:22, 63:2, 64:2
**27th** [2] - 59:13, 59:18
**28** [2] - 27:25, 28:7
**28th** [4] - 28:11, 55:25, 57:24, 58:3
**2nd** [1] - 34:8

## 3

**305.523.5528** [1] - 2:8
**3250** [1] - 2:2
**33128** [1] - 2:7
**33130** [1] - 1:22
**33132** [1] - 1:17
**33133** [1] - 2:3
**33134** [1] - 1:20
**33138** [1] - 2:5
**33156** [1] - 1:24
**338** [2] - 29:24, 30:10
**36** [2] - 54:7, 55:4
**39** [1] - 13:7

## 4

**400** [1] - 2:7
**406** [1] - 2:2
**42** [2] - 54:20, 55:4
**435** [2] - 20:5, 55:13
**4th** [6] - 1:16, 13:15, 19:21, 20:4, 21:6, 26:22

## 5

**5** [1] - 42:20
**53** [1] - 10:13
**57** [1] - 13:18
**5th** [6] - 13:15, 19:21, 20:4, 21:6, 26:22, 49:6

## 6

**614** [1] - 1:19
**6th** [4] - 21:6, 45:20, 46:8, 49:6

## 8

**8:14** [1] - 9:19
**8:47** [1] - 9:22

## 9

**9130** [1] - 1:23
**99** [1] - 1:16
**9th** [2] - 5:20, 18:15

## A

**A.F.P.D** [1] - 1:21
**A.M** [1] - 1:5
**A.U.S.A** [3] - 1:15, 1:15, 1:16
**abandoned** [3] - 34:13, 34:24, 35:2
**ability** [3] - 53:11, 53:13, 62:14
**able** [5] - 15:15, 15:24, 28:24, 30:15, 44:19
**above-entitled** [1] - 67:4
**absolutely** [2] - 62:21, 63:14
**accept** [2] - 65:25
**accord** [2] - 3:8, 23:6
**accuracy** [1] - 39:9
**accurate** [4] - 35:23, 62:17, 64:17, 67:4
**accurately** [2] - 62:11, 64:19
**acknowledging** [1] - 36:21
**actual** [1] - 42:23
**adamant** [1] - 38:18
**adjustment** [1] - 65:9
**admit** [8] - 6:12, 11:13, 15:4, 23:17, 25:25, 30:9, 33:9, 36:2
**admitted** [23] - 3:7, 7:6, 7:9, 9:12, 9:14, 11:17, 11:24, 15:7, 15:20, 19:22, 23:19, 26:2, 26:17, 27:6, 30:11, 33:14, 33:18, 33:24, 36:5, 46:24, 47:16, 54:6, 55:4
**admonition** [1] - 6:23
**advancing** [5] - 10:5, 10:9, 10:12, 10:15, 20:23
**advice** [1] - 36:12
**advise** [1] - 61:17
**advisement** [1] - 35:21
**afternoon** [7] - 3:21, 40:10, 41:3, 41:22, 50:5, 50:6, 66:3
**age** [1] - 50:11
**Agent** [13] - 36:18, 38:15, 38:24, 60:5, 60:8, 61:9, 61:15, 62:4, 63:4, 63:14, 63:18, 63:22, 64:2
**agent** [6] - 44:14, 59:6, 60:1, 60:4, 60:22
**ago** [1] - 54:13
**agree** [2] - 43:7, 47:25
**agreed** [3] - 6:25, 8:3, 27:15
**agreement** [3] - 5:4, 6:11, 60:8
**aids** [1] - 7:9
**Alfonso** [1] - 4:10
**allow** [1] - 66:1
**almost** [2] - 40:10, 41:3
**ALTAMIRANO** [1] - 1:7
**Altamirano** [37] - 17:19, 18:5, 20:2, 20:8, 20:12, 21:3, 22:9, 22:24, 24:12, 24:22, 25:12, 26:12, 26:15, 26:20, 29:10, 30:8, 31:10, 31:14, 32:13, 32:16, 34:4, 53:18, 54:4, 54:10, 54:17, 54:18, 54:25, 55:3, 55:15, 55:17, 56:6, 56:16, 56:21, 56:24, 57:7, 57:9, 58:9
**alternative** [1] - 63:22
**AMERICA** [1] - 1:3
**ammunition** [2] - 57:2, 58:24
**amount** [5] - 37:19, 46:13, 47:2, 48:4, 48:7
**announce** [1] - 9:13

DAILY COPY

**answered** [3] - 26:13, 61:24, 62:6
**ANTHONY** [1] - 1:8
**apologize** [1] - 4:5
**appear** [1] - 61:2
**APPEARANCES** [1] - 2:1
**aPPEARANCES** [1] - 1:14
**approach** [5] - 12:21, 22:11, 45:10, 47:8, 48:10
**approached** [1] - 37:17
**approximate** [1] - 34:5
**area** [6] - 21:4, 37:12, 37:15, 39:8, 40:18, 49:6
**arrangements** [1] - 60:1
**arrest** [4] - 39:13, 39:20, 39:21
**arrested** [5] - 39:3, 40:3, 41:7, 41:17, 58:22
**article** [1] - 35:10
**aside** [1] - 63:5
**assist** [1] - 38:14
**associated** [4] - 6:18, 17:9, 17:23, 20:17
**assume** [1] - 4:17
**assuming** [1] - 4:22
**ATF** [8] - 43:19, 43:21, 43:22, 44:1, 44:7, 44:8, 52:13, 60:6
**attempted** [1] - 37:17
**attention** [2] - 12:15, 35:4
**attorneys** [1] - 65:21
**audio** [9] - 6:16, 7:4, 7:5, 7:8, 10:8, 26:24, 32:9, 48:18, 53:6
**AUDIOTAPE** [2] - 8:19, 17:13
**audiotape** [2] - 62:14, 62:24
**Avenue** [11] - 2:7, 13:15, 19:21, 20:4, 20:5, 21:6, 26:22, 34:7, 37:15, 39:8, 55:13
**aware** [3] - 13:17, 52:21, 52:22

## B

**baggie** [6] - 11:23, 14:22, 15:18, 18:16, 18:23, 25:20
**based** [1] - 7:14
**become** [1] - 47:23
**began** [1] - 37:7
**begin** [1] - 9:19
**beginning** [1] - 3:13
**behind** [6] - 10:1, 28:6, 28:7, 37:10, 39:14
**Bernat** [8] - 4:8, 40:8, 40:10, 45:16, 46:11, 49:14, 50:7, 64:6
**between** [8] - 13:15, 19:21, 20:4, 24:11, 25:11, 26:22, 40:12, 49:6
**big** [1] - 37:10
**bill** [2] - 51:9, 51:12
**bills** [1] - 51:22
**binder** [8] - 20:18, 24:17, 27:14, 27:15, 61:1, 61:2, 61:6
**binders** [5] - 3:6, 8:1, 8:4, 23:7, 23:9
**birth** [1] - 4:19
**black** [2] - 16:14, 39:4
**blank** [1] - 63:16
**block** [1] - 36:22
**BMT** [1] - 38:1
**boarded** [1] - 55:14
**bottom** [1] - 16:1
**Boulevard** [2] - 1:19, 1:23
**break** [5] - 23:5, 23:8, 27:1, 64:23, 65:1
**brief** [1] - 65:19
**bring** [7] - 6:4, 8:2, 28:1, 47:5, 47:7, 60:13, 60:22
**bringing** [1] - 65:23
**brought** [1] - 56:11
**buds** [1] - 43:2
**building** [2] - 54:18, 55:14
**burden** [1] - 4:3
**buy** [4] - 9:4, 33:4, 50:18, 50:21
**buying** [3] - 43:7, 45:3, 46:13
**buys** [2] - 4:12, 43:24
**BY** [51] - 2:6, 8:6, 8:20, 9:21, 10:18, 11:2, 11:21, 13:9, 13:21, 14:1, 14:6, 14:16, 15:8, 15:13, 17:2, 17:14, 18:3, 18:7, 18:19, 19:3, 19:9, 21:1, 21:11, 21:25, 23:12, 23:22, 24:20, 25:15, 26:5, 26:16, 28:10, 28:23, 30:14, 31:8, 31:12, 33:17, 34:20, 36:6, 38:5, 40:7, 45:13, 46:7, 47:10, 48:12, 50:4, 52:11, 53:25, 58:20, 62:1, 62:8, 64:10

## C

**calendar** [1] - 5:23
**calibers** [1] - 56:18
**camera** [1] - 58:16
**cannot** [2] - 65:25
**captured** [1] - 34:6
**care** [1] - 4:2
**case** [6] - 1:2, 27:2, 31:20, 46:12, 64:24, 64:25
**cash** [1] - 44:13
**Castro** [4] - 13:19, 16:6, 16:8, 16:13
**caught** [2] - 39:5, 39:6
**CD'S** [1] - 3:9
**Center** [1] - 1:24
**certain** [3] - 43:11, 44:12, 63:14
**certify** [1] - 67:3
**Chacon** [15] - 10:2, 12:8, 12:14, 13:13, 14:9, 15:23, 16:19, 16:20, 16:25, 17:7, 40:21, 41:6, 41:20, 43:5, 49:15
**CHACON** [1] - 1:6
**chambers** [1] - 65:25
**chance** [2] - 59:3, 59:5
**checked** [7] - 9:8, 19:18, 21:21, 22:16, 25:5, 29:13, 29:21
**chemist** [1] - 4:14
**child** [1] - 4:2
**Christopher** [21] - 17:18, 18:5, 20:2, 20:8, 20:12, 21:3, 22:9, 22:24, 24:12, 24:22, 25:12, 26:12, 26:15, 26:20, 29:10, 30:8, 31:10, 31:14, 32:13, 32:16, 34:4
**CHRISTOPHER** [1] - 1:7
**chrome** [1] - 39:6
**circle** [7] - 15:24, 16:8, 16:12, 16:20, 16:22, 16:25, 17:1
**City** [8] - 5:5, 33:1, 34:12, 43:17, 43:22, 44:1, 44:7, 52:3
**clarify** [1] - 22:23
**class** [1] - 4:2
**classes** [1] - 4:1
**clear** [7] - 15:18, 16:1, 18:15, 25:20, 43:13, 46:4, 46:5
**cleared** [5] - 9:8, 19:18, 21:17, 25:1, 29:4
**Clerk's** [1] - 66:2
**clicking** [1] - 16:1
**clients** [1] - 5:6
**close** [1] - 30:25
**clothing** [1] - 35:11
**cocaine** [29] - 11:23, 14:23, 15:19, 18:16, 18:23, 18:24, 19:2, 19:11, 20:9, 22:6, 24:1, 25:21, 26:7, 30:3, 30:18, 32:23, 33:23, 46:13, 46:16, 46:21, 47:2, 47:11, 47:22, 47:23
**coffee** [2] - 27:2, 65:23
**coincides** [3] - 8:17, 9:15, 10:9
**collate** [1] - 27:17
**collected** [2] - 38:7, 38:20
**collection** [2] - 35:1, 35:7
**coming** [6] - 3:21, 54:4, 54:10, 54:18, 54:25, 55:3
**communications** [1] - 32:9
**competence** [2] - 18:25, 22:10
**complement** [1] - 6:1
**condition** [5] - 11:10, 15:1, 23:14, 25:22, 33:6
**conduct** [1] - 49:9
**conducted** [2] - 15:10, 49:3
**conference** [2] - 5:12, 5:16
**confidential** [46] - 4:16, 8:12, 9:1, 9:3, 9:4, 9:7, 9:8, 10:23, 11:8, 11:11, 12:4, 12:14, 14:9, 14:12, 17:18, 19:13, 19:15, 19:17, 21:15, 22:16, 24:4, 24:8, 24:11, 24:25, 25:8, 25:12, 26:9, 26:24, 29:3, 29:4, 29:9, 29:11, 29:15, 29:18, 30:6, 31:1, 31:13, 31:15, 32:16, 43:24, 45:2, 46:9, 50:7, 51:23, 52:25, 53:2
**connection** [1] - 50:15
**considered** [1] - 43:8
**contact** [2] - 49:1, 62:15
**containing** [6] - 11:23, 14:22, 15:18, 18:16, 18:23, 25:20
**CONTD** [1] - 2:1
**content** [3] - 7:10, 7:13, 7:19
**continue** [2] - 6:9, 28:8
**contraband** [8] - 9:9, 21:17, 21:21, 25:1, 25:6, 29:4, 29:13, 29:21
**controlled** [3] - 8:11, 9:2, 12:18
**conversation** [4] - 7:10, 38:19, 40:1, 56:11
**copied** [1] - 51:22
**copy** [1] - 51:10
**Coral** [1] - 1:20
**correct** [88] - 4:21, 6:20, 6:22, 40:12, 41:8, 41:17, 41:18, 41:21, 42:17, 43:2, 43:9, 43:18, 44:10, 44:20, 44:22, 44:25, 45:17, 45:21, 46:22, 48:18, 48:22, 48:23, 49:1, 49:2, 49:4, 49:18, 49:22, 49:23, 50:16, 51:17, 51:18, 51:19, 51:23, 53:1, 53:4, 53:6, 53:7, 53:9, 53:10, 55:9, 55:10, 55:12, 55:22, 55:24, 56:1, 56:6, 56:12, 56:13, 56:15, 56:17, 56:20, 56:23, 57:1, 57:4, 57:11, 57:22, 57:23, 58:4, 58:5, 58:7, 58:8, 58:9, 58:10, 58:15, 58:17, 58:22, 59:7, 60:11, 61:12, 61:14, 61:19,

DAILY COPY

61:20, 62:3, 62:11, 62:12, 62:18, 62:19, 62:23, 62:25, 63:2, 63:3, 63:11, 63:13, 63:17, 63:20, 63:24, 64:4, 64:5
**correctly** [1] - 7:13
**correlates** [1] - 28:17
**corresponds** [2] - 27:24
**cost** [1] - 42:19
**counsel** [1] - 61:18
**count** [1] - 47:12
**County** [3] - 38:8, 59:25, 60:9
**couple** [1] - 57:5
**course** [2] - 30:4, 61:10
**COURT** [88] - 1:1, 1:12, 3:1, 3:15, 3:20, 4:15, 4:20, 4:22, 5:6, 5:18, 5:25, 6:2, 6:3, 6:5, 6:6, 6:15, 6:20, 6:24, 8:2, 8:18, 9:12, 9:17, 10:22, 11:1, 11:15, 11:17, 11:20, 12:22, 13:1, 13:3, 13:5, 14:15, 15:7, 15:14, 17:12, 17:22, 17:24, 18:18, 19:1, 19:8, 20:19, 21:10, 21:24, 22:12, 22:22, 23:2, 23:19, 23:21, 24:18, 25:14, 26:2, 26:4, 26:14, 26:25, 27:4, 27:6, 27:13, 27:20, 28:1, 28:3, 28:4, 28:15, 28:21, 30:11, 30:13, 31:6, 33:13, 33:16, 34:19, 36:5, 38:4, 40:6, 45:12, 46:3, 47:9, 48:11, 49:25, 50:2, 52:10, 53:23, 58:19, 61:25, 62:7, 64:9, 64:22, 65:5, 65:17, 65:19
**Court** [2] - 2:6, 3:8
**Court's** [2] - 5:13, 6:22
**courtroom** [1] - 13:10
**crack** [12] - 19:6, 19:11, 20:9, 24:1, 30:3, 30:18, 32:23, 46:13, 46:16, 46:21, 47:2, 47:11
**credit** [1] - 42:16
**cross** [2] - 22:25, 40:6
**crumble** [1] - 47:24
**currency** [4] - 14:8, 18:9, 25:11, 42:6
**custody** [1] - 38:23

## D

**Dade** [3] - 38:8, 59:25, 60:9
**Dadeland** [1] - 1:23
**date** [16] - 4:18, 8:11, 12:16, 12:18, 26:9, 35:5, 35:14, 36:25, 39:18, 39:19, 42:11, 42:17, 42:21, 58:22, 58:25, 59:17
**DATE** [1] - 67:9
**dated** [1] - 36:24
**dates** [6] - 45:4, 45:25, 46:20, 49:9, 49:10, 49:11
**Datran** [1] - 1:24
**DAVID** [1] - 2:1
**DAY** [1] - 1:4
**daylight** [3] - 40:24, 41:4, 42:1
**deal** [2] - 5:15, 42:24
**deals** [1] - 46:25
**dealt** [2] - 4:16, 5:8
**December** [26] - 8:7, 11:9, 12:6, 12:13, 12:15, 14:25, 15:2, 44:4, 44:24, 45:3, 45:16, 45:20, 46:8, 46:20, 47:1, 47:18, 47:25, 48:1, 48:2, 48:3, 48:5, 48:20, 48:24, 49:10
**decide** [1] - 7:14
**decided** [1] - 59:14
**decision** [1] - 59:13
**Defendants** [1] - 1:8
**defendants** [2] - 65:14, 65:20
**DEFENDANTS** [1] - 1:18
**defense** [7] - 3:16, 4:17, 4:22, 6:21, 23:9, 27:8, 27:13
**DeLeon** [1] - 1:19
**demonstrated** [1] - 62:14
**Department** [2] - 33:1, 52:4
**depicted** [1] - 29:14
**depiction** [1] - 35:23
**depicts** [1] - 47:21
**deployed** [1] - 9:9
**described** [3] - 31:14, 39:10, 40:2
**description** [1] - 62:17
**desiring** [1] - 57:12
**detained** [6] - 40:21, 40:24, 41:6, 41:9, 41:12, 41:15
**detainment** [1] - 41:11
**detective** [25] - 3:12, 4:8, 6:8, 8:7, 8:21, 10:19, 13:22, 17:15, 18:4, 18:8, 21:15, 23:13, 24:13, 28:24, 31:13, 32:2, 32:24, 34:9, 38:6, 38:25, 40:1, 41:12, 43:4, 50:5, 58:21
**Detective** [9] - 4:7, 4:11, 40:8, 40:10, 45:16, 46:11, 49:14, 50:7, 64:6
**detectives** [1] - 40:17
**determine** [2] - 7:21, 47:2
**devices** [1] - 38:13
**Diaz** [3] - 16:6, 16:10, 16:13
**dictates** [1] - 5:16
**different** [1] - 57:13
**difficult** [1] - 54:15
**direct** [2] - 48:25, 64:1
**directing** [1] - 35:4
**directly** [6] - 10:24, 14:12, 19:13, 21:20, 25:4, 33:4
**disagrees** [1] - 22:22
**disburse** [3] - 17:21, 20:16, 24:16
**discuss** [3] - 3:3, 5:22, 65:14
**discussed** [1] - 48:16
**discusses** [1] - 48:14
**disk** [1] - 6:18
**disks** [1] - 6:16
**DISPOTO** [1] - 1:16
**disregard** [1] - 7:22
**distance** [1] - 55:7
**distinguish** [1] - 54:14
**DISTRICT** [3] - 1:1, 1:1, 1:12
**division** [1] - 66:2
**DIVISION** [1] - 1:2
**Dixon** [6] - 10:3, 12:14, 13:24, 16:19, 16:22, 17:1
**DIXON** [1] - 1:7
**DNA** [8] - 35:7, 38:15, 38:20, 38:23, 59:10, 60:10, 61:13, 61:21
**document** [2] - 34:21, 37:3
**documentation** [1] - 38:12
**dollar** [1] - 51:9
**dollars** [1] - 37:18
**done** [1] - 44:17
**Donet** [1] - 27:20
**DONET** [3] - 2:1, 3:18, 27:17
**Doral** [1] - 4:1
**down** [8] - 10:1, 23:9, 41:9, 44:19, 52:25, 53:2, 55:18
**drawn** [1] - 16:12
**drug** [10] - 24:8, 24:11, 24:14, 27:12, 28:12, 29:11, 30:20, 30:25, 31:2, 34:9
**drugs** [10] - 43:7, 49:20, 50:18, 50:21, 50:25, 51:4, 51:16, 52:1, 57:13, 57:17
**during** [4] - 25:7, 49:14, 49:18, 62:13

## E

**early** [1] - 41:3
**east** [2] - 13:16, 19:21
**efficiency** [1] - 8:3
**efficiently** [1] - 8:5
**eight** [2] - 20:17, 28:19
**eight-minute** [1] - 28:19
**either** [3] - 44:1, 48:18, 66:2
**El** [1] - 5:3
**ELMO** [2] - 53:22, 65:8
**encounter** [3] - 31:13, 35:25, 59:3
**encountered** [1] - 5:9
**enforcement** [4] - 11:11, 59:12, 59:22, 62:9
**engage** [1] - 25:7
**engaged** [1] - 38:19
**engaging** [1] - 24:8
**entered** [1] - 6:25
**entire** [1] - 31:19
**entirely** [1] - 7:14
**entitled** [1] - 67:4
**equipment** [2] - 53:15, 53:16
**equivalent** [1] - 47:13
**ESQ** [4] - 1:18, 1:23, 2:1, 2:4
**essence** [1] - 46:15
**essentially** [1] - 34:13
**evaluation** [1] - 7:15
**evening** [1] - 41:3
**event** [4] - 21:4, 21:12, 39:23, 45:19
**events** [10] - 24:24, 40:14, 44:3, 44:24, 45:2, 46:25, 48:20, 48:24, 52:16, 58:21
**eventually** [1] - 32:5
**evidence** [31] - 3:10, 6:25, 7:1, 7:6, 7:19, 11:14, 11:24, 15:5, 15:20, 19:22, 23:18, 26:1, 26:17, 27:7, 27:12, 30:10, 33:10, 33:18, 33:24, 36:3, 43:16, 45:23, 46:18, 46:23, 46:24, 47:16, 54:6, 63:6, 64:7
**exact** [2] - 39:19, 59:17
**exactly** [1] - 28:24
**examination** [5] - 6:9, 7:17, 28:9, 40:6, 64:1
**example** [1] - 42:19
**exchange** [7] - 14:8, 18:9, 25:11, 42:23, 42:24, 43:1, 43:3
**exchanged** [1] - 42:12
**EXCUSED** [2] - 27:5, 65:4
**execute** [3] - 36:10, 59:8, 59:14
**executed** [2] - 36:22, 37:1
**execution** [1] - 38:15
**exhibit** [2] - 3:6, 65:7
**Exhibit** [62] - 6:12, 7:3, 8:17, 9:11, 9:16, 11:4, 11:14, 11:17, 11:25, 12:9, 12:25, 14:18, 15:5, 15:21, 16:2, 16:15, 17:3, 17:9, 17:11, 17:21, 18:2, 18:11, 19:23, 20:6, 20:10, 20:17, 20:21, 22:2, 22:18, 23:13, 23:18, 25:17,

DAILY COPY

26:1, 26:2, 26:18, 28:6, 28:7, 28:17, 29:24, 30:10, 31:5, 32:19, 33:10, 33:13, 33:19, 33:25, 35:17, 35:23, 36:3, 36:5, 36:7, 36:10, 45:11, 45:23, 46:25, 47:11, 47:17, 48:6, 54:1, 54:7, 54:20
**Exhibits** [2] - 6:13, 7:1
**expectation** [1] - 42:21
**extent** [1] - 7:23
**eye** [1] - 48:25
**eyeball** [11] - 22:15, 30:23, 30:24, 30:25, 31:17, 48:21, 52:23, 53:5, 55:21, 56:2, 58:3
**eyes** [2] - 42:7, 48:22

## F

**fact** [11] - 7:14, 9:14, 40:20, 42:18, 43:15, 49:14, 52:3, 55:6, 58:11, 62:13
**facts** [1] - 46:2
**fair** [2] - 35:23, 56:2
**familiar** [2] - 54:23, 54:24
**family** [3] - 37:25, 38:1, 38:2
**far** [1] - 38:12
**Fifth** [2] - 21:5, 55:10
**fifties** [1] - 50:10
**file** [1] - 51:13
**FILED** [1] - 67:9
**fill** [1] - 23:9
**finders** [1] - 7:14
**fine** [1] - 22:22
**firearm** [14] - 37:8, 37:13, 37:14, 37:18, 39:4, 39:7, 39:12, 39:16, 41:19, 64:3, 64:6, 64:7, 64:11
**firearms** [1] - 37:7
**first** [11] - 25:22, 28:20, 30:19, 31:1, 33:7, 36:12, 37:8, 45:8, 50:14, 50:17, 54:16
**five** [4] - 13:2, 20:24, 49:17, 65:13
**FL** [7] - 1:17, 1:20, 1:22, 1:24, 2:3, 2:5, 2:7
**Flagler** [2] - 1:21, 37:16
**FLORES** [1] - 1:8
**FLORIDA** [1] - 1:1
**follow** [4] - 5:13, 8:4, 9:13, 39:9
**followed** [1] - 44:12
**following** [1] - 6:25
**FOR** [23] - 1:15, 1:18, 8:19, 9:20, 10:4, 10:7, 10:11, 10:14, 10:17, 13:8, 13:20, 13:25, 14:5, 17:13, 17:25, 18:6, 20:22, 20:25, 24:19, 24:23, 28:22, 31:7, 31:11
**foregoing** [1] - 67:3
**form** [13] - 35:22, 36:24, 61:8, 61:15, 61:17, 62:4, 63:6, 63:8, 63:10, 63:12, 63:16, 63:20, 63:23
**Fort** [1] - 2:3
**foundation** [1] - 33:11
**four** [5] - 3:24, 10:9, 10:10, 10:13, 65:13
**fourteen** [1] - 20:24
**fourth** [1] - 17:3
**FRANK** [1] - 2:4
**Friday** [5] - 3:21, 4:15, 40:10, 42:5, 65:24
**frons** [1] - 58:12
**front** [5] - 10:2, 20:4, 55:12, 55:13, 63:12
**fronting** [5] - 42:10, 42:11, 42:15, 42:20, 42:22
**fruit** [1] - 65:24
**full** [1] - 5:25
**fully** [1] - 5:22
**functions** [2] - 53:15, 53:16
**funds** [4] - 43:17, 43:19, 44:7, 44:8

## G

**Gables** [1] - 1:20
**Gabriel** [1] - 4:10
**galloping** [1] - 5:18
**gentleman** [3] - 10:1, 50:8
**gentlemen** [9] - 3:15, 6:7, 6:20, 6:24, 7:7, 8:2, 26:25, 28:5, 64:22
**gesture** [1] - 65:23
**girlfriend** [1] - 39:25
**given** [11] - 14:11, 28:5, 28:6, 32:24, 43:7, 44:6, 44:9, 44:16, 51:4, 51:6, 51:15
**glasses** [1] - 16:7
**GONZALEZ** [18] - 1:18, 3:17, 4:5, 4:25, 10:21, 11:16, 15:6, 36:4, 40:7, 45:10, 45:13, 46:7, 47:8, 47:10, 48:10, 48:12, 49:24, 50:1
**Gonzalez** [1] - 40:6
**Government** [7] - 4:16, 6:11, 23:8, 37:21, 43:8, 43:25, 44:9
**Government's** [62] - 6:12, 6:13, 7:1, 7:3, 8:16, 8:17, 9:10, 9:16, 11:4, 11:14, 11:17, 11:25, 12:9, 12:24, 14:18, 15:5, 15:21, 16:2, 16:15, 17:10, 17:21, 18:2, 18:11, 19:23, 20:6, 20:10, 20:17, 20:21, 22:2, 22:18, 23:13, 23:18, 25:17, 26:1, 26:2, 26:18, 28:17, 28:18, 29:24, 30:10, 31:4, 32:19, 33:10, 33:13, 33:19, 33:25, 35:17, 35:23, 36:3, 36:5, 36:7, 36:10, 45:11, 45:23, 46:25, 47:11, 47:17, 48:6, 54:1, 54:7, 54:20, 55:4
**great** [1] - 3:25
**Greer** [3] - 53:23, 65:23, 65:25
**group** [1] - 37:9
**guess** [4] - 5:6, 41:22, 42:16, 46:15
**gun** [12] - 37:24, 39:6, 39:9, 56:6, 56:9, 56:16, 56:21, 56:24, 57:12, 57:19, 57:22
**guns** [2] - 39:1, 49:22
**guy** [1] - 13:19
**Guzman** [9] - 50:18, 50:22, 50:24, 51:4, 51:15, 51:25, 52:4, 52:6, 52:13
**Guzman's** [1] - 51:21

## H

**half** [1] - 15:25
**hand** [9] - 20:8, 22:21, 31:1, 36:12, 41:23, 42:5
**hand-to-hand** [3] - 22:21, 41:23, 42:5
**handed** [6] - 14:13, 19:14, 19:17, 32:1, 51:20
**handled** [1] - 31:19
**handler** [2] - 50:12, 50:13
**happy** [1] - 66:3
**hard** [2] - 19:5, 19:11
**Havana** [2] - 21:5, 40:11
**head** [1] - 34:16
**hear** [3] - 24:7, 29:15, 58:6
**hearsay** [1] - 52:8
**held** [1] - 37:23
**HELD** [1] - 1:11
**help** [3] - 47:19, 48:6, 48:13
**helpful** [1] - 47:4
**helps** [1] - 45:11
**hereby** [1] - 67:3
**HERMAN** [1] - 2:4
**himself** [3] - 36:16, 46:14, 55:16
**Honor** [17] - 3:5, 3:10, 3:17, 3:18, 3:19, 4:5, 4:24, 5:24, 6:10, 7:25, 11:16, 22:13, 23:1, 23:11, 27:23, 50:3, 64:21
**HONORABLE** [1] - 1:12
**hoodie** [1] - 10:3
**hope** [1] - 3:1
**Horowitz** [2] - 50:2, 65:11
**HOROWITZ** [23] - 1:23, 4:24, 5:2, 6:22, 18:25, 19:7, 21:8, 22:10, 22:13, 23:1, 26:13, 27:11, 33:11, 38:3, 50:3, 50:4, 52:11, 53:22, 53:24, 53:25, 58:18, 65:12, 65:18
**HOSSEINI** [1] - 1:15
**hour** [1] - 54:13
**house** [1] - 54:4
**houses** [1] - 55:12
**human** [1] - 62:14
**hundred** [1] - 37:18

## I

**ID** [1] - 60:15
**idea** [1] - 27:20
**identification** [9] - 6:17, 11:3, 14:17, 18:10, 22:1, 25:16, 29:23, 32:18, 35:16
**identified** [1] - 12:24
**identify** [1] - 35:10
**identity** [2] - 7:10, 7:13
**IGNACIO** [1] - 1:15
**ILHAM** [1] - 1:15
**image** [7] - 12:4, 16:25, 17:1, 20:3, 20:6, 20:10, 26:23
**immediately** [2] - 15:9, 29:20
**important** [3] - 62:9, 64:16, 64:18
**impound** [1] - 43:5
**IN** [1] - 6:2
**inaudible** [2] - 17:9, 22:14
**incident** [3] - 4:10, 14:10, 39:23
**incidents** [1] - 39:1
**incorrect** [1] - 7:22
**independent** [1] - 54:12
**indicates** [3] - 16:9, 16:21, 16:23
**individual** [3] - 14:2, 35:8, 42:15
**individuals** [3] - 13:17, 37:10, 37:12
**informant** [84] - 4:17, 8:12, 9:1, 9:3, 9:4, 9:7, 9:8, 10:23, 11:8, 11:11, 12:5, 12:14, 14:9, 14:12, 17:18, 19:13, 19:15, 19:17, 21:15, 22:16, 22:17, 24:4, 24:8, 24:11, 24:25, 25:8, 25:12, 26:10, 26:24, 29:3, 29:4, 29:9, 29:12, 29:16, 29:18, 30:6, 31:2, 31:15, 31:16, 31:18, 31:22, 31:25, 32:1, 32:16, 37:21, 43:11, 43:12, 43:16, 43:24, 43:25, 44:6, 44:9, 44:16, 44:20, 45:2, 45:3, 45:17, 45:21, 46:9, 46:11, 50:7, 51:4, 51:5, 51:23, 52:1, 52:25, 53:3, 53:11, 56:8, 56:11, 56:19, 56:22, 56:25, 57:3, 57:6, 57:10, 57:12, 57:15,

DAILY COPY

57:17, 57:19, 58:11, 58:13, 58:14
**informant's** [2] - 31:13, 56:5
**information** [1] - 5:1
**initial** [2] - 36:15, 63:24
**initialed** [3] - 36:14, 36:20, 63:7
**inserted** [1] - 28:17
**inside** [1] - 61:2
**instructed** [1] - 7:12
**instruction** [1] - 6:23
**intention** [1] - 38:13
**intentioned** [1] - 65:24
**interact** [2] - 32:12, 32:15
**interacted** [1] - 32:14
**interacting** [1] - 29:15
**interaction** [1] - 29:14
**interested** [1] - 46:13
**interview** [2] - 61:23, 62:2
**investigation** [10] - 12:19, 14:11, 20:14, 22:8, 24:14, 28:12, 30:5, 34:12, 44:7, 50:15
**involved** [8] - 26:11, 28:24, 35:24, 39:12, 46:1, 46:8, 58:24, 59:1
**involving** [3] - 9:2, 28:12, 34:9
**issue** [2] - 4:2, 5:14
**issued** [2] - 59:14, 59:16
**issues** [1] - 5:15
**item** [1] - 37:10
**items** [2] - 22:7, 30:4

## J

**jacket** [1] - 10:3
**jail** [2] - 37:20, 60:2
**Jail** [3] - 38:8, 59:25, 60:9
**James** [4] - 10:3, 12:14, 13:24, 16:19
**JAMES** [1] - 1:7
**January** [13] - 18:15, 20:13, 23:15, 24:13, 28:11, 52:16, 52:20, 55:20, 55:23, 55:25, 57:5, 57:24, 58:3
**JAY** [1] - 1:8
**Joel** [1] - 16:6
**JR** [2] - 2:1, 2:4
**Judge** [1] - 59:9
**JUDGE** [1] - 1:12
**July** [9] - 4:10, 39:19, 40:14, 41:19, 41:23, 58:21, 64:3, 64:7, 64:12
**juror** [2] - 3:4, 4:1
**jurors** [7] - 4:3, 6:1, 6:3, 6:4, 23:3, 27:18, 66:1
**JURY** [3] - 1:11, 27:5, 65:4
**jury** [8] - 3:3, 6:7, 20:18, 22:22, 27:18, 28:2, 28:5, 53:8

## K

**KATHLEEN** [1] - 1:12
**keep** [2] - 3:21, 43:8
**keeping** [1] - 50:24
**Kel** [1] - 64:15
**Kel-Tec** [1] - 64:15
**kept** [1] - 51:13
**kind** [1] - 39:10
**known** [1] - 30:18
**knows** [3] - 4:17, 4:22, 5:6
**KORCHIN** [7] - 1:21, 58:20, 62:1, 62:8, 64:8, 64:10, 64:21
**Korchin** [1] - 58:19

## L

**ladies** [7] - 6:7, 6:24, 7:7, 8:2, 26:25, 28:4, 64:22
**larger** [1] - 47:22
**last** [2] - 23:3, 42:5
**late** [2] - 41:3
**Lauderdale** [1] - 2:3
**law** [4] - 11:11, 59:12, 59:22, 62:9
**lawyers** [2] - 23:8, 23:9
**lead** [3] - 5:13, 41:12, 43:4
**leading** [2] - 10:21, 19:7
**least** [1] - 49:17
**leave** [1] - 31:2
**left** [8] - 8:8, 10:2, 16:1, 16:25, 22:17, 36:12, 37:12, 52:25
**legal** [1] - 65:7
**Lewis** [1] - 4:8
**line** [6] - 3:23, 4:6, 23:5, 24:17, 36:16, 36:25
**line-up** [3] - 3:23, 4:6, 23:5
**list** [1] - 3:9
**listen** [1] - 53:6
**listening** [3] - 7:18, 48:21, 48:25
**located** [1] - 34:24
**location** [4] - 9:4, 13:14, 31:23, 34:5
**locations** [1] - 21:13
**logistical** [1] - 5:15
**look** [8] - 34:21, 34:22, 47:1, 47:4, 52:19, 54:11, 64:11, 65:9
**looking** [1] - 20:8
**loose** [12] - 14:22, 15:18, 18:16, 18:23, 22:6, 24:1, 25:20, 26:7, 30:3, 30:18, 32:23, 33:23
**loud** [1] - 36:19
**lovely** [1] - 65:23
**lunch** [5] - 64:23, 65:2, 65:12, 65:15, 65:20
**LUNCHEON** [1] - 66:8

## M

**machine** [1] - 51:10
**magazine** [1] - 58:25
**man** [3] - 5:3, 37:17, 39:7
**manner** [1] - 31:19
**MANUEL** [1] - 1:18
**March** [1] - 5:20
**marijuana** [5] - 42:10, 42:11, 42:13, 43:2, 43:3
**mark** [10] - 9:19, 9:22, 10:6, 10:9, 10:13, 10:16, 13:7, 13:18, 20:24, 28:19
**MARK** [1] - 1:16
**marked** [10] - 6:16, 9:16, 11:3, 14:17, 18:10, 22:1, 25:16, 29:23, 32:18, 35:16
**Marshals** [1] - 5:11
**Mary** [1] - 2:2
**match** [1] - 51:21
**matter** [10] - 6:11, 40:20, 43:15, 46:18, 52:3, 55:6, 58:11, 62:13, 65:19, 67:5
**MAURIN** [1] - 1:6
**Maurin** [9] - 10:2, 12:8, 12:14, 13:13, 14:9, 15:23, 16:19, 17:7, 40:21
**mean** [2] - 30:24, 59:5
**meaning** [1] - 43:8
**means** [3] - 30:25, 51:7, 58:6
**meant** [1] - 5:6
**meet** [2] - 60:1, 60:8
**meeting** [3] - 59:2, 59:22, 62:22
**memory** [1] - 46:6
**mentioned** [4] - 44:3, 44:4, 44:5, 44:25
**met** [1] - 59:25
**mIAMI** [1] - 1:2
**Miami** [15] - 1:17, 1:22, 1:24, 2:5, 2:7, 2:7, 5:5, 33:1, 34:12, 40:17, 43:17, 43:22, 44:1, 44:7, 52:4
**mid** [1] - 50:10
**Miguel** [1] - 14:4
**minute** [8] - 10:6, 10:9, 10:13, 13:7, 13:18, 20:24, 28:19, 65:16
**minutes** [2] - 27:1, 27:3
**Miranda** [7] - 35:22, 35:24, 61:8, 61:15, 62:4, 63:6, 63:19
**missing** [1] - 3:4
**misstatement** [2] - 46:1, 46:3
**mistake** [1] - 27:9
**moist** [1] - 47:23
**moment** [1] - 49:24
**money** [33] - 37:19, 42:6, 42:12, 42:21, 43:1, 43:3, 43:4, 43:7, 43:8, 43:17, 43:25, 44:1, 44:6, 44:9, 44:11, 44:15, 44:19, 50:24, 51:6, 51:7, 51:9, 51:15, 51:19, 51:20, 51:21, 51:25, 52:7, 52:12, 52:15, 57:17, 57:19
**monies** [1] - 43:17
**monitor** [1] - 53:9
**monitoring** [4] - 8:15, 24:2, 24:4, 29:6
**months** [1] - 40:4
**Moore** [6] - 9:1, 44:25, 45:3, 45:17, 45:20, 46:9
**morning** [5] - 3:1, 6:6, 27:1, 40:8, 40:9
**motion** [3] - 38:3, 65:11, 65:12
**motions** [1] - 66:7
**move** [10] - 3:10, 11:13, 15:4, 20:16, 21:9, 23:17, 25:25, 30:9, 33:9, 36:2
**moves** [1] - 8:5
**moving** [1] - 28:19
**MR** [148] - 3:5, 3:17, 3:18, 3:19, 4:5, 4:7, 4:18, 4:21, 4:24, 4:25, 5:2, 5:11, 5:24, 6:10, 6:16, 6:22, 7:25, 8:6, 8:16, 8:20, 9:10, 9:15, 9:18, 9:21, 10:5, 10:8, 10:12, 10:15, 10:18, 10:21, 10:25, 11:2, 11:13, 11:16, 11:19, 11:21, 12:21, 12:23, 13:2, 13:4, 13:6, 13:9, 13:21, 14:1, 14:6, 14:14, 14:16, 15:4, 15:6, 15:8, 15:12, 15:13, 16:24, 17:2, 17:8, 17:10, 17:14, 17:20, 17:23, 18:1, 18:3, 18:7, 18:17, 18:19, 18:25, 19:3, 19:7, 19:9, 20:16, 20:20, 20:23, 21:1, 21:8, 21:11, 21:23, 21:25, 22:10, 22:13, 22:20, 23:1, 23:11, 23:12, 23:17, 23:20, 23:22, 24:16, 24:20, 25:13, 25:15, 25:25, 26:3, 26:5, 26:13, 26:16, 27:11, 27:17, 27:23, 28:10, 28:14, 28:16, 28:23, 30:9, 30:12, 30:14, 31:4, 31:8, 31:12, 33:9, 33:11, 33:15, 33:17, 34:18, 34:20, 36:2, 36:4, 36:6, 38:3, 38:5, 40:5, 40:7, 45:10, 45:13, 45:25, 46:7, 47:8, 47:10, 48:10, 48:12, 49:24, 50:1, 50:3, 50:4, 52:8, 52:11, 53:22, 53:24, 53:25, 58:18, 58:20, 61:24, 62:1, 62:6, 62:8, 64:8, 64:10, 64:21, 65:12, 65:18
**multiple** [2] - 21:13, 45:25
**mustard** [2] - 35:12

DAILY COPY


## N

**N.E** [2] - 1:16, 2:4
**Nadim** [7] - 50:18, 50:22, 50:24, 51:4, 51:15, 51:21, 51:25
**name** [7] - 4:18, 5:1, 19:4, 35:8, 36:23, 36:25, 60:4
**narcotics** [39] - 4:13, 9:5, 10:19, 11:8, 12:5, 12:19, 14:8, 14:13, 18:9, 18:15, 19:14, 19:18, 20:14, 21:20, 25:4, 25:11, 29:12, 29:20, 32:1, 32:5, 32:25, 34:12, 34:24, 35:2, 37:11, 37:13, 37:23, 41:10, 41:16, 42:6, 42:16, 42:19, 42:20, 43:9, 46:19, 47:17, 51:20
**nature** [1] - 41:10
**necessarily** [2] - 57:20, 57:21
**need** [2] - 3:3, 47:1
**negative** [6] - 9:9, 19:19, 21:22, 25:6, 29:5, 29:22
**negotiated** [1] - 37:18
**nephew** [1] - 56:9
**Net** [1] - 40:12
**nets** [1] - 40:12
**never** [4] - 41:19, 51:25, 57:21, 58:13
**new** [1] - 3:22
**next** [3] - 27:23, 36:20, 65:6
**night** [1] - 42:3
**nighttime** [3] - 42:1, 42:2, 42:4
**nine** [2] - 10:13, 24:17
**ninth** [2] - 52:16, 52:20
**nobody** [1] - 32:14
**normally** [2] - 21:7, 21:8
**North** [1] - 2:7
**north** [3] - 21:5, 21:6, 21:14
**northwest** [1] - 20:4
**notation** [1] - 36:13
**note** [1] - 27:19
**notebook** [1] - 23:4
**notes** [2] - 45:5, 45:6
**nothing** [7] - 21:17, 25:1, 50:1, 60:14, 60:18, 60:19, 63:1
**November** [13] - 35:4, 35:24, 59:3, 59:7, 59:13, 59:16, 59:18, 59:24, 60:2, 60:9, 62:22, 63:2, 64:2
**number** [1] - 65:7
**Number** [1] - 1:2
**numbers** [2] - 51:12, 51:22
**numerous** [2] - 49:3, 54:14
**NW** [7] - 13:15, 20:5, 21:5, 26:22, 34:7, 37:15, 55:13

## O

**oath** [1] - 6:8
**objection** [22] - 3:15, 6:12, 10:21, 11:15, 11:18, 15:6, 15:7, 18:25, 19:7, 21:8, 22:10, 26:13, 27:8, 27:10, 27:11, 33:11, 33:14, 36:4, 38:3, 52:8, 61:24, 62:6
**observed** [3] - 33:7, 41:23, 42:7
**occasion** [2] - 46:22, 48:25
**occasions** [3] - 49:3, 49:12, 49:15
**occur** [2] - 14:7, 19:20
**occurred** [7] - 14:10, 19:12, 21:16, 39:24, 40:3, 55:7, 55:13
**occurrence** [1] - 62:17
**occurring** [1] - 32:10
**October** [3] - 50:15, 50:19, 51:2
**OF** [3] - 1:1, 1:3, 1:11
**offer** [2] - 35:14, 57:9
**Office** [1] - 66:2
**OFFICER** [3] - 6:5, 27:4, 28:3
**officer** [3] - 59:12, 59:23, 62:9
**officers** [2] - 34:13, 52:3
**old** [2] - 5:3, 39:7
**older** [3] - 37:17, 50:8, 50:10
**once** [2] - 29:21, 36:20
**one** [20] - 3:4, 4:3, 5:8, 11:25, 21:14, 23:2, 23:8, 23:9, 40:12, 51:9, 54:14, 54:24, 55:10, 55:13, 55:15, 55:17, 56:9, 57:24, 61:8, 65:19
**opportunity** [1] - 65:14
**order** [3] - 8:2, 8:4, 44:12
**ordinarily** [1] - 4:1
**organized** [1] - 8:5
**outside** [1] - 65:2
**overruled** [5] - 10:22, 19:1, 26:14, 33:13, 61:25
**owed** [1] - 42:21
**own** [4] - 5:15, 7:17, 42:7, 48:22

## P

**package** [1] - 47:1
**packet** [2] - 65:6, 65:9
**pad** [1] - 65:7
**pads** [1] - 27:19
**page** [8] - 10:10, 10:13, 11:25, 12:9, 16:2, 16:15, 17:3, 28:20
**PAGES** [1] - 1:6
**paid** [4] - 42:11, 42:16, 42:21, 57:15
**palm** [2] - 57:25, 58:12
**paper** [9] - 60:12, 60:16, 60:17, 60:25, 61:2, 63:4, 63:5, 63:15, 63:16
**paperwork** [1] - 38:12
**pardon** [1] - 43:20
**part** [8] - 8:11, 12:18, 20:14, 24:14, 39:13, 46:19, 52:5, 52:14
**participate** [6] - 20:13, 24:13, 28:11, 30:19, 34:8, 35:7
**participating** [2] - 34:11, 35:1
**particular** [4] - 18:24, 38:17, 41:13, 44:25
**parties** [4] - 6:11, 6:25, 8:3, 29:15
**parts** [1] - 63:7
**party** [2] - 5:8, 32:12
**pass** [3] - 8:1, 12:23, 17:8
**paste** [1] - 47:24
**PATRICIA** [2] - 2:6, 67:9
**patricia_sanders@flsd.uscourts.gov** [1] - 2:8
**patted** [3] - 41:9, 52:25, 53:2
**PAUL** [1] - 1:21
**paused** [1] - 9:22
**people** [1] - 37:24
**Perez** [13] - 36:18, 38:15, 38:24, 60:5, 60:8, 61:9, 61:15, 62:4, 63:5, 63:15, 63:18, 63:22, 64:2
**perfect** [1] - 65:18
**perhaps** [4] - 23:7, 27:6, 27:17, 46:4
**period** [1] - 49:18
**permission** [25] - 8:16, 9:10, 10:25, 11:19, 12:21, 12:23, 13:4, 14:14, 15:12, 17:8, 17:10, 17:20, 18:17, 21:23, 23:20, 25:13, 26:3, 28:14, 30:12, 31:4, 33:15, 34:18, 47:8, 48:10, 64:8
**person** [8] - 4:17, 4:23, 4:25, 13:13, 24:7, 25:7, 29:12, 31:14
**personally** [1] - 4:12
**persons** [3] - 9:23, 29:8, 46:1
**pertains** [1] - 65:13
**PHILIP** [1] - 1:23
**phone** [1] - 8:11
**photo** [1] - 7:1
**photographs** [1] - 44:15
**phrase** [1] - 30:24
**picture** [8] - 12:13, 16:19, 17:7, 20:2, 20:8, 20:12, 26:20, 34:4
**piece** [1] - 63:16
**pieces** [3] - 14:22, 15:18, 47:22
**place** [2] - 37:10, 53:19
**placed** [3] - 16:25, 26:24, 43:16
**planned** [2] - 59:6, 59:8
**plastic** [3] - 15:18, 18:15, 25:20
**PLAYED** [21] - 8:19, 9:20, 10:4, 10:7, 10:11, 10:14, 10:17, 13:8, 13:20, 13:25, 14:5, 17:13, 17:25, 18:6, 20:22, 20:25, 24:19, 24:23, 28:22, 31:7, 31:11
**pocket** [1] - 51:21
**pockets** [2] - 51:17, 51:19
**point** [13] - 24:7, 25:7, 32:12, 32:15, 33:1, 40:21, 42:1, 42:2, 43:22, 43:23, 44:7, 57:2
**pointing** [1] - 58:16
**police** [3] - 31:22, 32:8, 60:15
**Police** [3] - 33:1, 34:12, 52:4
**Ponce** [1] - 1:19
**populate** [2] - 23:7, 27:15
**Portela** [35] - 35:8, 35:14, 35:25, 36:8, 36:10, 36:14, 36:16, 36:17, 36:19, 36:23, 37:3, 37:6, 37:18, 38:14, 38:16, 38:21, 38:25, 39:12, 39:22, 40:2, 58:22, 59:2, 59:4, 59:7, 59:13, 59:23, 61:11, 61:23, 62:2, 62:21, 63:1, 63:7, 63:18, 63:24, 64:1
**PORTELA** [1] - 1:6
**Portela's** [1] - 60:10
**portion** [1] - 34:11
**portions** [1] - 23:4
**possession** [1] - 37:7
**possible** [1] - 3:6
**preliminary** [1] - 6:10
**prep** [1] - 53:16
**prepared** [1] - 7:16
**present** [8] - 8:21, 31:18, 31:22, 32:3, 32:4, 32:25, 36:7, 38:20
**presented** [1] - 53:8
**preserve** [1] - 62:17
**preserved** [1] - 62:10
**pretending** [1] - 46:12
**previously** [2] - 47:23, 55:4
**price** [1] - 37:19
**primary** [1] - 7:19
**printed** [2] - 36:23, 36:25

DAILY COPY

**procedures** [2] - 43:12, 44:12
**proceed** [1] - 7:24
**PROCEEDINGS** [1] - 1:11
**proceedings** [1] - 67:4
**processed** [1] - 32:25
**produce** [2] - 56:24, 57:2
**projects** [1] - 37:9
**property** [1] - 33:4
**prosecutor** [1] - 42:9
**provided** [3] - 11:11, 36:7, 36:17
**proximity** [1] - 30:25
**publish** [19] - 8:16, 9:10, 10:25, 11:19, 13:4, 14:14, 15:12, 17:10, 18:17, 21:23, 23:20, 25:13, 26:3, 28:14, 30:12, 31:4, 33:15, 34:18, 64:8
**publishing** [3] - 9:14, 18:1, 20:21
**pull** [1] - 51:19
**purchase** [7] - 9:7, 10:19, 12:18, 19:12, 20:14, 43:9, 48:15
**purchased** [11] - 4:13, 11:8, 12:5, 18:15, 21:21, 22:15, 25:5, 29:20, 30:8, 37:14, 39:7
**purpose** [3] - 59:23, 61:17, 61:21
**purposes** [10] - 6:17, 9:18, 10:5, 10:8, 10:12, 10:15, 13:6, 20:20, 20:23, 28:16
**put** [7] - 27:10, 27:17, 37:21, 51:9, 65:8, 65:22, 66:4

## Q

**quarter** [2] - 65:1, 65:3
**questions** [3] - 42:9, 58:18, 64:21
**quick** [1] - 4:9
**quote** [1] - 37:24

## R

**raise** [1] - 5:12
**raised** [2] - 5:11, 5:14
**rather** [1] - 65:17
**Raymond** [6] - 9:1, 44:25, 45:3, 45:17, 45:20, 46:9
**reached** [1] - 23:6
**read** [3] - 36:18, 36:19, 38:19
**reason** [3] - 38:17, 51:15, 57:21
**receive** [3] - 26:8, 30:4, 30:6
**received** [3] - 8:3, 15:2, 23:14
**RECESS** [3] - 6:2, 27:22, 66:8
**recognize** [31] - 8:23, 9:22, 9:25, 11:5, 12:1, 12:10, 13:10, 13:12, 13:22, 14:2, 14:19, 15:22, 16:3, 16:16, 17:4, 17:15, 18:12, 18:24, 19:10, 19:24, 22:3, 25:17, 29:8, 29:25, 32:20, 33:20, 34:1, 35:18, 54:2, 54:8, 54:20
**recognized** [1] - 29:10
**recollection** [5] - 45:11, 45:14, 48:7, 48:13, 54:12
**record** [15] - 9:18, 10:5, 10:8, 10:12, 10:15, 13:6, 16:12, 16:24, 18:1, 20:20, 20:23, 27:10, 28:16, 65:22, 66:5
**RECORD** [21] - 8:19, 9:20, 10:4, 10:7, 10:11, 10:14, 10:17, 13:8, 13:20, 13:25, 14:5, 17:13, 17:25, 18:6, 20:22, 20:25, 24:19, 24:23, 28:22, 31:7, 31:11
**recorded** [2] - 38:9, 64:19
**recorder** [4] - 53:11, 60:20, 60:21, 60:22
**recording** [20] - 7:18, 8:21, 8:23, 9:19, 9:22, 9:23, 12:4, 12:13, 13:4, 13:7, 13:17, 13:23, 14:7, 17:15, 26:24, 29:6, 29:9, 29:14, 31:9, 38:13
**recordings** [2] - 7:8, 7:20
**recovered** [3] - 14:24, 15:9, 34:12
**redacted** [1] - 23:4
**redirect** [1] - 46:4
**refer** [2] - 34:16, 45:22
**reference** [4] - 39:1, 39:12, 39:20, 39:21
**referred** [2] - 5:2, 64:3
**referring** [1] - 39:18
**reflect** [2] - 16:12, 16:24
**reflects** [1] - 7:13
**refresh** [4] - 45:11, 45:14, 48:7, 48:13
**refreshed** [1] - 46:6
**regard** [12] - 7:9, 9:6, 14:10, 23:13, 24:25, 29:2, 31:15, 43:15, 44:24, 45:2, 48:20, 48:24
**regarding** [4] - 6:23, 21:8, 54:17, 55:2
**relates** [1] - 4:9
**relation** [2] - 7:18, 22:7
**relationship** [1] - 21:12
**relaxed** [1] - 3:1
**reliable** [1] - 7:22
**remember** [6] - 7:7, 12:16, 39:19, 49:21, 52:18, 59:22
**report** [1] - 34:17
**REPORTED** [1] - 2:6
**Reporter** [1] - 2:6
**request** [3] - 56:14, 56:19, 57:14
**reserve** [1] - 38:3
**residence** [5] - 54:8, 54:10, 54:21, 54:23, 54:25
**residences** [2] - 55:4, 55:8
**respect** [2] - 58:21, 59:2
**results** [5] - 9:9, 21:22, 25:6, 29:5, 29:22
**resuming** [1] - 4:7
**retrieve** [2] - 37:12, 52:14
**return** [1] - 52:12
**returned** [3] - 19:16, 29:18, 31:22
**revealed** [1] - 4:20
**reverse** [2] - 63:19, 63:23
**review** [5] - 32:9, 46:23, 54:19, 55:1, 55:5
**reviewed** [2] - 3:12, 34:21
**rights** [7] - 35:21, 36:12, 36:17, 36:18, 38:18, 38:19
**Rights** [1] - 35:22
**rise** [3] - 6:5, 27:4, 28:3
**rock** [7] - 19:2, 19:5, 19:11, 20:9, 47:13, 47:22, 47:23
**rocks** [15] - 11:23, 14:22, 18:16, 18:23, 22:6, 24:1, 25:20, 26:7, 30:3, 30:18, 32:23, 33:23, 46:16, 46:21, 47:12
**RODOLFO** [1] - 1:6
**Rodolfo** [4] - 35:8, 36:14, 36:16, 36:23
**Rodriguez** [1] - 14:4
**role** [2] - 8:14, 30:22
**Rosniel** [2] - 60:5, 61:9
**RP** [1] - 36:14
**RPR** [2] - 2:6, 67:9
**Rubio** [2] - 65:22, 66:4
**RUBIO** [2] - 2:4, 3:19
**Ruger** [7] - 37:8, 39:3, 39:10, 39:17, 40:3, 64:4, 64:14

## S

**safe** [1] - 31:2
**samples** [1] - 35:8
**SANDERS** [3] - 2:6, 67:7, 67:9
**saw** [13] - 14:8, 22:20, 22:24, 24:10, 25:10, 25:23, 37:9, 42:12, 42:24, 43:1, 43:3, 53:18, 54:13
**scene** [1] - 32:7
**screen** [15] - 10:2, 11:22, 14:3, 15:10, 15:15, 15:17, 15:24, 16:9, 16:21, 16:23, 18:20, 21:2, 23:23, 26:6, 30:15
**search** [2] - 59:8, 59:14
**seated** [3] - 6:6, 28:4, 65:5
**second** [10] - 5:14, 10:6, 10:13, 12:9, 13:7, 13:18, 20:6, 20:24, 28:19, 37:14
**Second** [3] - 37:15, 39:8, 39:22
**secondary** [1] - 39:6
**SECURITY** [3] - 6:5, 27:4, 28:3
**see** [48] - 4:25, 6:7, 11:7, 14:7, 15:15, 18:4, 18:8, 18:20, 18:22, 20:7, 21:2, 22:15, 22:23, 23:23, 24:21, 26:6, 26:19, 28:24, 30:15, 30:17, 31:9, 31:10, 32:5, 33:22, 36:10, 36:13, 41:9, 45:10, 46:6, 47:19, 47:22, 48:14, 48:17, 54:4, 54:10, 54:25, 55:3, 56:17, 57:24, 58:6, 58:9, 58:11, 58:12, 59:6, 59:13, 59:23, 65:3, 66:6
**seeking** [1] - 6:12
**seizable** [1] - 43:8
**seize** [2] - 49:20, 49:22
**seized** [3] - 41:19, 46:18, 64:7
**seizure** [1] - 58:24
**sell** [3] - 37:17, 56:9, 56:21
**selling** [1] - 57:7
**sending** [1] - 50:21
**sent** [2] - 51:22, 65:24
**serial** [2] - 51:12, 51:22
**serialized** [2] - 51:7, 52:7
**seriatim** [1] - 27:16
**SESSION** [1] - 1:5
**setting** [1] - 63:5
**seven** [1] - 17:23
**several** [13] - 11:23, 14:22, 15:18, 18:16, 22:6, 24:1, 25:20, 26:7, 30:3, 30:18, 32:23, 33:23, 40:3
**shake** [1] - 5:22
**shirt** [5] - 13:19, 16:6, 16:13, 16:14, 35:12
**shock** [1] - 5:19
**Shores** [1] - 2:5
**shoulder** [1] - 17:1
**show** [4] - 12:7, 48:5, 56:24, 64:6
**showing** [24] - 11:3, 11:24, 12:9, 14:17, 15:20, 17:3, 18:10, 19:22, 20:6, 20:10, 22:1, 25:16, 26:6,

DAILY COPY

26:17, 29:23, 32:18, 33:18, 33:24, 35:16, 46:24, 47:16, 54:1, 54:6, 54:20
**shown** [3] - 10:20, 11:22, 15:17
**side** [6] - 13:16, 19:21, 36:12, 63:15, 63:19, 63:23
**sidebar** [2] - 65:19, 65:21
**sign** [1] - 63:24
**signature** [1] - 36:22
**signed** [4] - 36:23, 37:3, 59:8, 63:10
**silence** [1] - 61:18
**similar** [1] - 51:9
**sit** [1] - 23:9
**sitting** [1] - 10:1
**situation** [1] - 55:21
**six** [4] - 10:9, 13:7, 13:18, 47:12
**six-minute** [1] - 10:9
**Sixth** [1] - 34:7
**sixth** [1] - 17:9
**size** [1] - 46:17
**sleeved** [1] - 35:12
**small** [1] - 46:13
**smooth** [1] - 3:6
**smoother** [1] - 3:14
**snitch** [1] - 37:25
**sold** [1] - 51:25
**someone** [5] - 27:13, 43:7, 46:12, 46:14, 61:17
**sometime** [1] - 53:3
**sounds** [1] - 51:3
**South** [1] - 1:23
**south** [1] - 34:7
**southbound** [1] - 37:16
**sOUTHERN** [1] - 1:1
**speakers** [2] - 7:11, 7:13
**speaking** [6] - 37:7, 38:17, 38:18, 38:25, 39:22, 39:24
**Special** [12] - 38:15, 38:24, 60:5, 60:8, 61:9, 61:15, 62:4, 63:4, 63:14, 63:18, 63:22, 64:2
**special** [1] - 36:18
**specific** [1] - 59:23
**specifically** [3] - 40:14, 41:4, 46:19
**specify** [1] - 39:2
**speculation** [1] - 52:9
**spot** [1] - 47:4
**stage** [1] - 13:22
**standing** [1] - 13:13
**started** [2] - 38:17, 44:2
**starting** [1] - 13:6
**stashed** [1] - 37:24
**statement** [14] - 35:21, 38:6, 38:9, 38:14, 38:16, 56:3, 61:10, 61:18, 62:10, 63:19, 63:23, 64:16, 64:18
**statements** [2] - 62:20, 63:2
**STATES** [4] - 1:1, 1:3, 1:12, 1:15
**States** [1] - 2:6
**station** [1] - 32:8
**status** [2] - 5:12, 5:16
**stay** [1] - 3:24
**Steven** [2] - 13:19, 16:6
**still** [8] - 4:2, 6:8, 12:4, 34:5, 40:24, 42:1, 42:20, 44:6
**stills** [3] - 3:9, 6:18, 7:1
**stop** [4] - 39:24, 40:2, 52:5, 52:14
**stopped** [5] - 49:15, 49:17, 49:20, 51:16, 52:4
**streamlined** [1] - 3:21
**Street** [17] - 1:16, 1:21, 2:2, 2:4, 13:15, 19:21, 20:4, 21:5, 21:6, 26:22, 34:7, 37:15, 37:16, 39:8, 39:23
**street** [5] - 19:4, 21:14, 37:22, 54:24, 55:18
**stricken** [1] - 21:10
**strike** [1] - 21:9
**subject** [2] - 6:22, 27:11
**subsequently** [1] - 51:16
**substantially** [5] - 11:10, 15:1, 23:14, 25:22, 33:6
**suggested** [1] - 3:8
**suggestion** [1] - 56:6
**Suite** [4] - 1:19, 1:24, 2:2, 2:7
**supply** [1] - 51:16
**supplying** [1] - 50:25
**surveillance** [4] - 40:18, 49:3, 49:9, 49:12
**suspect** [2] - 64:16, 64:18
**sustained** [4] - 19:8, 21:10, 52:10, 62:7
**swab** [1] - 38:23

## T

**tab** [11] - 13:1, 13:2, 17:9, 17:23, 20:17, 24:17, 27:24, 27:25, 28:7, 65:7
**TAKEN** [2] - 27:22, 66:8
**tape** [4] - 7:18, 60:20, 60:21, 60:22
**tapes** [2] - 7:4, 7:5
**team** [2] - 27:14, 39:13
**Tec** [1] - 64:15
**telephone** [1] - 8:15
**TEN** [1] - 1:4
**ten** [4] - 27:1, 27:3, 27:24, 28:7
**tender** [1] - 40:5
**term** [1] - 51:7
**terms** [2] - 5:4, 27:7
**testified** [15] - 40:10, 40:20, 42:5, 42:10, 42:12, 42:22, 43:11, 45:19, 49:11, 54:16, 55:2, 62:20, 63:7, 64:1
**testify** [1] - 22:13
**testifying** [2] - 3:13, 10:21
**testimony** [2] - 7:15, 53:19
**THE** [109] - 1:12, 1:15, 3:1, 3:15, 3:20, 4:15, 4:20, 4:22, 5:6, 5:18, 5:25, 6:3, 6:6, 6:15, 6:20, 6:24, 8:2, 8:18, 8:19, 9:12, 9:17, 9:20, 10:4, 10:7, 10:11, 10:14, 10:17, 10:22, 10:23, 11:1, 11:15, 11:17, 11:20, 12:22, 13:1, 13:3, 13:5, 13:8, 13:20, 13:25, 14:5, 14:15, 15:7, 15:14, 17:12, 17:13, 17:22, 17:24, 17:25, 18:6, 18:18, 19:1, 19:2, 19:8, 20:19, 20:22, 20:25, 21:10, 21:24, 22:12, 22:22, 23:2, 23:19, 23:21, 24:18, 24:19, 24:23, 25:14, 26:2, 26:4, 26:14, 26:15, 26:25, 27:6, 27:13, 27:20, 28:1, 28:4, 28:13, 28:15, 28:21, 28:22, 30:11, 30:13, 31:6, 31:7, 31:11, 33:13, 33:16, 34:19, 36:5, 38:4, 40:6, 45:12, 46:3, 47:9, 48:11, 49:25, 50:2, 52:10, 53:23, 58:19, 61:25, 62:7, 64:9, 64:22, 65:5, 65:17, 65:19
**themselves** [1] - 42:25
**thinking** [1] - 27:7
**third** [3] - 20:10, 29:15, 32:12
**three** [4] - 16:15, 46:16, 46:21, 55:3
**throughout** [2] - 31:19, 49:4
**tie** [1] - 35:13
**tied** [1] - 27:11
**together** [4] - 3:20, 27:18, 43:24, 60:9
**tonight** [1] - 4:2
**took** [4] - 21:20, 25:4, 38:23, 53:19
**top** [1] - 34:16
**towards** [1] - 37:16
**track** [3] - 10:8, 20:21, 44:19
**traffic** [2] - 39:24, 40:2
**transaction** [34] - 15:9, 21:16, 21:19, 22:21, 24:2, 24:5, 24:8, 24:11, 24:14, 25:3, 25:8, 26:9, 26:11, 28:12, 28:25, 29:2, 29:11, 30:20, 31:1, 31:3, 34:9, 41:23, 42:6, 45:8, 46:8, 52:20, 52:22, 52:23, 53:19, 54:16, 55:20, 56:5, 57:24, 58:3
**transactions** [6] - 21:7, 55:6, 55:7, 55:15, 55:17, 57:6
**TRANSCRIPT** [1] - 1:11
**transcript** [12] - 7:12, 7:15, 7:17, 7:21, 9:15, 10:10, 17:8, 28:18, 28:20, 45:22, 45:24, 48:16
**transcription** [1] - 67:4
**transcripts** [19] - 3:7, 3:9, 4:12, 6:13, 6:23, 7:5, 7:8, 7:9, 8:4, 12:24, 23:6, 23:10, 27:23, 28:6, 45:9, 48:4, 48:5, 52:19, 65:6
**translates** [1] - 28:20
**transpired** [1] - 45:16
**trash** [2] - 37:10, 39:14
**trees** [1] - 57:25
**trial** [4] - 5:14, 5:19, 5:21, 62:13
**TRIAL** [1] - 1:11
**trip** [1] - 61:21
**true** [2] - 56:8, 58:16
**trying** [2] - 4:8, 57:10
**turn** [8] - 4:11, 8:7, 12:15, 42:15, 47:3, 47:19, 47:24, 53:11
**turned** [1] - 43:2
**Two** [1] - 1:24
**two** [12] - 16:2, 20:21, 27:6, 28:5, 43:2, 46:16, 46:21, 47:22, 59:16, 65:1, 65:3, 65:16
**type** [3] - 18:24, 42:24, 63:15
**typed** [1] - 65:8
**types** [1] - 57:13

## U

**U.S** [2] - 25:11, 42:6
**un-redacted** [1] - 23:4
**un-reliable** [1] - 7:22
**under** [2] - 6:8, 6:13
**undercover** [8] - 4:12, 20:13, 24:14, 28:11, 30:19, 31:3, 34:8, 34:9
**understood** [2] - 36:20, 36:21
**unique** [1] - 51:12
**unit** [1] - 33:5
**UNITED** [3] - 1:1, 1:3, 1:15
**United** [1] - 2:6
**uNITED** [1] - 1:12
**unknown** [1] - 10:1
**unquote** [1] - 37:24
**up** [15] - 3:23, 4:6, 13:13, 23:5, 27:11,

34:22, 39:9, 46:4, 46:5, 47:24, 55:14, 56:11, 58:16, 65:8, 65:12
**upcoming** [1] - 5:16

## V

**value** [1] - 43:3
**VAZQUEZ** [101] - 1:15, 3:5, 4:7, 4:18, 4:21, 5:11, 5:24, 6:10, 6:16, 7:25, 8:6, 8:16, 8:20, 9:10, 9:15, 9:18, 9:21, 10:5, 10:8, 10:12, 10:15, 10:18, 10:25, 11:2, 11:13, 11:19, 11:21, 12:21, 12:23, 13:2, 13:4, 13:6, 13:9, 13:21, 14:1, 14:6, 14:14, 14:16, 15:4, 15:8, 15:12, 15:13, 16:24, 17:2, 17:8, 17:10, 17:14, 17:20, 17:23, 18:1, 18:3, 18:7, 18:17, 18:19, 19:3, 19:9, 20:16, 20:20, 20:23, 21:1, 21:11, 21:23, 21:25, 22:20, 23:11, 23:12, 23:17, 23:20, 23:22, 24:16, 24:20, 25:13, 25:15, 25:25, 26:3, 26:5, 26:16, 27:23, 28:10, 28:14, 28:16, 28:23, 30:9, 30:12, 30:14, 31:4, 31:8, 31:12, 33:9, 33:15, 33:17, 34:18, 34:20, 36:2, 36:6, 38:5, 40:5, 45:25, 52:8, 61:24, 62:6
**Vazquez** [4] - 6:9, 7:24, 28:8, 65:6
**vehicle** [6] - 10:24, 14:13, 19:14, 21:20, 25:4, 31:3
**Veloz** [1] - 4:11
**verify** [1] - 48:4
**versus** [1] - 39:10
**video** [25] - 4:18, 5:7, 10:20, 14:7, 18:4, 22:20, 22:24, 24:10, 24:21, 24:24, 25:7, 25:10, 26:24, 45:8, 53:8, 53:18, 53:20, 53:21, 54:11, 54:12, 54:19, 55:1, 55:5, 58:1, 58:9
**videos** [3] - 54:14, 55:2, 58:13
**VIDEOTAPE** [19] - 9:20, 10:4, 10:7, 10:11, 10:14, 10:17, 13:8, 13:20, 13:25, 14:5, 17:25, 18:6, 20:22, 20:25, 24:19, 24:23, 28:22, 31:7, 31:11
**videotape** [2] - 62:14, 62:21
**Viejo** [1] - 5:3
**view** [2] - 31:1, 53:20
**viewing** [1] - 48:21
**voice** [1] - 29:10
**voices** [5] - 8:23, 8:25, 17:15, 17:17, 17:18
**vs** [1] - 1:5

## W

**waived** [1] - 38:18
**waiver** [7] - 35:21, 35:24, 61:8, 61:15, 62:4, 63:6, 63:19
**walked** [4] - 10:23, 14:2, 14:12, 19:13
**walking** [2] - 37:16, 55:18
**Walter** [1] - 4:8
**warrant** [4] - 38:15, 59:8, 59:10, 59:14
**watched** [4] - 15:10, 22:20, 24:24, 31:2
**watching** [1] - 53:9
**ways** [1] - 62:9
**wearing** [4] - 16:13, 35:11, 35:12
**week** [1] - 23:3
**weekend** [1] - 3:2
**West** [1] - 1:21
**whence** [1] - 22:19
**white** [4] - 13:19, 16:6, 16:13, 19:11
**WILLIAMS** [1] - 1:12
**wish** [1] - 65:2
**Witness** [3] - 16:9, 16:21, 16:23
**witness** [12] - 3:23, 4:6, 4:9, 12:21, 16:12, 16:24, 22:13, 33:12, 36:25, 40:5, 45:10, 46:4
**WITNESS** [4] - 10:23, 19:2, 26:15, 28:13
**witnessed** [1] - 63:12
**witnesses** [1] - 3:10
**word** [3] - 3:22, 39:17
**worth** [2] - 47:14, 47:25
**write** [7] - 38:16, 60:18, 60:19, 61:5, 61:7, 63:19, 65:6
**written** [3] - 36:13, 63:1, 63:23

## Y

**yielded** [6] - 9:9, 19:19, 21:22, 25:6, 29:5, 29:22